COPY

FILED

2011 MAR 14 PM 1:17
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

1  Marvin Wexler
2  Lawrence C. Fox
3  KORNSTEIN VEISZ WEXLER & POLLARD LLP
   757 Third Avenue
4  New York, New York 10017
   (212) 418-8600/fax (212) 826-3640
5

6  Edward Gartenberg (SBN # 102693)
7  Christina Keith (SBN # 235578)
   GARTENBERG GELFAND WASSON & SELDEN LLP
8  801 South Figueroa Street, Suite 2170
9  Los Angeles, California 90017
   Tel: (213) 542-2100 / Fax: (213) 542-2101
10 EGartenberg@ggwslaw.com

11 Attorneys for Plaintiffs
12

13              UNITED STATES DISTRICT COURT
14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 | Blue Cross and Blue Shield of Alabama; Blue        | Case No. SACV 05-230-
16 | Cross and Blue Shield of Massachusetts, Inc.;       | TJH(VBKx)
     Blue Cross and Blue Shield of Michigan; Blue
17 | Cross and Blue Shield of Nebraska; Blue             | SECOND AMENDED
18 | Cross and Blue Shield of North Carolina;            | COMPLAINT FOR
     BlueCross BlueShield Tennessee, Inc.;               | VIOLATIONS OF
19 | CareFirst Blue Cross and Blue Shield; Empire        | THE RACKETEER
     HealthChoice Assurance, Inc. d/b/a Empire           | INFLUENCED CORRUPT
20 | Blue Cross Blue Shield; Excellus Health Plan,       | ORGANIZATIONS ACT;
21 | Inc. d/b/a Excellus Blue Cross Blue Shield;         | FRAUD; UNJUST
     R.M.S.C.O., Inc.; Highmark Inc. d/b/a               | ENRICHMENT;
22 | Highmark Blue Cross Blue Shield and d/b/a           | NEGLIGENT
23 | Highmark Blue Shield; Premera Blue Cross;           | MISREPRESENTATION;
     Regence Blue Shield; Regence BlueCross              | CONSTRUCTIVE TRUST;
24 | BlueShield of Utah; Regence BlueCross               | VIOLATION OF
25 | BlueShield of Oregon; and Regence                   | CALIFORNIA BUSINESS
     BlueShield of Idaho;                                | AND PROFESSIONS CODE;
26 |                                                     | DEMAND FOR A JURY
                          Plaintiffs,                    | TRIAL
27 |
28 |              -against-

2934001COMMW.00007.wpl

Unity Outpatient Surgery Center, Inc.; Unity
Outpatient Surgery Center LLC; Millennium
Outpatient Surgery Center, A Medical
Corporation; St. Paul Outpatient Surgery
Medical Center, Inc.; St. Paul Surgery
Medical Center LLC; Anaheim West
Outpatient Surgery Center Inc.; Lincoln
Management Group, LLC.; St. Francis
Outpatient Medical Center, Inc.; Inland
Orange Medical Management, Inc.; Newport
Superior Outpatient Medical Center, Inc.;
Newport Superior Management Group LLC;
Harbor Multi-Specialty Surgical Center, Inc.;
Pacific Outpatient Medical Center, A Medical
Corporation; Pacific Outpatient Medical
Management Group LLC; Premium
Outpatient Surgery Center, A Medical
Corporation; Tam Vu Pham a/k/a Tom Vu;
Huong Thien Ngo; Lan Thi Ngoc Nguyen;
Gordon Merrick; Rosalinda Landon; Dee
Francis; Andrew Harnen; Daniel Romanello;
Ocher County Clinics, Inc.; Mitchell Rubin;
Steven Rubin; Catherine Bach; Thu Ngoc
Pham a/k/a Perry Pham; Michael Schneider;
Andrew Andalibian; Rosemary Halac;
Ardalan Babaknia, M.D.; Michael Chan,
M.D.; Byung Chun, M.D.; Moustafa El
Alamy, M.D.; John Eugene, M.D.; Clark B.
Fuller, M.D.; Paratha Govindarajan, M.D.;
Leon Halac, M.D.; William Hampton, M.D.;
Lars Hanson, M.D.; Ward V. Houck, M.D.;
Madhukar Jigjinni, M.D.; Chin Kim, M.D.;
Edgar Lluncor, M.D.; Robert J. McKenna,
M.D.; Martha Madrid, M.D.; Dr. Bassam
Moucharafieh, M.D.; Bharat Patel, M.D.;
Amer Rayyes, M.D.; Daniel Rose, M.D.;
Mario Z. Rosenberg, M.D.; Hamilton Sah,
M.D.; Julia Sverdlova, M.D.; Youn S. Toh,
M.D.; Rizalino Vicente, M.D.; Lloyd White,
M.D.; and John Does 8-100,
           Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table of Contents

Page

I.    JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      Illegal Patient Recruiting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Fraudulent Billing, Diagnoses and Medical Records . . . . . . . . . . . . . . . . . . . 5

      Patterns and Indicia of the Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      Criminal Charges In Connection With the Fraud . . . . . . . . . . . . . . . . . . . . . 11

      Plaintiffs' Claims and the Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.    Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            Clinics and Management Companies . . . . . . . . . . . . . . . . . . . . . . . . 17

            Owners/Administrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

            Surgeons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.   THE ENTERPRISES, CONNECTIONS
      BETWEEN THE DEFENDANTS, AND
      DEFENDANTS' CASE-WIDE CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . 32

      A.    The Vu Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

            1.    History of the Vu Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . 34

            2.    Personnel of the Vu Enterprise . . . . . . . . . . . . . . . . . . . . . . . . 36

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Page</u>

3.      Ownership, Management and Control,
        and Distribution of Profits, of the Vu Enterprise . . . . . . . . . . . . 37

4.      Patient Recruiting Organization of the Vu Enterprise . . . . . . . . 44

        a.      Anaheim West and Unity . . . . . . . . . . . . . . . . . . . . . . . . . 44

        b.      Thuy Huynh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

B.   The Millennium Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

     1.      Connections to the Vu Enterprise . . . . . . . . . . . . . . . . . . . . . . . 52

     2.      Fraud at Millennium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

C.   Harbor, Pacific and Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

D.   Case-Wide Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

V.   PARTICULARIZED FRAUDULENT ACTS
     AND ILLUSTRATIVE PATIENT EXAMPLES . . . . . . . . . . . . . . . . . . . . 61

A.   Plaintiff Highmark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

     1. The Onyx Employee Cluster From Phoenix, Arizona . . . . . . . . . . . 62

     2. Other Highmark Patients . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

B.   Plaintiff Tennessee Blue Cross (Magnetek Patient Cluster) . . . . . . . . 71

C.   Plaintiff Michigan Blue Cross (Textron Patient Cluster) . . . . . . . . . . 75

D.   Plaintiff Empire (Pepsi and Fujicare Clusters) . . . . . . . . . . . . . . . . . 83

E.   Plaintiff Excellus (including Linvatec and Welch Allyn Clusters) . . . 85

F.   Plaintiff Alabama Blue Cross
     (including Teledyne and Mount Vernon Mills Clusters) . . . . . . . . . . . 89

Page

G.    Plaintiff Massachusetts Blue Cross . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

H.    Plaintiff Premera Blue Cross  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

I.    Plaintiff Regence
      (including Leatherman Tools and OHSU Clusters)  . . . . . . . . . . . . . 100

J.    Plaintiff CareFirst (including Vertis Cluster) . . . . . . . . . . . . . . . . . . . . 103

K.    Plaintiff Nebraska Blue Cross (Swift and Millard Clusters)  . . . . . . . 106

L.    Plaintiff North Carolina Blue Cross . . . . . . . . . . . . . . . . . . . . . . . . . . . 107

CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

FIRST CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

SECOND CLAIM FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112

THIRD CLAIM FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

FOURTH CLAIM FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

FIFTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

SIXTH CLAIM FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

SEVENTH CLAIM FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122

EIGHTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124

NINTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126

TENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

ELEVENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130

TWELFTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133

Page

THIRTEENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

FOURTEENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136

FIFTEENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

SIXTEENTH CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 143

DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

APPENDIX B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 155

APPENDIX C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158

APPENDIX D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 160

APPENDIX E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

APPENDIX F . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

APPENDIX G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167

APPENDIX H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169

APPENDIX I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171

APPENDIX J . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 173

APPENDIX K . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175

APPENDIX L . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178

APPENDIX M . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180

APPENDIX N . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 187

1

Page

2

3   APPENDIX O  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   189

4   APPENDIX P  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   191

5
    APPENDIX Q  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   193
6

7   APPENDIX R  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   195

8   APPENDIX S  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   197

9
    APPENDIX T  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   199
10

11  APPENDIX U  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   201

12  APPENDIX V  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   203

13
    APPENDIX W  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   206
14

15  APPENDIX X  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   209

16  APPENDIX Y  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   211

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs, by their attorneys Kornstein Veisz Wexler & Pollard LLP and Gartenberg Gelfand Wasson & Selden LLP, for their Complaint allege, with knowledge as to their own actions and otherwise upon information and belief:

## I.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States; pursuant to 18 U.S.C. § 1964(c), because the suit concerns violations of the Racketeer Influenced and Corrupt Organizations Act; and pursuant to 28 U.S.C. § 1367, because the State and common law claims are so related to the federal claims that they form part of the same case or controversy.

2.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District, and, alternatively, because some of the Defendants may be found in this Judicial District and there is no District in which the action may otherwise be brought; and pursuant to 18 U.S.C. § 1965(b), because some Defendants reside in and/or transact business in this Judicial District, and the ends of justice require that other Defendants in other Districts be brought before this Court.

## II.

## <u>INTRODUCTION</u>

3.     This action targets a massive health insurance fraud scheme that the California Insurance Commissioner has publicly described as "one of the most egregious, outrageous insurance fraud cases" in history.  Over the past several years, this scheme has caused tens of millions of dollars of losses to insurance companies and employee benefit plans, including Plaintiffs and the benefit plans that Plaintiffs administer.

4.     The Defendants who perpetrated the fraud are a group of corrupt outpatient surgery clinics in Southern California and the owners, administrators and surgeons who orchestrated and implemented the fraud at those clinics.  Their scheme was simple but diabolical: The clinics used patient recruiters to recruit patients from across the country to come to the clinics and undergo completely unnecessary diagnostic and surgical procedures, so that the clinics and the surgeons could submit phony insurance claims for the unnecessary procedures.

5.     To induce the patients to undergo the unnecessary procedures, the clinics (through the recruiters) offered each prospective patient either a cash payment for each unnecessary procedure the patient underwent, or promised the patient free or discounted cosmetic surgery after the patient submitted to multiple unnecessary procedures.   The clinics and surgeons made the unnecessary

procedures appear medically justified by concocting phony symptoms and

diagnoses for the patients and incorporating those fake symptoms and diagnoses in

fictitious medical records.  The clinics and surgeons then cashed in by submitting

fraudulent and inflated bills for the unnecessary procedures to insurers, using the

bogus medical records as back-up if insurers questioned the necessity of the

procedures.

    6.    The unnecessary procedures that Defendant induced patients to

undergo posed direct risks to the patients' health.  Indeed, one of the procedures

favored by Defendants because they charged so much for it -- so-called "sweaty

palms surgery" -- involves collapsing the patient's lung and deactivating a nerve

near the spine.

    7.    The scheme generated enormous fraudulent billings and illegal profits.

The lead clinic Defendant, Unity Outpatient Surgery Center ("Unity"), alone billed

almost $97 million in fraudulent claims to insurers in less than one year, according

to State authorities.

    8.    It is no wonder, then, that the California Insurance Commissioner

called this "one of the most egregious, outrageous insurance fraud cases."  As the

Orange County District Attorney stated in connection with the indictment of

several of Unity's owners: "It is hard to imagine anything more reprehensible than

deliberately operating on healthy people for illegal profit."

**Illegal Patient Recruiting**

9.     This outrageous fraud was fueled by a nationwide network of patient recruiters, sometimes referred to as "marketers" or "cappers."  For each patient a capper delivered to a clinic, the capper received a fee of as much as $2,000 from the procuring clinic, a per-patient bounty that is illegal under California statutes that prohibit paying or receiving payment for patient referrals.  In addition to locating the patients and persuading them to have the unnecessary procedures, the cappers helped verify that the patients had the requisite insurance coverage, facilitated the patients' transportation to and from the Defendant clinics, and coached the patients to lie if they were ever questioned by insurers or others outside the scheme.

10.    The cappers had no medical training or expertise.  Their only job qualifications were access to workers and their families who were covered by group health insurance, and the ability to persuade them to submit to unnecessary procedures in return for cash or cosmetic surgery.  Using their recruiter network and those inducements, Defendants transformed their Southern California clinics into powerful fraud magnets, attracting patients from every region of the country, as well as large numbers of local patients.

11.    Exploiting patients' financial desperation or their desire for cheap cosmetic surgery, the cappers used their contacts in Asian, Hispanic and other

4

communities, as well as various forms of advertising, to import thousands of

patients to the Defendant clinics.  Defendants took full advantage of that human

trafficking, generating fraudulent bills for countless unnecessary diagnostic and

surgical procedures and raking in millions of dollars in ill-gotten insurance

benefits.

**Fraudulent Billing, Diagnoses and Medical Records**

12.    The unnecessary procedures performed most often in the fraud were

procedures to diagnose upper and lower gastrointestinal problems.  In those

procedures -- upper GI endoscopies and lower GI colonoscopies -- the surgeon

inserts a flexible tube with an attached mini-camera down the patient's throat

(upper GI endoscopy) or into the patient's rectum (lower GI colonoscopy) to

visualize the relevant areas and identify the source and cause of the patient's

gastrointestinal symptoms.

13.    To justify performing the upper GI endoscopies, the surgeons

pretended, and falsely documented in medical records, that the patients had severe

upper GI symptoms, such as chronic heartburn or chest or stomach pain, and

assigned the patients fictitious upper GI diagnoses such as gastritis, esophagitis,

ulcers or acid reflux disease.  To justify performing the lower GI colonoscopies,

the surgeons pretended, and falsely documented in medical records, that the

patients had severe lower GI symptoms, such as rectal hemorrhaging or severe

abdominal pain, and assigned them fictitious lower GI diagnoses such as polyps, internal hemorrhoids and colitis.

14.    Those supposed symptoms and diagnoses were fabricated for purposes of the fraud.  Prior to coming to the Defendant clinics, patients had no history of being diagnosed or treated for their supposedly severe symptoms.  And while the ostensible purpose of the endoscopies and colonoscopies was to diagnose a medical problem so that the proper course of treatment could be determined, patients did not have any follow-up treatment after Defendants supposedly diagnosed them.

15.    Besides endoscopies and colonoscopies, the next most frequently abused procedure in the fraud was a highly unusual surgery to treat a rare disorder called palmar hyperhidrosis, in which the hands sweat profusely and uncontrollably.  The so-called "sweaty palms surgery" (in medical parlance, a thoracoscopy with sympathectomy) is a complex and risky procedure in which a surgeon makes an incision under the patient's armpit, inserts a surgical probe through the incision, collapses the patient's lung to gain access to the spinal area, and then severs or clamps a nerve near the spine that controls perspiration of the hands.  This surgery can produce serious complications, including bleeding in the chest cavity, pneumothorax (a condition that impedes breathing), infection, significant pain, and greatly increased sweating in other parts of the body.

16.     To justify performing that risky surgery, Defendants pretended that the patients actually had the hyperhidrosis condition.  The surgeons falsified the patients' medical records to state that they experienced chronic and profuse sweating of the hands so severe that it interfered with the patients' ability to work, to drive a car, and to engage in other essential life activities.  Though true hyperhidrosis is rare in the non-fraud world, the unnecessary surgery was a favorite of Defendants, as well as of patients and patient recruiters, because Defendants fraudulently billed insurers more, and thus would pay patients and their recruiters more, for a sweaty palms procedure than for an endoscopy or a colonoscopy.

17.     Moreover, because of the risk of serious complications, the sweaty palms surgery is supposed to be performed only as a last resort, after non-surgical treatments such as topical and other medications have been tried without success. But while the surgeons' write-ups often said that patients had experienced this condition since childhood, patients in fact had never seen a doctor or received any prior treatment for sweaty palms before Defendants subjected them to this dangerous surgery.  Defendants thus jeopardized patients' lives and well-being for no purpose other than to manufacture insurance claims.

18.     Other unnecessary surgeries performed as part of the fraud included nasal surgeries to help supposed breathing problems (septoplasties), gynecological

7

procedures ostensibly to address menstrual dysfunction (laparoscopies or D & C's), and bladder procedures to diagnose urinary problems.

**Patterns and Indicia of the Fraud**

19.   Besides the inherent depravity of performing unnecessary and risky medical procedures on healthy people to make them vehicles for insurance fraud, other features of the fraud underscore its perversity and provide objective markers by which the fraud can be identified.

20.   One such feature already noted is that a large number of patients were imported to Defendant clinics from outside of California, including from faraway States such as Florida, Minnesota, North Carolina, Virginia and Texas.  Under normal circumstances, no patient would consider traveling outside his or her local area, let alone flying thousands of miles, to have a routine procedure such as an endoscopy or a colonoscopy that could easily be performed close to home.  The only explanation for the influx of out-of-State patients to Defendant clinics is that they were wooed by a patient recruiter with the promise of something that no legitimate facility anywhere would provide -- a cash payment for submitting to an unnecessary procedure, or a payoff in free or low-cost cosmetic surgery.

21.   To multiply the fraudulent billings for Defendants, as well as the cash payments and cosmetic surgery "credits" for the patients, many patients were subjected and submitted to more than one unnecessary procedure.  In the majority

of cases, Defendants claimed to have performed <u>both</u> an endoscopy <u>and</u> a

colonoscopy <u>on the same patient</u>, often within only a day or two of each other.

22.    In addition, many of the same patients who had previously undergone

endoscopies and colonoscopies were also paid to undergo sweaty palms surgeries.

That pattern makes no medical sense because an endoscopy or colonoscopy would

never diagnose a need for sweaty palms surgery, and no legitimate doctor would

respond to complaints about excessive hand sweating by scheduling an endoscopy

or colonoscopy.  Despite the absence of any logical or legitimate connection

between these procedures, the health insurance claims that Defendants generated

for a large number of patients follow the same distinctive and fraudulent pattern:

endoscopy, then colonoscopy, then sweaty palms surgery.

23.    Defendants paid many of those same patients to undergo still more

unnecessary  procedures, including nasal and gynecological procedures.  And

many patients went through the same procedure or cycle of procedures twice.  As a

result, Defendants sometimes billed for performing a half-dozen or more

endoscopies, colonoscopies, sweaty palms surgeries and other procedures on the

same person in the course of just a few months.

24.    Often more than one member of the same family, and sometimes

entire families including children, underwent unnecessary procedures at Defendant

clinics.  The record in this case includes dozens of examples of husbands and

wives who were billed as having had parallel arrays of exploratory and surgical procedures, frequently undergoing the same unnecessary procedure on the same day.  In some of the examples described below, Defendants not only billed for performing a series of unnecessary procedures on a husband and wife, they also billed for performing endoscopies, colonoscopies and other procedures on one or more of the couple's children -- children as young as 12 -- all in essentially the same order.  It is inconceivable that multiple members of the same family would need such a sequence of procedures.

25.    Further, large groups of patients often were recruited from the same workplace to go to Defendant clinics.  The patients in those employee "clusters," many of whom were recruited by cappers in out-of-State workplaces, were subjected to unnecessary endoscopies, colonoscopies, sweaty palms surgeries and other procedures at the Defendant clinics over a short period of time.  Virtually all of the patients in those clusters had multiple procedures, and the clusters include many examples in which multiple family members had multiple procedures.  Thus, the damages to the insurers caused by those employee clusters were enormous. Because of the enormity of the damage, and because those employee clusters represent a confluence of fraud indicia so incriminating as to make any explanation other than fraud a virtual impossibility, such clusters are highlighted in succeeding sections of this Complaint.

## Criminal Charges In Connection With the Fraud

26.     State and Federal criminal authorities have recently begun to prosecute this fraud.  In July 2004, State criminal authorities arrested three alleged principals of Defendant Unity Outpatient Surgery Center, Defendants Tam Vu Pham (a/k/a "Tom Vu"), his wife Huong Thien Ngo, and Lan Thi Ngoc Nguyen, along with several patient recruiters, and charged them with conspiracy "to commit . . . insurance fraud and grand theft" and other crimes. (<u>People of the State of California v. Tam Vu Pham et al.</u>, Superior Court of the State of California, Orange County,  Case No. 04CF2197 -- Felony Complaint at 5) ("State Felony Complaint").  The State Felony Complaint includes a long list of "materially false and fraudulent" health insurance claims that those Defendants submitted on patients treated at Unity Outpatient Surgery Center in Buena Park.

27.     In announcing those arrests, State prosecutors described the fraud as unprecedented in its magnitude and in its heinous exploitation of patients.  The prosecutors stated that, during an extraordinarily intense 8-month fraud spree from August 2002 to April  2003, the arrested Defendants recruited more than 5,000 patients nationwide to undergo unnecessary procedures at the Unity clinic, and billed almost $97 million in fraudulent claims to insurers.

28.     In October 2004, Federal criminal authorities charged Defendant Millennium Outpatient Surgery Center and its principal, Defendant Thu Ngoc

Pham ("Pham"), along with three patient recruiters, with mail fraud for bilking

health insurers out of $34 million by "fraudulently bill[ing] private health insurers .

. . for medical procedures performed on recruited patients that defendants . . . knew

to be unnecessary, corruptly induced, and falsely justified. . . ." (United States v.

Millennium Outpatient Surgery Center et al., United States District Court for the

Central District of California, Case No. SA CR 04-281 -- Indictment at 4-5)

("Federal Indictment").

**Plaintiffs' Claims and the Relief Sought**

    29.    Plaintiff Blue Cross and Blue Shield Plans have been hit hard by

Defendants' fraud.  Together, they have paid in excess of $10 million to the

Defendants on fraudulent insurance claims.  On Plaintiffs' own behalf and

indirectly on behalf of the employee benefit plans they administer, Plaintiffs bring

this action under the Federal RICO statute and under State anti-fraud statutes and

common law, to recover the payments that Defendants defrauded them into paying

on fraudulent claims, and to enjoin Defendants and their confederates from

continuing their egregious fraud.

**III.**

**THE PARTIES**

A.      Plaintiffs

30.      Plaintiffs are health insurance companies and third-party administrators of health benefit plans that are licensees of the national Blue Cross and Blue Shield Association.  All of the Plaintiffs are in the business of underwriting and administering health insurance and employee health benefit plans.  For ease of reference, when the Complaint refers to "insurance" the reference encompasses both insurance and health benefits.

31.      Blue Cross and Blue Shield of Alabama ("Alabama Blue Cross") is a not-for-profit corporation that is incorporated in Alabama and has a principal place of business in Birmingham, Alabama.  Alabama Blue Cross administers employee health benefit plans primarily on behalf of employers headquartered in Alabama.

32.      Blue Cross and Blue Shield of Massachusetts, Inc. ("Massachusetts Blue Cross") is a not-for-profit corporation that is incorporated in Massachusetts and has a principal place of business in Boston, Massachusetts.  Massachusetts Blue Cross administers employee health benefit plans primarily on behalf of employers headquartered in Massachusetts.

33.      Blue Cross and Blue Shield of Michigan ("Michigan Blue Cross") is a not-for-profit corporation that is incorporated in Michigan and has a principal place

of business in Detroit, Michigan.  Michigan Blue Cross administers employee

health benefit plans primarily on behalf of employers headquartered in Michigan.

34.    Blue Cross and Blue Shield of Nebraska ("Nebraska Blue Cross") is a

not-for-profit corporation that is incorporated in Nebraska and has a principal place

of business in Omaha, Nebraska.  Nebraska Blue Cross administers employee

health benefit plans primarily on behalf of employers headquartered in Nebraska.

35.    Blue Cross and Blue Shield of North Carolina ("North Carolina Blue

Cross") is a not-for-profit corporation that is incorporated in North Carolina and

has a principal place of business in Durham, North Carolina.  North Carolina Blue

Cross administers employee health benefit plans primarily on behalf of employers

headquartered in North Carolina.

36.    BlueCross BlueShield Tennessee, Inc. ("Tennessee Blue Cross") is a

not-for-profit corporation that is incorporated in Tennessee and has a principal

place of business in Chattanooga, Tennessee.  Tennessee Blue Cross administers

employee health benefit plans primarily on behalf of employers headquartered in

Tennessee.

37.    CareFirst Blue Cross and Blue Shield ("CareFirst") is a not-for-profit

corporation that is incorporated in Maryland and has a principal place of business

in Baltimore, Maryland.  CareFirst administers employee health benefit plans

primarily on behalf of employers headquartered in the District of Columbia and portions of Maryland and Virginia.

38.    Empire HealthChoice Assurance, Inc. d/b/a Empire Blue Cross Blue Shield ("Empire") is a for-profit corporation that is incorporated in New York and has a principal place of business in New York, New York.  Empire administers employee health benefit plans primarily on behalf of employers headquartered in the New York City metropolitan area.

39.    Excellus Health Plan, Inc. d/b/a Excellus Blue Cross Blue Shield ("Excellus") is a not-for-profit corporation that is incorporated in New York and has a principal place of business in Rochester, New York.  Excellus administers employee health benefit plans primarily on behalf of employers headquartered in upstate New York.  Excellus pays claims for medical services directly and through a wholly owned subsidiary, R.M.S.C.O., Inc. ("RMSCO").  RMSCO is incorporated in New York and has a principal place of business in Fayetteville, New York.  Excellus and RMSCO are collectively referred to herein as "Excellus." Highmark Inc. ("Highmark") is a not-for-profit corporation that is incorporated in Pennsylvania and has a principal place of business in Pittsburgh, Pennsylvania. Highmark administers employee health benefit plans primarily on behalf of employers headquartered in the western and central portions of Pennsylvania.

15

40.     Premera Blue Cross ("Premera") is a not-for-profit corporation that is incorporated in Washington and has a principal place of business in Mountlake Terrace, Washington.  Premera administers employee health benefit plans primarily on behalf of employers headquartered in portions of Washington and Alaska.

41.     Regence BlueShield, Regence BlueCross BlueShield of Utah, Regence BlueCross BlueShield of Oregon and Regence BlueShield of Idaho are not-for-profit corporations that are either wholly owned or managed by The Regence Group.  Regence BlueShield is incorporated in Washington, has a principal place of business in Seattle, Washington, and administers employee health benefit plans primarily on behalf of employers headquartered in Washington. Regence BlueCross BlueShield of Utah is incorporated in Utah, has a principal place of business in Salt Lake City, Utah, and administers employee health benefit plans primarily on behalf of employers headquartered in Utah. Regence BlueCross BlueShield of Oregon is incorporated in Oregon, has a principal place of business in Portland, Oregon, and administers employee health benefit plans primarily on behalf of employers headquartered in Oregon.  Regence BlueShield of Idaho is incorporated in Idaho, has a principal place of business in Lewiston, Idaho, and administers employee health benefit plans primarily on

behalf of employers headquartered in Idaho.  These Regence plans are collectively referred to in this Complaint as "Regence."

**B.      Defendants**

**Clinics and Management Companies**

42.     Unity Outpatient Surgery Medical Center, Inc. is a California corporation that did business as Unity Outpatient Surgery Center ("Unity").  Unity was a surgical clinic located at 5730 Beach Blvd., Buena Park, California.

43.     Unity Outpatient Surgery Center LLC ("Unity LLC") is a California limited liability company located at 5730 Beach Blvd., Buena Park, California. Unity LLC was the management company for Unity.

44.     St. Paul Outpatient Surgery Medical Center, Inc. is a California corporation that does business as St. Paul Outpatient Surgery Center  ("St. Paul"). St. Paul is a surgical clinic located at 5730 Beach Blvd., Buena Park, California. St. Paul was a successor clinic to Unity, located at the same address.

45.     St. Paul Outpatient Surgery Medical Center LLC ("St. Paul LLC") is a California limited liability company located at 5730 Beach Blvd., Buena Park, California.  St. Paul LLC is the management company for St. Paul.

46.     Anaheim West Outpatient Surgery Center, Inc. is a California corporation that did business as Anaheim West Outpatient Surgery Center

("Anaheim West").  Anaheim West was an outpatient surgical clinic located at 408 South Beach Blvd., Suite 112, Buena Park, California.

47.    Lincoln Management Group, LLC ("Lincoln Management") is a California limited liability company with offices at 408 South Beach Blvd., Buena Park, California and 2329 Private Road, Newport Beach, California.  Lincoln Management was the management company for Anaheim West.

48.    St. Francis Outpatient Medical Center, Inc. is a California corporation that did business as St. Francis Outpatient Medical Center ("St. Francis").  St. Francis was an outpatient  surgical clinic located at 408 S. Beach Blvd., Buena Park, California.  St. Francis was an offshoot of Anaheim West, located at the same address.

49.    Inland Orange Medical Management, Inc. ("Inland") is a Nevada corporation with offices at 408 S. Beach Blvd., Buena Park, California.  Inland was the management company for St. Francis.

50.    Newport Superior Outpatient Medical Center, Inc. is a California corporation that did business as Newport Superior Outpatient Medical Center ("Newport Superior").  Newport Superior was an outpatient surgical clinic located at 1501 Superior Avenue, Newport Beach, California.

51.    Newport Superior Management Group, LLC ("Newport Superior Management") is a California limited liability company with offices at 1501

Superior Avenue, Newport Beach, California.  Newport Superior Management was the management company for Newport Superior.

52.     Harbor Multi-Specialty Surgical Center, Inc. is a California corporation that does business as Harbor Multi-Specialty Surgical Center ("Harbor").  Harbor is an outpatient surgical clinic located at 1501 Superior Avenue, Newport Beach, California.  Harbor is an offshoot of Newport Superior, located at the same address.

53.     Millennium Outpatient Surgery Center, A Medical Corporation, is a California corporation that does business as Millennium Outpatient Surgery Center ("Millennium").  Millennium is an outpatient surgical clinic located at 1200 N. Tustin Ave., Santa Ana, California.

54.     Pacific Outpatient Medical Center, A Professional Corporation, is a California corporation that does business as Pacific Outpatient Medical Center ("Pacific").  Pacific is an outpatient surgical clinic located at 1041 East Yorba Linda Blvd., Placentia, California.

55.     Pacific Outpatient Medical Management Group, LLC ("Pacific Management") is a California limited liability company with offices at 1041 East Yorba Linda Blvd., Placentia, California.  Pacific Management is the management company for Pacific.

56.     Premium Outpatient Surgery Center, A Medical Corporation, is a California corporation that does business as Premium Outpatient Surgery Center ("Premium").  Premium is an outpatient surgical clinic located at 17672 Beach Blvd., Huntington Beach, California.

**Owners/Administrators**

57.     Tam Vu Pham goes by the name Tom Vu (referred to hereafter as "Vu") and resides in Fullerton, California.  Vu was an owner and administrator of several of the Defendant clinics, specifically Unity, St. Paul, Anaheim West, St. Francis and Newport Superior, either directly or through their respective management companies.  Vu actively participated in, directed, and profited from, the fraud at those clinics.  Vu was one of the individuals arrested by State criminal authorities in July 2004, and charged with multiple counts of conspiracy, insurance fraud, grand theft, paying cappers for the referral of patients, and tax evasion.

58.     Huong Thien Ngo ("Ngo") is Vu's wife and resides in Santa Ana, California.  With Vu, Ngo was an owner and administrator of Unity, St. Paul, Anaheim West, St. Francis and Newport Superior, either directly or through their respective management companies.  Along with her husband, Ngo actively participated in, directed, and profited from, the fraud at those clinics.  Ngo was also a senior officer of several California limited liability companies that were established to submit fraudulent bills for unnecessary procedures performed at

Unity, and that were named in the State Felony Complaint, including St. John Surgical Group, LLC, North County Imaging, LLC, Valley Surgi-Group, LLC, and Universal Med Surgery Group, LLC.  Ngo was arrested by State criminal authorities in July 2004 and charged with the same crimes as her husband.

59.    Lan Thi Ngoc Nguyen ("Nguyen") resides in Santa Ana, California. Nguyen is Ngo's aunt.  Nguyen profited from the fraud at Unity and Anaheim West.  Nguyen was arrested by State criminal authorities in July 2004, and charged with the same crimes as Vu and Ngo.

60.    Gordon Merrick ("Merrick") resides in New York, New York. Merrick was an owner of at least Unity and Anaheim West, either directly or through their respective management companies, and profited from the fraud at those clinics.  With Ngo, Merrick was a senior officer or registered agent of several California limited liability companies that were established to submit fraudulent bills for unnecessary procedures performed at Unity, and that were named in the State Felony Complaint, including St. John Surgical Group, LLC, North County Imaging, LLC, Valley Surgi-Group, LLC, Healthstar Surgical Group, LLC, Allied Health Surgery Group, LLC, Atlantic Surgical Group, LLC, Primecare Surgical Group, LLC, Universal Med Surgery Group, LLC, Western Surgical Group, LLC, Community Surgical Group, LLC, and Rosemead Surgical Group, LLC.

61.     Rosalinda Landon ("Landon") resides at in Reseda, California. Landon was an owner and administrator of at least Unity and Anaheim West, either directly or through their respective management companies.  Landon actively participated in, directed, and profited from, the fraud at those clinics.  With Ngo and Merrick, Landon was a senior officer or registered agent of several California limited liability companies that were established to submit fraudulent bills for unnecessary procedures performed at Unity, and that were named in the State Felony Complaint, including St. John Surgical Group, LLC, North County Imaging, LLC, Valley Surgi-Group, LLC, Healthstar Surgical Group, LLC, Universal Med Surgery Group, LLC, Community Surgical Group, LLC, and Rosemead Surgical Group, LLC.  Landon is identified in the State Felony Complaint as "an unnamed co-conspirator" of Vu, Ngo and Nguyen.

62.     Dee Francis ("Francis") resides in El Segundo, California.  Francis was an owner of Unity, either directly or through its management company, and profited from the fraud at Unity.  With Ngo, Merrick, and Landon, Francis was a senior officer or registered agent of several California limited liability companies that were established to submit fraudulent bills for unnecessary procedures performed at Unity, and that were named in the State Felony Complaint, including St. John Surgical Group, LLC, North County Imaging, LLC, Valley Surgi-Group, LLC, Healthstar Surgical Group, LLC, Universal Med Surgery Group, LLC,

Community Surgical Group, LLC, and Rosemead Surgical Group, LLC.  Francis is identified in the State Felony Complaint as "an unnamed co-conspirator" of Vu, Ngo and Nguyen.

63.     Andrew Harnen ("Harnen") resides in Rosemead, California.  Harnen is an accountant who was an owner of Unity, either directly or through their respective management companies.  Harnen actively participated in, directed and profited from, the fraud at those clinics.  With Ngo, Merrick, Landon and Francis, Harnen was an officer or registered agent of several California limited liability companies that were established to submit fraudulent bills for unnecessary procedures performed at Unity, and that were named in the State Felony Complaint, including St. John Surgical Group, LLC, Valley Surgi-Group, LLC, Allied Health Surgery Group, LLC, Atlantic Surgical Group, LLC, Primecare Surgical Group, LLC, Universal Med Surgery Group, LLC, Western Surgical Group, LLC, Community Surgical Group, LLC, and Rosemead Surgical Group, LLC.  Harnen is identified in the State Felony Complaint as "an unnamed co-conspirator" of Vu, Ngo and Nguyen.

64.     Daniel Romanello ("Romanello") resides in Newport Beach, California.  He was an owner of Anaheim West, either directly or through its management company, and profited from the fraud at Anaheim West.

65.    Michael Chan, M.D. ("Chan") resides in Bellflower, California.  Chan was a nominal owner of Unity, either directly or through its management company, who actively participated in, directed, and profited from, the fraud at that clinic. Chan is also a surgeon who actively participated in the scheme by performing, and fraudulently billing and documenting, unnecessary procedures at Defendant clinics, including Unity, Anaheim West and Millenium.  Chan is identified in the State Felony Complaint as "an unnamed co-conspirator" of Vu, Ngo and Nguyen.

66.    Ocher County Clinics, Inc. ("Ocher") is a California corporation. Ocher was an owner of Anaheim West through its ownership interest in Lincoln Management.  Ocher profited from the fraud at that clinic.

67.    Mitchell Rubin resides in  Santa Monica, California.  Mitchell Rubin was an owner and senior officer of Ocher and was an owner of Anaheim West through Ocher's ownership interest in Lincoln Management.  Mitchell Rubin profited from the fraud at that clinic.

68.    Steven Rubin resides in Houston, Texas.  Steven Rubin is an attorney who is the brother of Mitchell Rubin, was an owner and officer of Ocher, and was an owner of Anaheim West through Ocher's ownership interest in Lincoln Management.  Steven Rubin organized Lincoln Management and also was the registered agent for St. Francis and its management company, Inland.  Steven Rubin profited from the fraud at those clinics.

69.     Catherine Bach ("Bach") resides in Fullerton, California.  Bach was an owner of Newport Superior, either directly or through its management company, and actively participated in, directed and profited from the fraud at that clinic.

70.     Martha Madrid, M.D. ("Madrid") resides in Angwin, California. Madrid was the nominal owner of St. Paul and actively participated in, directed, and profited from, the fraud at that clinic.  Madrid is also an anesthesiologist who actively participated in the scheme by performing, and fraudulently billing and documenting, anesthesia services for fraudulent procedures at St. Francis, Unity and St. Paul.

71.     Thu Ngoc Pham goes by the name Perry Pham (referred to hereafter as "Pham") and resides in Garden Grove, California.  Pham was the owner of Millennium and a predecessor clinic, either directly or through a management company, and actively participated in, directed, and profited from, the fraud at those clinics.  Pham was one of the individuals arrested by Federal criminal authorities and charged with conspiracy and mail fraud in connection with the fraud at Millennium.

72.     Michael Schneider ("Schneider") resides in Huntington Beach, California.  Schneider was an owner of Premium who profited from the fraud at that clinic.

73.     Lars Hanson, M.D. ("Hanson") resides in San Marino, California. Hanson was a nominal owner of Newport Superior and Newport Superior Management who actively participated in and profited from the fraud at that clinic.

74.     Hamilton Sah, M.D. ("Sah") resides in Artesia, California.  Sah was a nominal owner of Anaheim West who facilitated and profited from the fraud at that clinic.

75.     Daniel Rose, M.D., ("Rose") resides in Buena Park, California.  Rose was a nominal owner of St. Francis who facilitated and profited from the fraud at that clinic.

76.     Youn S. Toh, M.D. ("Toh") resides in Fountain Valley, California. Toh was a nominal owner of Millennium who actively participated in, directed, and profited from, the fraud at that clinic.  Toh is also an anesthesiologist who actively participated in the scheme by performing, and fraudulently billing and documenting, anesthesia services for fraudulent procedures at Millennium.

**Surgeons**

77.     Ardalan Babaknia, M.D. ("Babaknia") resides in Newport Beach, California.  Babaknia actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Millennium and Newport Superior.

78.     Byung Chun, M.D. ("Chun") resides in Buena Park, California 90621. Chun actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Anaheim West, Millennium and Premium.

79.     Moustafa El Alamy, M.D. ("Alamy") resides in Granada Hills, California.  Alamy actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Anaheim West,  Newport Superior, Millennium and Pacific.

80.     John Eugene, M.D. ("Eugene") resides in Rolling Hills, California. Eugene actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Anaheim West.

81.     Paratha Govindarajan, M.D. ("Govindarajan") resides in Anaheim, California.  Govindarajan actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including but not limited to Harbor.

82.     Leon Halac, M.D. ("Halac") resides in Aventura, Florida.  Halac actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including but not limited to Millennium.

83.    William Hampton, M.D. ("Hampton") has an address in Long Beach, California.  Hampton actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Unity, St. Paul and Premium.

84.    Madhukar Jigjinni, M.D. ("Jigjinni") resides in Orange, California. Jigjinni actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Millennium.

85.    Chin Goo Kim, M.D. ("Kim") resides in Buena Park, California 90621.   Kim actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Unity and Anaheim West.

86.    Edgar Lluncor, M.D. ("Lluncor") resides in Rolling Hills, California. Lluncor actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Pacific.

87.    Robert J. McKenna, M.D. ("McKenna") resides in Corona Del Mar, California.   McKenna actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Unity and St. Paul.

88.     Bharat Patel, M.D. ("Patel") resides in Long Beach, California.  Patel actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Millennium and St. Paul.

89.     Amer Rayyes, M.D. ("Rayyes") resides in Tustin, California.  Rayyes actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Newport Superior and Pacific.

90.     Mario Z. Rosenberg, M.D. ("Rosenberg") resides in Beverly Hills, California.  Rosenberg actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Unity, St. Paul, Anaheim West, St. Francis, Newport Superior and Millennium.

91.     Lloyd White, M.D. ("White") resides in Diamond Bar, California.  White actively participated in the fraud scheme by performing, and fraudulently billing and documenting, fraudulent procedures at Defendant clinics, including Unity and Anaheim West.

92.     Plaintiffs named John Doe Defendants 1 through 100 in their original Complaint.  Plaintiffs now identify and substitute the following new Defendants, formerly John Doe Defendants 1, 2, 3, 4, 5, 6 and 7.

93.     Andrew Andalibian has an address in Placentia, California.  He is the
husband of Defendant Catherine Bach.  Andalibian was an owner of Pacific,
directly or through its management company, and actively participated in, directed
and profited from the fraud at that clinic.

94.     Clark B. Fuller, M.D., resides in Manhattan Beach, California.  Fuller
was part of a practice group headed by Defendant McKenna.  Defendant Fuller
actively participated in the fraudulent scheme by performing, and fraudulently
documenting, fraudulent sweaty palms surgeries at Defendant clinics, including
Unity, Harbor and Newport Superior.

95.     Rosemary Halac resides in Woodland Hills, California.  Rosemary
Halac was at all relevant times married to Defendant Leon Halac, M.D. and was
the office manager of her husband's office at Millennium.  Rosemary Halac was
aware of, and participated in, the fraud with her husband at Millennium.  Among
other things, Rosemary Halac participated in the recording and reporting of false
symptoms and diagnoses.  She knew that Millennium's patients were illegally
recruited and compensated, and that illegal patient recruitment and compensation
was an essential component of the fraud at Millennium.  She also knew that the
fraud required hiding the use of patient recruiters from insurers, and she personally
whited-out patient recruiter information from records before sending those records
to insurers, including Plaintiffs.  The illustrative patient examples identified below

that concern Leon Halac, M.D. apply equally to Rosemary Halac, who supported, as alleged above, the fraudulent activities described in those examples.

96.    Ward V. Houck, M.D., resides in Atlanta, Georgia, but at the times relevant here he resided in Los Angeles, California and was part of a practice group headed by Defendant McKenna.  Defendant Houck actively participated in the fraud scheme by performing, and fraudulently documenting, fraudulent sweaty palms surgeries at Defendant clinics, including St. Paul.

97.    Bassam Moucharafieh, M.D. resides in Newport Beach, California. Moucharafieh was an owner of Pacific, directly or through its management company, and the President of Pacific Outpatient Medical Center, A Medical Corporation, who facilitated and profited from the fraud at that clinic.

98.    Julia Sverdlova, M.D., resides in Beverly Hills, California.  Sverdlova was an Assistant Physician at, among other facilities, St. Paul.  She participated in the fraud at Defendant clinics, including St. Paul, by, inter alia, preparing fraudulent History & Physical records that she knew contained phony symptoms designed to support fraudulent procedures, and by assisting one or more of the Defendant surgeons in performing fraudulent procedures.

99.    Rizalino Vicente, M.D., resides in Norwalk, California.  Vicente became an owner of Newport Superior shortly before it changed into Harbor, and after the change, Vicente became an owner of Harbor and President of Harbor

Multi-Specialty Surgery Center, Inc.  Vicente also performed fraudulent medical

procedures at Harbor.  Vicente facilitated and profited from the fraud at Newport

Superior and Harbor.

100.   The true names and capacities of the Defendants named herein as John

Does 8 through 100, inclusive, are still unknown to Plaintiffs.  Plaintiffs therefore

sue these Defendants by such fictitious names, and may seek leave of this Court to

amend this Complaint to allege their true names and capacities when they have

been ascertained.  Plaintiffs are informed and believe and thereon allege that John

Does 8 through 100, inclusive, have conspired and participated in, and/or aided or

abetted, the unlawful conduct alleged in this Complaint are liable to Plaintiffs for

their unlawful conduct.

## IV.

### THE ENTERPRISES, CONNECTIONS BETWEEN
### THE DEFENDANTS, AND DEFENDANTS' CASE-WIDE CONSPIRACY

101.   The Defendants in this Complaint include 9 corrupt surgical clinics

plus owners, administrators and surgeons associated with those clinics.  Though

each clinic represents a separate operating unit, and is pled as a separate enterprise

in the Claims for Relief section of this Complaint, all of those clinics are closely

related in various ways.  Besides having committed insurance fraud in precisely the

same way, the clinics are linked by common surgeons, common patient recruiters

and common patients.   Examples of those linkages are provided by the illustrative

patient examples and patient clusters detailed in later sections of this Complaint.

**A.   The Vu Enterprise**

102.   Five of the 9 Defendant clinics are bound not only by common

surgeons, recruiters and patients, but also by common ownership, management

personnel, and locations.  Those are the clinics owned and controlled, in whole or

in part, by Defendant Vu, who is being criminally prosecuted for fraud by State

criminal authorities.  The Vu clinics, besides being individual RICO enterprises,

are so inter-connected as to also form a single collective RICO enterprise, referred

to and pled in this Complaint as the "Vu Enterprise."

103.   The clinics in the Vu Enterprise are Unity, St. Paul, Anaheim West,

St. Francis and Newport Superior.  Those clinics operated at three locations as set

forth in the following table:

| Vu Enterprise Clinics | | |
|---|---|---|
| **Clinic** | **Location** | **Defendant Surgeons** |
| Newport Superior Outpatient Medical Center | 1501 Superior Ave. Newport Beach, CA 92663 | Alamy, Babaknia, Fuller, Rayyes, Rosenberg |
| St. Francis Outpatient Medical Center | 408 South Beach Blvd. Anaheim, CA 92804 | Rosenberg |
| Anaheim West Outpatient Surgery Center | 408 South Beach Blvd. Anaheim, CA 92804 | Alamy, Chan, Chun, Eugene, Kim, Rosenberg, White |
| Unity Outpatient Surgery Center | 5730 Beach Blvd. Buena Park, CA 90620 | Chan, Fuller, Kim, Hampton, McKenna, Rosenberg, White |

| St. Paul Outpatient Surgery Medical Center | 5730 Beach Blvd. Buena Park, CA 90620 | Hampton, Houck, McKenna, Patel, Rosenberg |
| --- | --- | --- |

104.   As detailed below, those clinics represent a single, continuously operating enterprise that simply changed names and locations over a roughly four-year period.

### 1.   History of the Vu Enterprise

105.   Tom Vu and his wife Huong Ngo have been in the outpatient surgery clinic fraud business for almost a decade.   In 1995, Vu formed a corrupt clinic in Huntington Beach called Advanced Laser Surgical Center ("Advanced Laser"). Ngo actively participated in the fraud at Advanced Laser.   Vu's co-owners at Advanced Laser included Thu Ngoc (a/k/a Perry) Pham (a Defendant in this case who owned the Millennium clinic and is being prosecuted by Federal criminal authorities).   A third co-owner of Advanced Laser, Mir Shadjareh, was indicted in April 2001 on Federal mail fraud charges relating to the operation of Advanced Laser, and pled guilty shortly thereafter.   Vu and Pham, however, were not prosecuted in connection with the Advanced Laser fraud, and their fraud continued at the clinics in this case.

106.   The fraud at Advanced Laser, like the later fraud at both the Vu Enterprise clinics and Millennium, involved a well-developed patient recruiting network that recruited patients from all over the country to have outpatient

cosmetic surgeries.  Surgeons at Advanced Laser performed cosmetic surgery on the recruited patients, and Advanced Laser then billed insurers for functional surgeries that either were not performed at all or were performed solely as a pretext for billing.  The fraud at issue in this case, in which patients were paid in cash or cosmetic surgery to undergo unnecessary procedures, represents an evolution of the fraud scheme that Vu, Pham and others implemented at Advanced Laser.

107.   Advanced Laser closed in mid-1996.  After owning and operating another fraud mill in Orange County for several years, Vu formed the first of the Vu Enterprise clinics, Newport Superior in Newport Beach, in February 1999. Vu had at least one co-owner at Newport Superior, Defendant Catherine Bach.  Vu had a falling out with Bach in 2001, and in April 2001 Vu and several partners formed Anaheim West.  A short time later, the same group began operating St. Francis, just one floor above Anaheim West at the same address.  In June 2002, Vu had a falling out with his Anaheim West partners, left Anaheim West, and two months later, in August 2002, started the Unity clinic in Buena Park.  On April 29, 2003, the Orange County District Attorney's Office executed a search warrant at Unity, effectively ending Defendants' ability to do business under the name of Unity.  Only a few days later, however, Vu formed St. Paul at the same location, and within weeks St. Paul was in business perpetrating the same fraud.

108.   In other words, the progression of the fraudulent clinics in the Vu Enterprise was from Newport Superior (early 1999 to early 2001), to Anaheim West and St. Francis (April 2001 to June 2002), to Unity (August 2002 to April 2003), to St. Paul (beginning in mid-2003).  Each time Vu was interrupted by law enforcement activity or other events, he reopened shortly thereafter under a different name.

### 2.   Personnel of the Vu Enterprise

109.   Though the names and locations of the clinics in the Vu Enterprise changed, key personnel remained largely the same.  Throughout, office staff of the clinics included Elvira Lopez, Adriana Ponce and Jessica Luna in a range of administrative positions such as front office manager and assistant administrator. When Unity "morphed" into St. Paul, Lopez and Ponce were given executive titles as Senior Vice Presidents of the management company, Unity LLC.  Many other clinic staffers moved from clinic to clinic as well.

110.   Rosalinda Landon was a former patient recruiter at other corrupt clinics in the mid-late 1990's.  Among other responsibilities, Landon was in charge of the recruiting operation at both Anaheim West/St. Francis and Unity/St. Paul, as further detailed below.

111.   Defendant Andrew Harnen was the accountant and more at both Anaheim West/St. Francis and Unity/St. Paul.  Among other illegal activities, Harnen wrote checks for illegal payments to patient recruiters.

### 3.   Ownership, Management and Control, and Distribution of Profits, of the Vu Enterprise

112.   Whether at Newport Superior, Anaheim West, St. Francis, Unity or St. Paul, the ownership and management of the clinics was organized in the same illegal and fraudulent fashion.   California law requires that outpatient surgery clinics be owned and managed by a doctor or a medical corporation, and prohibits non-doctors or their corporations from doing so.  To make it appear that they were complying with that rule, Vu and his partners at each clinic arranged for the clinic to be nominally owned and managed by a doctor.  At Newport Superior, the doctor who was the nominal owner and/or "president" was Defendant Lars Hanson; at Anaheim West it was Defendant Hamilton Sah; at St. Francis it was Defendant Daniel Rose; at Unity it was Defendant Michael Chan; and at St. Paul it was Defendant Martha Madrid.  The reality, however, is that those doctors merely fronted as owners, and it was Vu and his partners, who controlled the management company at each of the clinics, who actually owned and controlled the clinics.

113.   Defendant Gordon Merrick, who was experienced in the establishment, licensing and accreditation of outpatient surgical clinics in California, actively participated in the creation and implementation of those sham

ownership arrangements in furtherance of the fraud and in  violation of California law.

114.   The ownership and management structure at Anaheim West illustrates how this was done.  In June 2002, Vu and his partners at Anaheim West got into a dispute over money, and the other partners locked Vu out of the clinic.  Vu responded by suing his partners.  In the ensuing litigation, both Vu and the other partners placed their once-secret ownership and management arrangement on full display.  The filings in the litigation (<u>Lincoln Management Group, LLC v. Anaheim West Outpatient Surgery Center, Inc.</u>, Superior Court of California, Orange County, Case No. 02 CC 10632) (the "Lincoln Management Case"), including sworn Declarations by Vu and one of the partners, provide a window into their arrangement.

115.   The filings in the Lincoln Management Case reveal that the owners of Lincoln Management -- and not Dr. Sah who supposedly owned Anaheim West -- actually owned, operated, and received profits from, the clinic.  The owners of Lincoln Management and their respective ownership shares were as follows: Defendant Ocher County Clinics, Inc. (a company owned by, among others, Defendants Mitchell Rubin and his brother, Defendant Steven Rubin) -- 40%; Sorrento Equities, LLC (a company owned by Defendants Vu and Ngo) -- 40%;

38

Defendant Gordon Merrick-- 10%; Defendant Rosalinda Landon --5%; and Defendant Daniel Romanello -- 5%.

116.   The Management Services Agreement between Lincoln Management and Anaheim West provides that Lincoln Management would receive all the proceeds of the business of Anaheim West.  Specifically, that Agreement provides that, in return for managing the clinic (Tom Vu was designated as the "office manager in charge of the day-to-day requirements of Site operations"), Lincoln Management was to receive "all Provider Collections generated by the Provider at the Site."  "Provider Collections" is defined in the Agreement as "all fees" generated  and received by the clinic "in connection with the performance of professional services," "including but not limited to office or hospital visits, consultation fees, medical treatment, medical diagnoses, surgery, diagnostic imaging, drugs, supplies and equipment," "whether payable directly by the patients or by private insurance or other third-party payors."

117.   As for Defendant Hamilton Sah, the nominal doctor/owner of Anaheim West, Vu's Declaration in the Lincoln Management Case stated that Sah actually owned and controlled nothing at the clinic, was almost never at the clinic, and received only a monthly stipend from Lincoln Management -- essentially a monthly payment for the lease and prostitution of Sah's medical license. Vu's Declaration also stated that Lincoln Management had the same arrangement with

Defendant Daniel Rose, an absentee doctor who was the nominal owner of St. Francis.  In a sworn Declaration dated July 2, 2002, Vu stated:

> In April 2001 plaintiff Lincoln Management founded and set up the Anaheim West Outpatient Surgery Center, and recruited Dr. [Hamilton] Sah as its medical director.  He had no part in setting up the center, did not practice medicine there, generated none of its business, and was on the premises only twice in the last year.  About a year later, the principals of Lincoln Management formed another entity, Inland Orange Medical Management Inc., to set up the St. Francis Outpatient Medical Center, and recruited Daniel M. Rose, M.D. to be its medical director on terms similar to those we had with Dr. Sah.

> I and my wife Huong Ngo, principals of plaintiff Lincoln Management (we actually hold our interest through another limited liability company, Sorrento Equities, LLC), invested $300,000 in the physical and administrative setup of the Anaheim West operation, which [Lincoln Management] operated and managed until June 7, 2002.  We purchased or leased all the equipment, and though Anaheim West Outpatient Surgery Center, Inc. was the named lessee on the lease of the premises at 408 South Beach Boulevard, Lincoln Management made the lease payments.  In short, Lincoln Management did all the work at the surgery center except for the actual surgeries.

> In return for our establishing, investing in and managing the facility, Lincoln Management was entitled to all of the facilities fees charged to patients . . .

> Dr. Sah had been paid $6,000 per month by Lincoln Management to act as medical director of the surgery center, even though he did no work in that position, did not practice medicine there, and rarely even visited the premises before his sudden June 7, 2002 takeover.

Defendant Mitchell Rubin told me that Rubin paid Sah
an additional $16,000 per month.

118.    In substance, Vu stated that Defendant Sah was a shill and did

virtually nothing with respect to Anaheim West other than to allow the misuse of

his license and collect about $22,000 per month; rather, Vu and Ngo organized and

ran the clinic, and they divided the fraudulent proceeds with Ocher County Clinics

(i.e., Mitchell and Steven Rubin), Merrick, Landon and Romanello.  Those

proceeds were very substantial.  As Vu stated in his July 2, 2002 Declaration:

Under our management, the business had been thriving.
As of June 7, 2002, the facilities fees were being
collected at the rate of about $2,000,000 per month.

119.    Vu's principal partners at Anaheim West -- Mitchell Rubin and

Steven Rubin -- participated in, and were fully aware of, the deception in the

ownership and management structure of Anaheim West.

120.    The Rubins knew Dr. Sah from other clinic operations that they

owned and managed, and brought him into the sham ownership arrangement at

Anaheim West.  The Rubins directed and controlled Sah in connection with that

arrangement, and in other aspects of the fraud described below.

121.    Steven Rubin prepared, or participated in the preparation of (1)

documents evidencing Sah's sham ownership of all the shares in Anaheim West

Outpatient Surgery Center, Inc.; (2) the Management Services Agreement between

Anaheim West Outpatient Surgery Center, Inc. and Lincoln Management

2934001XXXLF.00164.wpd

described above; and (3) the Operating Agreement for Lincoln Management. Steven Rubin did so with full knowledge that those documents were in furtherance of a deception concerning the actual ownership of Anaheim West, and with the intent to further that deception.

122.    Mitchell Rubin knew and approved of the documents referenced in the preceding paragraph, and signed certain of those documents, with full knowledge that they were in furtherance of a deception concerning the actual ownership of Anaheim West, and with the intent to further that deception.

123.    In addition to bringing in Sah to be the nominal (but not actual) owner of Anaheim West, the Rubins brought in Dr. Daniel Rose to be the nominal (but not actual) Medical Director of Anaheim West.

124.    The Rubins and their confederates pretended that Rose was the Medical Director of Anaheim West in order to procure the formal accreditation necessary to operate an outpatient surgery clinic.

125.    As the Rubins knew, Rose was not actually involved in the clinical operations of Anaheim West and did not perform any of the functions of a Medical Director.

126.    The Rubins, Sah and Rose knew that Rose's medical directorship was a sham designed to procure the accreditation necessary to operate an outpatient surgery clinic, and knowingly participated in that deception.

127.   Shortly after the Rubins ousted Vu from Anaheim West, and in response to an inquiry from the Institute for Medical Quality (IMQ) (which issued Anaheim West's accreditation) as to whether there had been any change in ownership or otherwise at Anaheim West, the Rubins had Sah sign a letter to IMQ dated July 15, 2002 containing the knowingly false assertion that Sah was and had always been the owner of Anaheim West, that Rose was and had always been the Medical Director, and that there had not been any administrative or organizational change at Anaheim West.  The Rubins approved that false letter to Anaheim West's accreditor, knowing it was false.

128.   The ownership and management structure at the other Vu Enterprise clinics was similar to that at Anaheim West.  At Unity, for example, Unity LLC was the management company, and the owners of Unity LLC included a company controlled by Vu and Ngo called Nordenham Capital.  Sharing in the proceeds were, again, Defendants Gordon Merrick and Rosalinda Landon, now joined by Defendants Dee Francis and Andrew Harnen.  Michael Chan was more active at Unity than Dr. Sah had been at Anaheim West -- performing and billing for medical procedures that were carried out as part of the scheme.  Nevertheless, the lion's share of the clinic's profits went to Vu, Ngo, Merrick, Landon, Francis and Harnen, even though Chan nominally owned the clinic.

129.   The same arrangement had been implemented previously at Newport Superior, where Lars Hanson was the doctor/owner. So, too, at St. Paul, where Defendant Martha Madrid was the President and "medical director" but Vu and others got the money through the St. Paul management company, St. Paul LLC.

**4.   Patient Recruiting Organization of the Vu Enterprise**

  **a.   Anaheim West and Unity**

130.   In his Declaration in the Lincoln Management Case, Vu stated that "we spent generously on advertising and marketing [at Anaheim West] which is why business was as good as it was."  The "generous" spending on "marketing" to which Vu referred consisted of illegal payments to patient recruiters (and to patients) to get patients in the door to have the unnecessary endoscopies, colonoscopies, sweaty palms and other procedures that were the source of the clinic's substantial revenues.

131.   As co-principals of Lincoln Management (with Vu), Mitchell Rubin and Steven Rubin were both fully aware of the illegal recruiting operation at Anaheim West and participated in it.  For example, Mitchell Rubin told Dr. John Eugene, a "sweaty palms" surgeon, that Rubin gave Tom Vu a budget of a million dollars a month for patient recruiting, and that the intensive patient recruiting was the reason why Anaheim West had so many patients.

132.   The Rubins also were fully aware of, and participated in, the underlying fraud.  Mitchell Rubin (along with Tom Vu) told Dr. Eugene that if Dr. Eugene refused to perform sweaty palms surgeries on patients because the patients did not need the surgeries, Anaheim West would bring in another surgeon who would be more flexible.  Dr. Mario Rosenberg, who performed numerous unnecessary gastrointestinal procedures at Anaheim West, discussed with Vu and Mitchell Rubin that an Anaheim West patient had asked to be paid promptly after having surgery.

133.   In the Lincoln Management Case after the Rubins ousted Vu, Mitchell Rubin submitted a sworn June 2002 Declaration in which he asserted that Vu's actions at Anaheim West "were very serious and in violation of the law."  In another Declaration in that case in July 2002, Mitchell Rubin asserted that there was supposed to be a "policy" at Anaheim West that "no cosmetic surgeries were to be performed at the surgery center by physicians whose patients were to undergo surgical procedures there," but that "Tom Vu had permitted physicians to routinely perform cosmetic surgeries" in violation of that policy.  And a Declaration in that case submitted on the Rubins' behalf by Nurse Rebecca Smith stated that, after review of some of the Anaheim West patient medical files and conversations with several physicians, "I know therefrom that plaintiff's [Vu's] activities prior to June 7, 2002, are such as to constitute misfeasance and

corruption in plaintiff's performance of the management agreement based upon my review of same."

134.   However, after Vu left Anaheim West in June 2002, and after Mitchell Rubin made the sworn statements in the Lincoln Management Case quoted above, the Rubins perpetuated the Anaheim West fraud by pursuing collection of millions of dollars worth of fraudulent Anaheim West insurance bills for pre-June 2002 surgeries.

135.   Mitchell and Steven Rubin pursued collection of those pre-June 2002 billings with knowledge that those billings sought payment for unnecessary procedures on patients who did not have the medical conditions or symptoms for which the procedures were supposedly performed.

136.   As part of that collection effort, the Rubins sent letters (over the signature of Dr. Sah, as the supposed owner of Anaheim West) to scores of insurance companies, advising them that payments on Anaheim West bills should be sent to a collection agency working for the Rubins.  Among such letters were letters to various of the Plaintiff Plans dated November 8, 2002.

137.   The Rubins negotiated and/or contracted with at least 5 different collection agencies (Revcare, EMCC, Intensive Collections, Rickenbacker and Peak Financial) to collect on fraudulent Anaheim West receivables.

138.   As part of those collection efforts, the Rubins had their father, Dr. Edward Rubin, prepare bogus letters of medical necessity to insurers for surgeries that they knew were part of the corruption at Anaheim West.

139.   After the Orange County D.A.'s Office raided the Anaheim West/St. Francis offices on or about April 29, 2003, the Rubins continued their campaign to collect the fraudulent receivables.  The Rubins' efforts to collect on fraudulent Anaheim West receivables continued for at least two years after Vu was ousted from Anaheim West.

140.   The hub of Anaheim West's recruiting effort was Defendant Rosalinda Landon. As previously noted, Landon was a veteran of illegal patient recruiting to corrupt Southern California surgery clinics, having recruited many patients herself to such clinics in previous incarnations of the scheme.  The recruiting operation that Landon oversaw at Anaheim West, however, was larger than in any of the prior schemes.  Landon ran that operation using, inter alia, bank accounts of two patient recruiting companies that she had started years before, called Professional Services Management and Professional Services Exchange. Much of the funding for that illicit recruiting operation was provided to Landon's recruiting companies via checks from Lincoln Management signed by Vu's wife Huong Ngo.  Landon then paid the recruiters through checks that Landon signed

on the accounts of Professional Services Management and Professional Services

Exchange.

141.   Between June 2001, shortly after Anaheim West was formed, and

June 2002, when Vu fell out with his partners, Lincoln Management wrote scores

of large checks to Professional Services Management and Professional Services

Exchange to pay for recruiting patients to Anaheim West.  During that 12-month

period, Lincoln Management wrote as many as 6 checks a week to Professional

Services Management and Professional Services Exchange, in amounts that

routinely ranged from $20,000 to $60,000 per check, and that totaled more than

$1.7 million.  A chart of those checks is attached as Appendix A.

142.   After Lincoln Management made those transfers to Landon's

recruiting companies, Landon disbursed those funds to patient recruiters.  Among

the 20-odd recruiters that Landon paid with the funds supplied by Lincoln

Management are several who are now defendants in the criminal cases brought by

State and Federal prosecutors, including Sue Nanda (and her company Beauty

Enhancement Specialists), Maria Rosales, Olga Toscano and Pancha

Keophimphone.  Other Anaheim West patient recruiters to whom Landon paid

thousands of dollars in illegal recruiter fees included Bina Park, Lynn Lavong and

Kim Pham.  A chart of checks that Landon paid to those recruiters is attached as

Appendix B.

48

143.   The State Felony Complaint previously identified charges five recruiters (and identifies others) that Vu, Ngo and Landon paid to recruit patients to Unity.  The Felony Complaint identifies those recruiters and the amounts they received for delivering people to Unity as follows:

| 1. | Thuy Huynh | $ 90,250.00 |
|----|------------|-------------|
| 2.. | Phuc Nhat Nguyen | $204,800.00 |
| 3. | Olga Lilia Toscano | $103,250.00 |
| 4. | Sue Nanda | $247,500.00 |
| 5. | Maria Rosales | $ 78,250.00 |
| 6. | Pancha Keophimphone | $208,750.00 |
| 7. | Amanda Tran | $ 23,500.00 |

**b.   Thuy Huynh**

144.   One of the recruiters identified in the State Felony Complaint is Thuy Huynh.  In separate civil litigation involving Plaintiff Alabama Blue Cross, Huynh has admitted to recruiting patients for Defendant clinics for at least four years, from 1999-2003.

145.   Using a combination of community contacts and newspaper advertising, Huynh recruited patients covered by Plaintiffs and other insurers in areas across the country, including in Houston, San Jose, Virginia and Chicago. As part of her role in the scheme, Huynh met her recruits at Los Angeles Airport and drove them to Defendant clinics where they were immediately subjected to endoscopies and colonoscopies without any prior diagnosis or screening.

49

Following the procedures, Huynh brought the patients to a Best Western or other motel for a brief recovery period, and then returned them to the airport to fly home.

146.   Huynh ran her recruiting business through two companies, Pleasant Services, Inc. and T&T Medical Solutions, and also did business as Trang Thu Thuy Marketing.  Huynh recruited patients to all the clinics in the Vu Enterprise. For example:

--      Between September 2001 and June 2002, Lincoln Management paid 17 checks totaling $301,500 to Pleasant Services, Inc. and T&T Medical Solutions for recruiting patients to Anaheim West.  Vu's wife, Defendant Huong Ngo, signed most of those checks.  A chart of those checks is attached as Appendix C.

--      Between January 1999 and February 2003, Newport Superior Outpatient Medical Center and Newport Superior Management Group LLC paid more than 80 checks totaling almost $200,000 to Huynh and her recruiting companies for recruiting patients to Newport Superior. Defendants Catherine Bach or Lars Hanson signed most of those checks. A chart of some of those checks is attached as Appendix D.

--      Between September 2002 and October 2002, Huynh deposited eleven checks, totaling $86,500, that were made payable to Pleasant Services by Healthstar Surgical Group ("Healthstar").  Defendant Huong Ngo signed most of those checks.  The officers of Healthstar are Merrick, Landon and Francis, and

Case 8:05-cv-00230-TJH -VBK   Document 1518   Filed 03/14/11   Page 58 of 219   Page ID
#:45732

Healthstar is one of the entities referred to in the State Felony Complaint as having been established by Vu and his co-conspirators to serve as a billing alias for the submission of fraudulent claims by Unity. A chart of those checks is attached as Appendix E.

    --        Between October 2002 and June 2003, Huynh deposited eight checks, totaling $35,100, that were made payable to her or to Pleasant Services by North Orange County Imaging.  North Orange County Imaging is another Merrick-Landon-Francis entity that is identified as a Unity billing alias in the Felony Complaint. A chart of those checks is attached as Appendix F.

    --        Between May 2003 and July 2003, Huynh deposited five checks, totaling $42,900 that were made payable to her by Antioch Management, Inc. ("Antioch").  Defendant Andrew Harnen, the accountant for Unity and other components of the Vu Enterprise, signed those Antioch checks.  A chart of those checks is attached as Appendix G.

    --        And between October 2003 and March 2004, St. Paul paid 14 checks totaling more than $58,000 to Huynh and Pleasant Services.  Defendant Huong Ngo signed all of those checks except one, which was signed by Defendant Andrew Harnen.  A chart of those checks is attached as Appendix H.

**B.     The Millennium Enterprise**

       **1.     Connections to the Vu Enterprise**

147.   The head of the Millennium Enterprise was Thu Ngoc Pham, known as Perry Pham ("Pham").  As previously noted, Pham and Vu participated in surgery clinic fraud together in the mid-90's as principals of Advanced Laser Surgical Center, a forerunner of the criminal enterprises at issue here.

148.   The Millennium Enterprise committed the same fraud in the same way as the clinics in the Vu Enterprise.   Like the Vu Enterprise clinics, Millennium used a network of patient recruiters to solicit patients from across the country to have unnecessary procedures at Millennium in exchange for cash payments or credits toward free or discounted cosmetic surgery.  The fraudulent procedures performed at Millennium were the same as those performed at the Vu Enterprise clinics -- primarily endoscopies, colonoscopies and sweaty palms procedures, as well as other procedures, including nasal and gynecological procedures.

149.   The Vu Enterprise and Millennium shared common doctors.  For example, Defendant surgeons Rosenberg, Alamy, Babaknia, Chun, Chan and Patel performed, documented and billed for fraudulent procedures at both Vu Enterprise clinics and at Millennium.

150.   They also shared common patient recruiters.  For example, the Federal Indictment against Pham and Millennium, and the State Felony Complaint

against Vu and others, state that both those sets of Defendants made illegal payments to recruiters Olga Toscano and Maria Rosales.   Thuy Huynh, the patient recruiter discussed above in connection with the Vu Enterprise, also recruited patients to, and was paid by, Millennium.  For example, between April and June, 2002, Millennium paid Huynh's recruiting company, Pleasant Services, 6 checks totaling $27,000.  A chart of those checks is attached as Appendix I.

151.   Because the same patient recruiters brought patients both to Vu's clinics and to Millennium, the clinics also shared numerous individual patients.  As illustrated in the patient clusters described below, many patients in those clusters who had multiple procedures had some of their procedures at Vu Enterprise clinics and others at Millennium.

### 2.   **Fraud at Millennium**

152.   Millennium was located at 1200 N. Tustin Avenue in Santa Ana. Pham opened the clinic in 1998 under another clinic name.  He recruited a surgeon who had previously participated in the fraud at Advanced Laser to be the medical director of the clinic.  In 2000, Pham changed the name of the clinic to Millennium.

153.   The individual named in Millennium's corporate filings as the President of Millennium is Defendant Youn Toh, an anesthesiologist.  Pham, however, was the actual owner and mastermind of the Millennium fraud.

154.   The Federal Indictment against Pham and recruiters Olga Toscano,

Maria Rosales and Esmeralda Tello, alleges that Pham managed and conducted the

affairs of this enterprise with the assistance of his co-defendants and others.

155.   The Federal Indictment states:

> 11. . . . defendants MOSC [Millennium] PHAM,
> TOSCANO, ROSALES, and ORTIZ, together with other
> coconspirators, caused and intended losses to health
> insurers of approximately $34,000,000.

> 12.  Defendants PHAM and TOSCANO were managers,
> supervisors, organizers, and leaders of the criminal
> activity described in this count, which involved five or
> more persons criminally responsible for the commission
> of the offense and was otherwise extensive.

156.   Summarizing the operations of the Millennium Enterprise, the Federal

Indictment states, inter alia, that:

> 8.  The objects of the conspiracy were to be
> accomplished as follows:

> (a) Defendant PHAM operated MOSC and
> directed and managed its employees and agents,
> including, without limitation, defendants, TOSCANO,
> ROSALES, and ORTIZ;

> (b) Defendant PHAM unlawfully compensated
> defendants TOSCANO, ROSALES, ORTIZ, and other
> patient recruiters for referring patients to MOSC;

> (c) Defendants PHAM, TOSCANO, ROSALES,
> and ORTIZ offered money and discounted cosmetic
> surgery to people who had private health insurance
> coverage sponsored by their employers in order to

persuade them to undergo unnecessary outpatient medical procedures as patients at MOSC

\* \* \*

(f) Defendants MOSC, PHAM, TOSCANO, ROSALES, and ORTIZ, using the United States mail and other private or commercial interstate carriers, fraudulently billed private health insurers, and caused them to be fraudulently billed, for medical procedures performed on recruited patients that defendants MOSC, PHAM, TOSCANO, ROSALES, and ORTIZ knew to be unnecessary, corruptly induced, and falsely justified;

\* \* \*

(h) Defendants MOSC, PHAM, TOSCANO, ROSALES, and ORTIZ, knowingly concealed and failed to disclose to health insurers, and knowingly caused others to conceal and fail to disclose to such health insurers, the true facts about their fraudulent and unlawful practices.

9.  The false statements, half truths, concealed and omitted facts, and deceptive acts and practices used by defendants in furtherance of the Outpatient Fraud Scheme were material in that, had the private health insurers known the true and complete facts, they:

(a) would not have authorized treatment of recruited patients at MOSC;

(b) would not have paid for claims for unnecessary, corruptly induced, and falsely justified medical procedures; and

(c) would not have incurred losses and other unnecessary costs attempting to review and investigate fraudulent medical claims.

55

C.    **Harbor, Pacific and Premium**

157.   Three other Defendant clinics -- Harbor, Pacific and Premium -- have
been involved in the same fraud as the Vu Enterprise clinics and Millennium.  The
fraud at Harbor, Pacific and Premium is identical to the fraud at those other clinics,
with patients undergoing unnecessary endoscopies, colonoscopies and sweaty
palms surgeries in exchange for cash or discounted cosmetic surgery, and the
clinics fraudulently billing those fraudulent procedures to insurers such as
Plaintiffs.   That identical modus operandi is no coincidence, because Harbor,
Pacific and Premium are related to the other clinics in numerous ways.

158.   Harbor, Pacific and Premium are connected to other Defendant clinics
through, among other connections, their common locations, owners/officers and
anesthesiologists.  For example, Harbor is located at the same address as Newport
Superior.  One of the owners/officers of the Harbor corporate entity, Defendant
Lars Hanson, was also an owner/officer of the Newport Superior corporate entity.
The principal anesthesiologist at Pacific, who assisted in all the Pacific procedures
at issue, is Stewart Goldstein.  Before becoming affiliated with Pacific, Goldstein
had been an anesthesiologist at Newport Superior.  Public records indicate that
Premium was founded in May 2002 and that one of its original officers was an
anesthesiologist, Raad Jeiroudi.  Before assuming duties at Premium, Jeiroudi was
the anesthesiologist on numerous procedures at Newport Superior.

159.   Surgeons who participated in the fraud at Harbor, Pacific and

Premium also participated in the fraud at other Defendant clinics.  For example:

-- Defendants Alamy and Rayyes, who performed fraudulent procedures at

Pacific, also performed fraudulent procedures at other Defendant clinics -- Alamy

at Millennium, Anaheim West and Newport Superior, and Rayyes at Newport

Superior.

-- Defendants Hampton and Chun, who performed fraudulent procedures at

Premium, also performed procedures at other Defendant clinics -- Hampton at

Unity and St. Paul and Chun at Millennium and Anaheim West.

-- Defendant Govindarajan, who performed fraudulent procedures at Harbor,

also performed procedures at Anaheim West and Newport Superior.

160.   Harbor, Pacific and Premium also used the same patient recruiters as

the other clinics.  For example, as detailed above, all of the Vu Enterprise clinics,

as well as Millennium, made substantial payments to a Texas-based patient

recruiter named Thuy Huynh. Pacific's  management company, Defendant Pacific

Outpatient Medical Marketing Group, Inc. ("POMMGI"), also made payments to

Thuy Huynh.  In particular, between August and November 2001, POMMGI

issued at least 8 checks totaling more than $100,000 in illegal recruiter payments to

one of Thuy Huynh's recruiting companies, T & T Medical Solutions.  Those

checks were signed by an individual identified in public records as POMMGI's

57

registered agent, Andy Andalibian.  A chart of those checks is attached as

Appendix J.  Defendant Vicente, owner of Harbor, issued and signed checks to

Thuy Huynh through another of her recruiting companies, Pleasant Services, Inc.,

including checks dated January 11 and February 20, 2003.

161.   Defendant Moucharafieh played the same sham ownership role at

Pacific that other doctor Defendants played at other Defendant clinics (for

example, Sah at Anaheim West, Chan at Unity).  Though Pacific actually was

owned and controlled by husband and wife Defendants Bach and Andalibian, who

are not doctors, they installed Moucharafieh as a "front" owner to evade California

law that requires medical clinics to be owned completely by doctors and prohibits

lay persons from having any ownership interest.  Defendant Bach, who had

previously co-owned Newport Superior, has invoked her Fifth Amendment

privilege against self-incrimination in response to questions about the subject

matter of this lawsuit.

162.   Andalibian operated Pacific as a personal piggy bank, directing

substantial payments by the Pacific corporations to his wife, Defendant Bach; to

other members of Defendant Bach's family; to other relatives, including Rahimeh,

Javad and Hassan Andalibian; and for such personal expenses as a wedding dress.

Andalibian knew that those monies were the illegal fruits of the fraud at Pacific.

58

163.   Andalibian also directed illegal payments to patient recruiters in knowing aid of the fraud at Pacific.  For example, Andalibian signed checks dated September 29, 2001, October 27, 2001, November 17, 2001, and December 2, 18 and 27, 2001 to patient recruiter Pancha Keophimphone, and checks dated August 5 and 17, 2001, October 2 and 23, 2001, November 15, 2001, and December 1, 17 and 27, 2001 to patient recruiter Sue Nanda.  Keophimphone and Nanda illegally recruited patients for many of the Defendant clinics.

164.   One of the patient "clusters" in this fraud involved a large group of workers from an environmental services company in Phoenix, Arizona called Onyx, that received health benefits administered by Plaintiff Highmark.  As detailed below, the patient recruiter who brought those patients to Southern California was an Onyx employee named Qui Pham.  Though most of the patients in that cluster had fraudulent procedures at the Unity clinic, Qui Pham also brought several of the patients to have fraudulent procedures at Premium.

165.   The Onyx cluster is only one of several examples detailed later in this Complaint in which particular patients had some fraudulent procedures at one of the Vu Enterprise clinics or Millennium, and also had one or more fraudulent procedures at Harbor, Pacific or Premium.  See, e.g., Patient Examples HI-2, HI-5, HI-40, EX-16, MA-4, RE-4, RE-5 and CF-1, infra.   That sharing of patients

between the Vu Enterprise clinics, Millennium, and Harbor, Pacific and Premium is proof positive that they were all engaged in the same coordinated fraud.

**D.   Case-Wide Conspiracy**

166.   Those commonalities between the Vu Enterprise clinics, Millennium, Harbor, Pacific and Premium establish the existence of a case-wide conspiracy involving all of the fraud Defendants and the network of patient recruiters that supplied patients to all of them.

167.   The common modus operandi, common surgeons, common recruiters and common patients within the scheme, as illustrated in the patient examples and patient clusters detailed below, establish the elements of a case-wide conspiracy to which all the fraud Defendants agreed and in which all of them participated. Each of those Defendants was aware of the existence of the overall scheme and of the participation of others in it, and that the benefits of each were dependent on the success of the broader fraudulent venture.

168.   As a result, in addition to the joint and several liability within each RICO Enterprise alleged below, all the fraud Defendants are jointly and severally liable as co-conspirators for all of Plaintiffs' fraud damages caused by any of the Defendants.

# V.

## PARTICULARIZED FRAUDULENT ACTS
## AND ILLUSTRATIVE PATIENT EXAMPLES

169.   Because of the magnitude of the fraud, and the deceptive tactics that Defendants employed, it is not feasible to provide detailed descriptions of all of Defendants' fraudulent claims in this Complaint.  The following pages therefore describe a series of illustrative fraudulent claims, organized according to the Plaintiff involved.  Many of these illustrative claims involve "clusters" of employees from the same workplace, which is one of the red flags of the fraud in this case.

170.   For many of the patient examples detailed below, it is believed that Defendants actually performed the procedures that they fraudulently billed, knowing that the procedures were completely unnecessary, and performing them solely as a pretext for fraudulent billing.  In some cases, however, Defendants did not actually perform the procedure that was billed, and the billings were completely fictitious.  Ultimately, it makes no difference whether, in a particular case, the procedures were performed but completely unnecessary or not performed at all, because either way the claims were fraudulent.

171.   Because some surgeons were part of corporate practice groups, in some instances a procedure performed by one surgeon was billed under the name of another surgeon.  In the examples below, an allegation that a particular

Defendant surgeon was the surgeon on a particular fraudulent procedure means that the Defendant either performed, or claimed to perform, the procedure himself, knowing that it was fraudulent, or billed for it under the name of his corporate practice group, knowing that it was fraudulent.  Again, it makes no difference whether the surgeon performed and billed for the procedure or only billed for the procedure, because both the performing and billing of the procedure were essential aspects of the fraud.

**A.**   **Plaintiff Highmark**

       **1.**  **The Onyx Employee Cluster From Phoenix, Arizona**

172.   As part of the fraud targeted in this Complaint, approximately 40 employees of Onyx Environmental Services ("Onyx") and their dependents, all of whom live in the vicinity of Phoenix, Arizona, were transported to California to undergo out-patient surgical procedures, usually on a Saturday or Sunday, at Unity, St. Francis, Premium and other clinics during a one-year period from May 2002 through April 2003.  Highmark received bills for more than 100 diagnostic and surgical procedures that Defendants ostensibly performed on the Onyx employees or family members during that year.  Those bills were fraudulent.

173.   Defendants billed for at least 33 endoscopies, 28 colonoscopies, and four laparoscopies on those Onyx beneficiaries -- a total of 65 diagnostic procedures that diagnosed no actual conditions and led to no actual treatment.

174.   Defendants also billed for performing "sweaty palm" surgery on at least 17 of the Onyx employees and family members.  Five of those patients supposedly underwent this procedure twice, bringing the total to 22 sweaty palm surgeries.  Moreover, at least 19 of those sweaty palms surgeries were ostensibly performed following colonoscopies and/or endoscopies, frequently performed in rapid succession.

175.   In seven instances, Onyx patients who had endoscopies and colonoscopies returned for nasal surgeries referred to as septoplasties.  In two cases, patients who had upper and lower GI procedures returned for both nasal surgery and supposed circumcisions.

176.   Six of the Onyx patients who underwent procedures as part of this scam have admitted that the procedures were wholly unnecessary, and that a recruiter at their workplace paid them to undergo procedures at Unity and other clinics.  The individuals who made those admissions are identified in this Complaint as patients HI-01, HI-02, HI-03, HI-04, HI-05 and HI-06.  To protect patient confidentiality, patients are identified throughout this Complaint by numerical code rather than by name.

177.   In each case, money, transportation and motel rooms were provided by the recruiter, who drove them to and from the surgical center.

178.   In addition, the patients were told to lie to Highmark about symptoms that they did not actually experience, and to lie about how they chose the Defendant doctors and surgical centers, if they were contacted about their claims. The patients were also instructed, in the event Highmark forwarded the benefit checks to them rather than to the doctor or surgical center, to deposit the check in a bank and then withdraw the same amount in cash and pay it to the recruiter.  The employees were also told to keep each cash withdrawal below $10,000, the threshold at which banks report cash transactions to the federal government.

179.   The procedures that those 6 Onyx patients were paid to undergo are set forth in the following table.  The amounts paid to the patients to induce them to participate in the scheme are set forth to the extent that information is presently available.  ("N/A" in this and other charts in this Complaint denotes information not presently available.)

| ONYX PATIENTS WHO ADMITTED ACCEPTING PAYMENTS FOR UNNECESSARY PROCEDURES | | | | | |
|---|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure | Amount Paid to Patient |
| HI-6 | 3/8/03 | Unity | Rosenberg | Endoscopy | $400+ |
| HI-6 | 3/9/03 | Unity | Rosenberg | Colonoscopy | $400+ |
| HI-6 | 3/15/03 | N/A | Hampton | Sweaty Palm Surgery | $400+ |
| HI-4 | 5/19/02 | N/A | Kim | Endoscopy | N/A |
| HI-4 | 6/1/02 | N/A | Non-Defendant | Sweaty Palm Surgery | $1,000 |

64

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure | Amount Paid to Patient |
|---|---|---|---|---|---|
| HI-4 | 7/19/02 | Non-Defendant | Non-Defendant | Colonoscopy | $400 |
| HI-4 | 8/17/02 | Non-Defendant | Non-Defendant | Circumcision | $700 |
| HI-4 | 9/8/02 | Unity | Non-Defendant | Sweaty Palm Surgery | $1,000 |
| HI-4 | 10/25/02 | Unity | White | Septoplasty | $900 |
| HI-5 | 9/14/02 | Unity | N/A | Endoscopy | $400+ |
| HI-5 | 9/15/02 | Unity | N/A | Colonoscopy | $400+ |
| HI-5 | 9/21/02 | N/A | N/A | Sweaty Palm Surgery | $400+ |
| HI-5 | 10/12/02 | Premium | Non-Defendant | Circumcision | $400+ |
| HI-5 | 10/25/02 | N/A | White | Septoplasty | $400+ |
| HI-3 | 5/25/02 | N/A | Kim | Endoscopy | $400+ |
| HI-3 | 5/26/02 | N/A | Non-Defendant | Colonoscopy | $400+ |
| HI-3 | 10/4/02 | Unity | White | Septoplasty | $400+ |
| HI-1 | 7/19/02 | Non-Defendant | N/A | Endoscopy | $400+ |
| HI-1 | 8/3/02 | Non-Defendant | Rosenberg | Colonoscopy | $400+ |
| HI-2 | 5/25/02 | N/A | Govindarajan | Endoscopy | $900 |
| HI-2 | 5/26/02 | N/A | Non-Defendant | Colonoscopy | $900 |
| HI-2 | 8/24/02 | Premium | N/A | Hernia | $400+ |
| HI-2 | 10/4/02 | Unity | White | Septoplasty | $800 |

180.   Each of the Onyx patients who Defendants used to generate fraudulent claims was recruited and paid by a recruiter named Qui Pham, who Defendants paid to bring in patients. Qui Pham, a former Onyx supervisor who was fired by Onyx when his role in this scheme was exposed, also drove HI-1, HI-2, HI-4, HI-6 and other participants to and from the surgical centers, shuttling them between Phoenix and Los Angeles in a rented van.

181.   In order to lay the groundwork for the fraudulent claims, Qui Pham first collected health benefit identification cards and driver's licenses from the participants in Arizona, and faxed them to the clinics in California.

182.   Qui Pham also acted as a collector and enforcer, making sure that, if the persons he recruited for surgeries received any benefit payments directly, they turned those payments over to the doctors or clinics.  In at least one instance, Qui Pham threatened to harm a patient, the patient's wife and their daughter, if the patient did not hand over the proceeds of a $35,000 check that the patient had received from Highmark.

183.   In addition to recruiting others, Qui Pham and his wife were themselves patients at Unity and St. Francis.  Indeed, the fraudulent billing of procedures on both husbands and wives is a prominent and incriminating feature of the fraud scheme.   The billing histories of Onyx husband and wife pairs who were transported from Arizona to California to generate fraudulent medical bills are summarized in the table below.

| CLAIMS FOR ONYX HUSBAND AND WIFE PAIRS | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| HI-7 (wife) | 5/4/02 | St. Francis | Rosenberg | Endoscopy |
| HI-7 (wife) | 5/5/02 | St. Francis | Rosenberg | Colonoscopy |
| HI-7 (wife) | 5/27/02 | St. Francis | Eugene | Sweaty Palm Surgery |
| HI-7 (wife) | 7/20/02 | Non-Defendant | N/A | N/A |
| HI-8 (husband) | 5/4/02 | St. Francis | Rosenberg | Endoscopy |
| HI-8 (husband) | 5/5/02 | St. Francis | Rosenberg | Colonoscopy |
| HI-8 (husband) | 10/04/02 | Unity | Non-Defendant | Sweaty Palm Surgery |

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| HI-8 (husband) | 11/22/02 | Unity | N/A | Sweaty Palm Surgery |
| HI-15 (wife) | 5/30/02 | Anaheim West | Non-Defendant | Endoscopy |
| HI-15 (wife) | 5/31/02 | N/A | Rosenberg | Colonoscopy |
| HI-16 (husband) | 5/30/02 | Anaheim West | Non-Defendant | Endoscopy |
| HI-16 (husband) | 5/31/02 | Anaheim West | Rosenberg | Colonoscopy |
| HI-1 (wife) | 7/19/02 | Non-Defendant | N/A | Endoscopy |
| HI-1 (wife) | 7/20/02 | Non-Defendant | Chan | Laparoscopy |
| HI-1 (wife) | 8/3/02 | Non-Defendant | Rosenberg | Colonoscopy |
| HI-4 (husband) | 5/19/02 | N/A | Kim | Endoscopy |
| HI-4 (husband) | 6/1/02 | N/A | Non-Defendant | Sweaty Palm Surgery |
| HI-4 (husband) | 7/19/02 | Non-Defendant | Non-Defendant | Colonoscopy |
| HI-4 (husband) | 8/17/02 | Non-Defendant | Non-Defendant | Circumcision |
| HI-4 (husband) | 9/8/02 | Unity | Non-Defendant | Sweaty Palm Surgery |
| HI-4 (husband) | 10/25/02 | Unity | White | Septoplasty |
| HI-9 (husband) | 8/2/02 | Non-Defendant | Rosenberg | Endoscopy |
| HI-9 (husband) | 8/3/02 | Non-Defendant | Rosenberg | Colonoscopy |
| HI-9 (husband) | 11/30/02 | Unity | McKenna | Sweaty Palm Surgery |
| HI-9 (husband) | 1/5/03 | Unity | N/A | N/A |
| HI-10 (wife) | 1/4/03 | N/A | Rosenberg | Endoscopy |
| HI-10 (wife) | 1/5/03 | Unity | Rosenberg | Colonoscopy |
| HI-10 (wife) | 1/11/03 | N/A | Fuller/ McKenna | Sweaty Palm Surgery |
| HI-11 (wife) | 6/1/02 | Anaheim West | Rosenberg | Endoscopy |
| HI-11 (wife) | 6/2/02 | Anaheim West | Rosenberg | Colonoscopy |
| HI-11 (wife) | 8/3/02 | N/A | N/A | N/A |
| HI-11 (wife) | 8/5/02 | N/A | Chan | Laparoscopy |
| HI-12 (husband) | 6/2/02 | Anaheim West | Rosenberg | Endoscopy |
| HI-12 (husband) | 8/2/02 | Non-Defendant | Rosenberg | Colonoscopy |
| HI-13 (husband) | 5/18/02 | N/A | Rosenberg | Endoscopy |
| HI-13 (husband) | 5/19/02 | N/A | Rosenberg | Colonoscopy |
| HI-14 (wife) | 5/25/02 | N/A | Kim | Endoscopy |
| HI-14 (wife) | 5/26/02 | N/A | Non-Defendant | Colonoscopy |
| HI-14 (wife) | 7/20/02 | Non-Defendant | Chan | Laparoscopy |
| HI-19 (husband) | 5/4/02 | St. Francis | Rosenberg | Endoscopy |

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| HI-19 (husband) | 5/5/02 | St. Francis | Rosenberg | Colonoscopy |
| HI-19 (husband) | 10/25/02 | N/A | Non-Defendant | Sweaty Palm Surgery |
| HI-19 (husband) | 12/20/02 | Unity | Fuller/ McKenna | Sweaty Palm Surgery |
| HI-38 (wife) | 5/4/02 | N/A | Rosenberg | Upper GI Endoscopy |
| HI-38 (wife) | 5/27/02 | N/A | N/A | Sweaty Palm Surgery |
| HI-38 (wife) | 10/25/02 | Unity | N/A | Sweaty Palm Surgery |
| HI-29 (husband) | 1/14/03 | Unity | Rosenberg | Endoscopy |
| HI-39 (wife) | 1/11/03 | N/A | Fuller/ McKenna | Sweaty Palm Surgery |
| HI-32 (wife) | 4/12/03 | Unity | Rosenberg | Endoscopy |
| HI-32 (wife) | 4/13/03 | Unity | Rosenberg | Colonoscopy |
| HI-33 (husband) | 4/12/03 | Unity | Rosenberg | Endoscopy |
| HI-33 (husband) | 4/13/03 | Unity | Rosenberg | Colonoscopy* |

184.   The billing of procedures on these husband and wife teams further reveals the fraud.  For example, the possibility that a husband and wife would both require sweaty palms surgery is virtually nil, yet Defendants purported to have performed that rare procedure on the couples designated as patients HI-7 and HI-8, HI-9 and HI-10, and HI-19 and HI-38.

185.   Other Onyx employees were shuttled from Arizona to the Defendant clinics for the same or similar combinations of procedures.  A chart of the fraudulent

---

*  Where this chart, and others infra, reference "Fuller/McKenna," or "Houck/McKenna," Fuller or Houck fraudulently performed the unnecessary sweaty palm surgery, and McKenna fraudulently billed it.  Fuller, Houck and McKenna all understood that those actions were part of the fraud complained of herein.

procedures that Defendants supposedly performed on these additional Onyx

employees is attached as Appendix K.

186.   Sweaty palm surgery can produce a variety of complications, including

bleeding in the chest cavity, pneumothorax (air in the chest cavity that impedes

breathing), infection, intercostal neuralgia (rib pain), and, most frequently, increased

sweating in other parts of the body.  Several of the sweaty palm surgeries that

Defendants fraudulently performed on Onyx employees injured the patients. For

example, patients HI-4 and HI-5 both suffered severe pain and breathing difficulties

following their sweaty palm surgeries.  Defendants further endangered both patients

by discharging them while their breathing problems persisted.  Patient HI-5 suffers

other ongoing injuries, including a need to wear gloves because his hands are now

too sensitive to be exposed.

187.   Two patients who admit being paid to undergo nasal surgery (HI-2 and

HI-3) have breathing problems caused by the surgery.  Neither had any breathing

problem before the surgery.

188.   Patient HI-1 was paid to undergo a laparoscopy -- a procedure in which

a scope is inserted through an incision in the patient's abdomen.  Patient HI-1 had no

symptoms prior to the procedure, but now suffers pelvic pain as a result of the

laparoscopy.

189.   Highmark paid over $1.5 million on bills in connection with the Onyx cluster.

## 2.  **Other Highmark Patients**

190.   Individual Highmark patient histories confirm the fraud that is exposed in employee clusters such as the Onyx cluster.  For example, patient HI-40 was fraudulently billed as having had 8 separate procedures in two short bursts at Defendants Harbor, Premium and St. Paul in 2003.  Harbor fraudulently billed the first 3 of those procedures, claiming that HI-40 underwent an endoscopy, a colonoscopy and a hemorrhoid procedure in a mere 5 days (January 11-15) at that clinic.  Defendant Govindarajan was the surgeon on at least 1 of those procedures.  The venue then shifted to Defendant Premium, where Defendant Hampton fraudulently claimed that he performed a sweaty palms surgery on HI-40 about two weeks later, on January 28, 2003.

191.   After a hiatus of several months, Defendants Premium and Chun fraudulently billed Highmark for a gynecological procedure on HI-40 on August 29, 2003.  A week after that, on September 6, 2003, Defendants St. Paul and Rosenberg claimed to have performed a second  endoscopy on HI-40, followed by a second colonoscopy the next day, September 7.  Finally, Defendant Rosenberg fraudulently claimed to have performed a second hemorrhoid procedure on HI-40 on September 24, 2003.

192.   Highmark was defrauded into paying more than $72,000 for HI-40's procedures.

193.   A Highmark husband and wife pair, HI-41 and 42 respectively, was billed as having had six procedures between them in February-March 2003, 5 of them at Harbor.  Between February 1 and February 6, the husband and wife each had an unnecessary endoscopy and an unnecessary colonoscopy, with two of those 4 procedures by Defendant Govindarajan and another by Defendant Kim. All of those unnecessary procedures were performed at Harbor except the procedure by Defendant Kim, which was at Unity.  A few days later, on February 8, the wife supposedly had a D&C by Harbor's owner, Defendant RizalinoVicente, M.D.. Harbor's own records show that Vicente never met the patient until the day the procedure was performed.  Then, on March 18, 2003, the husband had a supposed septoplasty by Defendant White at Harbor.

194.   Highmark was defrauded into paying almost $26,000 for the fraudulent procedures on HI-41 and 42.

**B.    Plaintiff Tennessee Blue Cross (Magnetek Patient Cluster)**

195.   Tennessee Blue Cross was defrauded into paying about $400,000 for approximately 100 procedures that Defendants and their co-conspirators claimed to have performed on employees of Magnetek, Inc. and their dependents.

196.    The bills submitted for the Magnetek patients reflect the same fraudulent practices that are reflected in the Onyx examples described above.  For example:

a.    Numerous employees and their dependents (at least 30) were recruited from the same workplace.

b.    Numerous employees underwent the same sequence of diagnostic procedures and unrelated surgeries.

c.    The number and frequency of diagnostic and surgical procedures billed can only be explained by fraud, as demonstrated by the billing histories of two families in the Magnetek cluster.  One family of four (designated Family 1 in the following chart) underwent 14 diagnostic and surgical procedures in less than six weeks, while another family (designated Family 2) underwent 15 diagnostic and surgical procedures in less than eight weeks.  The surgeries -- including two carpal tunnel surgeries and two tonsillectomies -- were unrelated to the diagnostic procedures that Defendants previously performed on the same patients.

| MAGNETEK PATIENT FAMILIES | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| **Family 1** | | | | |
| TN-01 (Mother) | 09/19/01 | Anaheim West | Non-Defendant | Upper GI Endoscopy |
| TN-01 (Mother) | 09/21/01 | Anaheim West | Kim | Colonoscopy |
| TN-02 (Daughter 19) | 09/21/01 | Anaheim West | Kim | Upper GI Endoscopy |

72

| TN-03 (Daughter 15) | 09/21/01 | Anaheim West | Kim | Upper GI Endoscopy |
|---|---|---|---|---|
| TN-01 (Mother) | 09/23/01 | Anaheim West | Kim | Colonoscopy |
| TN-02 (Daughter 19) | 09/23/01 | Anaheim West | Kim | Colonoscopy |
| TN-03  (Daughter 15) | 09/23/01 | Anaheim West | Kim | Colonoscopy |
| TN-04  (Father) | 09/28/01 | Anaheim West | Kim | Upper GI Endoscopy |
| TN-04 (Father) | 10/01/01 | Anaheim West | Kim | Colonoscopy |
| TN-01 (Mother) | 10/05/01 | Anaheim West | Chun | Colporrhaphy |
| TN-04 (Father) | 10/19/01 | Anaheim West | White | Septoplasty |
| TN-05 (Son) | 10/19/01 | Anaheim West | Kim | Tongue tie repair |
| TN-04 (Father) | 10/26/01 | Anaheim West | White | Tonsillectomy |
| TN-01 (Mother) | 10/30/01 | Anaheim West | Chun | Hysterectomy |
| **Family 2** | | | | |
| TN-06 (Father) | 10/05/01 | N/A | Rosenberg | Upper GI Endoscopy |
| TN-07 (Mother) | 10/05/01 | Newport Superior | Rosenberg | Upper GI Endoscopy |
| TN-06 (Father) | 10/06/01 | Non-Defendant | Non-Defendant | Upper GI Endoscopy |
| TN-08 (Son 17) | 10/06/01 | Non-Defendant | Non-Defendant | Upper GI Endoscopy |
| TN-09 (Daughter 12) | 10/06/01 | Non-Defendant | N/A | Upper GI Endoscopy |
| TN-06 (Father) | 10/07/01 | Non-Defendant | Rosenberg | Colonoscopy |
| TN-07 (Mother) | 10/07/01 | Newport Superior | Rosenberg | Colonoscopy |
| TN-06 (Father) | 10/09/01 | Newport Superior | Non-Defendant | Carpal tunnel surgery |
| TN-07 (Mother) | 10/09/01 | N/A | Non-Defendant | Sinus Exploration |
| TN-06 (Father) | 10/13/01 | Newport Superior | Non-Defendant | Carpal tunnel surgery |
| TN-06 (Father) | 11/03/01 | Anaheim West | N/A | Tonsillectomy |
| TN-08 (Son 17) | 11/03/01 | Anaheim West | White | Tonsillectomy |
| TN-09 (Daughter 12) | 11/03/01 | Anaheim West | Kim | Tongue tie repair |

73

| TN-06 (Father) | 12/02/01 | Anaheim West | Kim | Anal fistula removal |
| TN-08 (Son 17) | 12/02/01 | Anaheim West | Kim | Anal fistula removal |

197.   These claims for procedures allegedly performed on Family 1 and Family 2 are particularly revealing.  Among other things:

a.   All four members of each family were first subjected to explorations of their GI systems.  The daughters in Family 1, aged 15 and 19, each had colonoscopies and endoscopies, as did their parents.  The son and daughter in Family 2, aged 17 and 12, each had endoscopies, and their parents had both endoscopies and colonoscopies.  The mother in Family 1 supposedly underwent three such procedures in a span of five days: on September 19, September 21, and September 23, 2001.

b.   After supposedly performing 17 GI diagnostic procedures on the members of these two families, Defendants supposedly performed at least 11 surgeries that were completely unrelated to any of the diagnostic procedures.  Thus:

--   Defendant Kim at Anaheim West submitted claims for "tongue tie" operations on the first family's 13 year-old son and on the second family's 12 year-old daughter.

--   Defendant White at Anaheim West submitted claims for tonsillectomies on both fathers, as well as on the second family's 17 year-old son.

---   The colonoscopies and endoscopies performed on the two families

74

were followed by carpal tunnel (wrist) surgery, nasal surgery, a hysterectomy, and "anal fistula removals."

c.      Defendants performed these diagnostic and unrelated surgical procedures on the same patients in rapid-fire succession, bringing some patients back every other day.  Defendants performed 14 exploratory and surgical procedures on Family 1 during the period September 19 to October 30, 2001 and performed 15 exploratory and surgical procedures on Family 2 during the period October 5 to December 2, 2001. On five occasions, Defendants Kim and White billed for allegedly performing procedures on three members of each family on the same day.

198.   The multitude of surgeries that Defendants performed on other persons from the same workforce further reveals the fraud.  Illustrative examples of the fraudulent benefit claims that Defendants generated for other Magnetek employees, including several sweaty palms surgeries by Defendant Eugene, are set forth in a chart annexed as Appendix L.

**C.      Plaintiff Michigan Blue Cross (Textron Patient Cluster)**

199.   Defendants submitted fraudulent bills in connection with a cluster of employees of Textron Fastening Systems and their dependents that is even larger than the Onyx and Magnetek clusters.  The Textron group actually included 2 separate clusters, one from a facility in Costa Mesa, California, and the other from a facility in the Phoenix, Arizona area.  The Textron employees received health

benefits from Michigan Blue Cross, which paid more than $800,000 as a result of fraudulent claims that Defendants and their co-conspirators submitted for procedures allegedly performed on this group.

200.    Between the two Textron groups, Defendants and their co-conspirators submitted more than 130 fraudulent claims for diagnostic and surgical procedures that they claimed to have performed on some 45 Textron employees and dependents at Millennium, Anaheim West, Unity and related facilities.  Those patients included 7 husband and wife pairs and a mother-daughter pair.  All of those patients were billed as having had endoscopies and colonoscopies.  Some were also the subjects of fraudulent claims for sweaty palms surgeries, laparoscopies, septoplasties, and foot and eye procedures.

201.    About three dozen of those patients were employed at a facility in Costa Mesa operated by Intesys, a Textron affiliate.  Examples of case histories from that group are as follows:

202.    One patient, MI-38, was billed as having 8 separate procedures between October 2001 and December 2002.  The first two of those procedures were at Millennium, and were billed as an endoscopy and a colonoscopy by Defendant Halac on October 28 and November 9, 2001.  MI-38 did not need either of those procedures, and did not have the serious abdominal pain and rectal hemorrhaging that Millennium and Dr. Halac claimed she had.  Rather, MI-38 needed money and

was told by Maria Rosales, a patient recruiter who is a criminal defendant named in both the State Felony Complaint and the Federal Indictment, that she would be paid if she had an endoscopy and a colonoscopy.  MI-38 had the endoscopy and the colonoscopy, and Rosales paid her $300 after the procedures.

203.   MI-38 then decided that she wanted a tummy tuck.  Rosales told MI-38 that, because she had already had some procedures at Millennium, she could have the tummy tuck at a discount.  MI-38 did not have the money for even a discounted tummy tuck, so she decided to have another fraudulent procedure to help her pay for it.  On November 26, 2001, MI-38 supposedly underwent a laparoscopy and a urogenital procedure for leaking urine by Defendant Chun at Millennium.  MI-38 did not have a leaking urine problem and only submitted to the procedures because Rosales paid her another $300.  Later, MI-38 had the tummy tuck at Millennium.

204.   MI-38 also wanted to have laser vision correction surgery.  In May 2002, she received the vision correction surgery at a discount at a non-Defendant clinic, paying only $500.   Michigan Blue Cross was billed for corneal transplants on MI-38 in May and July 2002, but she did not actually have corneal transplants, only the non-covered laser vision correction procedure.

205.   MI-38 then started having procedures at Unity through Olga Toscano, another patient recruiter who is named in both the State and Federal criminal cases. On September 20, 2002, MI-38 supposedly had a septoplasty by Defendant White at

Unity, but she did not have the serious sinus problems that White and Unity claimed she had.  She only underwent the nasal surgery because Toscano promised to pay her another $300.  Toscano also paid MI-38 another $300 to undergo a second round of endoscopies and colonoscopies, which were performed by Defendant Rosenberg on December 13 and 14, 2002.  Again, MI-38 did not have the serious abdominal pain and hemorrhoids that Unity and Rosenberg claimed she had; she only had the procedures because Toscano promised to pay her.

206.   To obtain still more payments, MI-38 arranged through Toscano for her husband, MI-26, to have an unnecessary endoscopy and a colonoscopy at Unity. MI-26 only had one of those procedures, a colonoscopy by Defendant Rosenberg at Unity on August 24, 2002.  Nonetheless, Unity, through its Healthstar and Universal billing aliases, fraudulently billed for both procedures.  Michigan Blue Cross was defrauded into paying about $45,000 for the procedures on MI-38 and her husband.

207.   Another Textron/Intesys employee, MI-14, and her husband, MI-15, had 10 fraudulently-billed procedures at Millennium, St. Francis and Unity.  MI-14 was told by a friend at work, MI-44, that she could get free cosmetic surgery at Millennium, and MI-44 referred MI-14 to Olga Toscano.  MI-14 told Toscano that she wanted cosmetic surgery to remove the fat around her eyelids, but Toscano said that if MI-14 wanted the surgery for free, she would first have to have an endoscopy and a colonoscopy.  MI-14 had the fraudulent endoscopy and colonoscopy at

78

Millennium on March 3 and March 10, 2001, by Defendant Jigjinni.  MI-14's

husband, MI-15, also had an unnecessary endoscopy and colonoscopy at

Millennium, by Defendant Halac, so that MI-14 could have her free cosmetic eye

surgery.  MI-14 eventually had her free cosmetic eye surgery, which was performed

at Defendant St. Francis on May 16, 2002, and was fraudulently billed as a

medically necessary eye procedure.

208.   Also in May 2002, MI-14 had an elective procedure to tighten her

vagina to increase sexual gratification.  Defendant Chun performed that procedure at

Millennium on May 6, 2002, billing and documenting it as a urogenital procedure

for urinary incontinence.  MI-14 did not have an incontinence problem, and only

wanted a vaginal tightening to enhance the sexual experience.

209.   On consecutive weekends in December 2002, MI-14 and her husband

MI-15 each had a second round of unnecessary endoscopies and colonoscopies, this

time at Unity by Defendants Rosenberg and Kim, so that MI-14 could have another

free or discounted elective   procedure.  Again, neither MI-14 nor her husband had

any of the intestinal problems that Unity and the surgeons claimed they had.  MI-14

never had the second elective surgery.

210.   Michigan Blue Cross was defrauded into paying more than $50,000 for

the fraudulent procedures on MI-14 and MI-15.

211.   Other Textron/Intesys employees also had fraudulent procedures in order to receive free cosmetic surgery, and also had cosmetic procedures that were disguised as functional procedures.  For example, MI-40, MI-41 and MI-42  had unnecessary endoscopies and colonoscopies by Defendants Alamy and Halac at Millennium so they could get free breast implants for themselves or a family member.  MI-40 and MI-21 each had a cosmetic eye surgery by a non-Defendant surgeon (MI-40 on April 11, 2002 at Anaheim West and MI-21 on September 5, 2002 at Millennium) that the surgeon and the clinics fraudulently billed and documented as a medically necessary eye procedure.  Like MI-14, MI-21 and MI-41 had vaginal tightenings for sexual gratification that were fraudulently billed by Defendant Chun and Millennium as urogenital procedures.

212.   One Textron/Intesys patient, MI-34, who was billed as having had multiple procedures at Millennium and Anaheim West, had 3 cosmetic procedures – a tummy tuck, liposuction and a cosmetic eye surgery.   Two others, MI-31 and MI-44, who were billed as having had 7 and 8 procedures respectively at Millennium, Anaheim West and Unity, also had multiple cosmetic procedures.

213.   Defendant Toh was the anesthesiologist on many of the fraudulent Millennium procedures in the Textron/Intesys cluster, including procedures on patients MI-14 (March 10, 2001), MI-19 (July 6, 2002), MI-21 (March 23 and September 5, 2002), MI-38 ((November 26, 2001), and MI-40 (June 18, 2002).

214.   A chart of the Textron/Intesys Costa Mesa patients is annexed as

Appendix M.

215.   While the Textron/Intesys patients were repeatedly being run through

Defendants' fraud mill, another group of Textron patients was being recruited for

fraudulent procedures from a  Textron facility in Phoenix, Arizona.  A summary of

the claims that Defendants and their co-conspirators submitted for the Arizona group

of Textron employees appears in the following table:

| ARIZONA TEXTRON EMPLOYEES | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| MI-1 | 9/8/2001 | N/A | N/A | Sweaty Palm Surgery |
| MI-1 | 11/21/2001 | Non-Defendant | N/A | Laparoscopy |
| MI-2 (wife) | 6/22/2002 | Newport Superior | Chan | D&C |
| MI-2 (wife) | 10/19/2002 | Unity | Kim | Upper GI Endoscopy |
| MI-2 (wife) | 10/20/2002 | Unity | Rosenberg | Colonoscopy |
| MI-2 (wife) | 10/26/2002 | Unity | Rosenberg | Removal of Hemorrhoids |
| MI-46 (husband) | 6/22/2002 | Newport Superior | N/A | Sweaty Palm Surgery |
| MI-3 | 3/23/2002 | Anaheim West | Non-Defendant | Upper GI Endoscopy |
| MI-3 | 3/23/2002 | Anaheim West | N/A | Colonoscopy |
| MI-3 | 3/24/2002 | Anaheim West | N/A | Colonoscopy |
| MI-3 | 4/6/2002 | Anaheim West | White | Septoplasty |
| MI-4 | 5/25/2002 | Anaheim West | Kim | Upper GI Endoscopy |

| ARIZONA TEXTRON EMPLOYEES | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| MI-4 | 5/26/2002 | Anaheim West | Non-Defendant | Colonoscopy |
| MI-5 (Husband) | 5/25/2002 | Anaheim West | Kim | Upper GI Endoscopy |
| MI-5 (Husband) | 5/26/2002 | Anaheim West | Non-Defendant | Colonoscopy |
| MI-6 (Wife) | 5/25/2002 | N/A | Kim | Upper GI Endoscopy |
| MI-6 (Wife) | 5/26/2002 | N/A | Non-Defendant | Colonoscopy |
| MI-7 | 5/18/2002 | Anaheim West | Rosenberg | Upper GI Endoscopy |
| MI-7 | 5/18/2002 | Anaheim West | Rosenberg | Colonoscopy |
| MI-7 | 5/19/2002 | Anaheim West | Rosenberg | Colonoscopy |
| MI-8 | 5/18/2002 | N/A | Rosenberg | Upper GI Endoscopy |
| MI-8 | 5/19/2002 | Anaheim West | Rosenberg | Colonoscopy |
| MI-8 | 5/20/2002 | Anaheim West | Rosenberg | Removal of Hemorrhoids |
| MI-9 | 2/2/2002 | Anaheim West | Rosenberg | Upper GI Endoscopy |
| MI-9 | 2/3/2002 | Anaheim West | Rosenberg | Colonoscopy |

216.   Many of those Arizona Textron patients had their fraudulent procedures on weekends.  During one weekend in May 2002 (May 18 and 19, 2002), Defendants Anaheim West and Rosenberg claimed to have performed endoscopies and colonoscopies on two of those employees (MI-7 and MI-8).   One of the two

(MI-7) was billed as having had an endoscopy and a colonoscopy on Saturday and then another colonoscopy on Sunday.

217.   The next weekend (May 25 and 26, 2002), Defendants transported two Textron employees and a spouse (MI-4, MI-5 and MI-6) to undergo six endoscopies and colonoscopies at Anaheim West.  Defendant Kim fraudulently billed for performing three endoscopies and a colonoscopy on those patients on Saturday, May 25, and a non-Defendant surgeon claimed to have performed three colonoscopies on those patients on Sunday, May 26.

218.   Less than a month later, on another weekend (June 22, 2002), Defendants transported a husband and wife (MI-2 and MI-46), to undergo a gynecological procedure and sweaty palms surgery at Newport Superior.

**D.     Plaintiff Empire (Pepsi and Fujicare Clusters)**

219.   Defendants submitted fraudulent bills to Empire for unnecessary procedures on a cluster of patients who were recruited at a Pepsi facility in Texas.

220.   Empire was defrauded into paying more than $200,000 for 18 procedures that Defendants allegedly performed on 7 Pepsi employees, including tell-tale combinations of endoscopies, colonoscopies, and sweaty palm surgeries. Most of the procedures were performed at St. Paul.  A chart of the Pepsi cluster is attached as Appendix N.

221.   Six of the seven Pepsi patients were fraudulently billed as having had sweaty palms surgery at St. Paul between July 2003 and November 2003. Defendant McKenna billed for fraudulent sweaty palms surgery performed by Defendant Houck on two Pepsi employees, EM-2 and EM-3 on or about the same day (Saturday, October 4, 2003).  The likelihood that six people from the same Texas employer had an actual need to travel to California within several months of each other to have "sweaty palms" surgery is virtually zero.

222.   Several of the Pepsi patients were unnecessarily subjected to a trio of procedures in rapid succession: an endoscopy, followed by a colonoscopy, followed by sweaty palms surgery.  One patient, EM-4, had three procedures in five days at St. Paul: an endoscopy on October 27, 2003 by Defendant Rosenberg, a colonoscopy on October 28, and sweaty palms surgery on November 1 performed by Defendant Houck and billed by Defendant McKenna.  Another patient, EM-2, had five procedures in eight days at St. Paul: an endoscopy on September 29, 2003 by Defendant Rosenberg, a colonoscopy the next day by Defendant Rosenberg, another GI procedure on October 2 on which Defendant Madrid was the anesthesiologist, and sweaty palms surgeries on October 4 performed by Defendant Houck and billed by Defendant McKenna and on October 6.  EM-2 then traveled back to Southern California in December 2003 for another endoscopy by Defendant Rosenberg.

223.   Empire also paid over $272,000 as a result of fraudulent health benefit claims that Defendants submitted for procedures allegedly performed on three employees of Fujicare, including two persons employed at an Arizona facility.  A chart summarizing these claims is annexed as Appendix O.

224.   Patient EM-9 from Mesa, Arizona and EM-10 from Phoenix, Arizona, account for $192,000 of the payments, and present the type of billing pattern that could only result from Defendants' scheme.  Defendants billed for performing endoscopies on both Arizona employees on December 7, 2002, and then Defendants billed for performing sweaty palms surgery on both Arizona employees on December 19, 2002.

225.   Both of the sweaty palms surgeries were performed by Defendant Fuller, and were billed by Defendant McKenna and also in the name of Universal Medical Surgical Group and St. John Surgical Group, Inc., which are identified in the State Felony Complaint as among the billing aliases used by Unity.

**E.**   **Plaintiff Excellus (including Linvatec and Welch Allyn Clusters)**

226.   Defendants recruited at least four employees from a Linvatec facility in Florida who had health benefits through Plaintiff Excellus.  Those employees traveled from Florida to Southern California and were billed as having had 8 procedures at the Unity clinic in less than a month.

227.   The first Linvatec employee to make the trip from Florida to California, patient EX-1, began by having an upper GI endoscopy on November 2, 2002, followed the next day by a colonoscopy.  EX-1 returned a few weeks later, this time accompanied by 3 other Linvatec employees.  EX-1 then had a sweaty palms surgery (November 29, 2002), as did two of his co-workers, EX-2 and EX-3, all three surgeries performed by Defendant Fuller and billed by Defendant McKenna on November 30.  EX-2 and EX-3 also had upper GI endoscopies, at least one by Defendant Rosenberg.  The fourth Linvatec patient, EX-4, supposedly had a septoplasty by Defendant White.

228.   A chart of the Florida Linvatec procedures, for which Excellus paid about $23,000, is attached as Appendix P.

229.   Another cluster of Excellus-insured patients were employees, or dependents of employees, of a medical device manufacturer, Welch Allyn, in the San Diego area.  Eleven Welch Allyn employees or dependents, including two husband and wife pairs, had a total of 23 fraudulently-billed procedures, 20 of them at Defendant Pacific in the first half of 2002, and the other 3 at Defendant Harbor in March 2003.

230.   The first two patients in the Welch Allyn cluster, EX-5 and EX-6, had 5 fraudulently billed procedures between them at Pacific in January 2002.  Each of them was fraudulently billed as having had an endoscopy on January 13 and a

colonoscopy on January 20.  The endoscopy and colonoscopy on EX-6 both were performed by Defendant Rayyes.

231.   At about the same time, two couples, EX-8 and EX-9, and EX-10 and EX-11, had matching pairs of endoscopies and colonoscopies at Pacific.  EX-11 was the subject of fraudulent bills for an endoscopy and a colonoscopy on January 8 and 13, 2002 respectively, both by Defendant Rayyes, and her husband, EX-10, was billed as having had his procedures on February 16 and 23, both by Defendant Lluncor.  EX-8 and EX-9 both had endoscopies on February 10 and colonoscopies on February 24, with all 4 procedures fraudulently documented and billed by Defendant Rayyes.

232.   In April and May 2002, three more Welch Allyn patients, EX-7, EX-12 and EX-14, had 6 more upper and lower GI procedures, 5 by Defendant Lluncor and 1 by Defendant Rayyes.  In July 2002, EX-13 was the subject of a fraudulent sweaty palms surgery at Pacific, and patient EX-12 returned in August for a sweaty palms surgery as well, her third procedure overall.

233.   One Welch Allyn patient, EX-15, did not go to Pacific.  Instead, her patient recruiter directed her to Defendant Harbor.  Harbor fraudulently billed for 3 procedures on EX-15 within 5 days, an endoscopy on March 15, a colonoscopy on March 16, and a D & C on March 19.  Defendant Govindarajan fraudulently performed, billed and documented the endoscopy and the colonoscopy.

234.   Excellus was defrauded into paying more than $125,000 in connection with the Welch Allyn cluster.  A chart of the cluster is attached as Appendix Q.

235.   An Excellus patient who was not part of a workplace cluster, EX-16 from Texas, was used to produce 4 fraudulent insurance claims, two for procedures by Defendant Alamy at Defendant Pacific (an upper GI endoscopy on May 29, 2001 and a colonoscopy on May 30, 2001), and two at Anaheim West (a laparoscopy by Defendant Chan on January 5, 2002 and a supposed carpal tunnel repair on January 9, 2002).  EX-16 traveled from her home in Missouri City, Texas to Southern California for those supposed procedures.  Subsequent medical records for EX-16 expose Defendants' fraud in her case.

236.   Three months after Defendants ostensibly performed a "laparoscopy" and "carpal tunnel repair" on EX-16 at Anaheim West, she was treated near her home in Texas for keloid scars "secondary to plastic surgery."  EX-16 filled out a New Patient Health History for her Texas dermatologist on April 17, 2002. Responding to a request to list "prior surgeries," she identified "cosmetic surgery" -- never mentioning the laparoscopy or the carpal tunnel surgery that she supposedly underwent in California several months earlier.  Moreover, the medical history taken by her Texas dermatologist recorded that she had "plastic surgery in California Jan. 2002 for 'face lift'" and that the scars for which she sought treatment in Texas were "secondary to plastic surgery."

237.   Before EX-16 had her supposed carpal tunnel surgery at Anaheim West, she filled out a Patient Registration Form indicating that she was referred by "Johnny Huynh."  Johnny Huynh is the brother of Thuy Huynh, the capper discussed in detail above,  and Johnny Huynh is one of the cappers identified in the State Felony Complaint.  As set forth on page 14 of the State Felony Complaint, Vu and his co-defendants illegally:

> delivered rebates, refunds, commissions, and other consideration in the form of money and otherwise as compensation and inducement to Ngoc Huynh, a capper known to them as "Johnny", for the referral and procurement of patients.

238.   Excellus was defrauded into paying $40,314 in connection with the procedures on  EX-16.

**F.     Plaintiff Alabama Blue Cross (including Teledyne and Mount Vernon Mills Clusters)**

239.   Defendants recruited 11 patients from a Texas facility that is operated by Teledyne with health benefits provided by Alabama Blue Cross.

240.   Alabama Blue Cross paid over $268,000 for 27 procedures that Defendants allegedly performed on the 11 Teledyne employees at Newport Superior in 1999 and 2000, at Millennium in 2001, at Pacific in 2001, and at a clinic called Valley Multi-Specialty in 2003.  (Valley Multi-Specialty is a clinic that Unity rented to conduct procedures that could not be performed at the Unity clinic.)

241.   Two of the Teledyne patients, AL-2 and AL-7, testified about their experiences with Defendants' fraud in depositions they gave in a case entitled, <u>Thuy Duong Nguyen et al. v. Johnny Huynh et al.</u>, Texas District Court, Harris County, Cause No. 2003-35573).  Those 2 patients, whose procedures accounted for over $90,000 of the damages sustained in connection with the Teledyne cluster, testified that they went to California solely to obtain cosmetic surgery, and that they were recruited for those trips by Thuy Huynh, the patient recruiter discussed above.  The bills that Defendants submitted, however, were for endoscopies, colonoscopies and other supposed medical procedures.

242.   AL-7 first traveled from Texas to Southern California in February 2000.  As a result of that visit, Alabama Blue Cross was billed for two endoscopies, on February 9 and 13, 2000 at Newport Superior.

243.   AL-7 traveled back to Southern California in June 2003, producing bills for a trio of procedures -- an endoscopy, a colonoscopy, and a gynecological procedure by non-Defendant surgeons at Valley Multi-Specialty between June 20 and 27, 2003.

244.   In the Texas case, AL-7 testified that her sole reason for going on both those trips was to have cosmetic surgery and that she was recruited by Thuy Huynh.  AL-7 testified as follows:

> Q: . . In 2000 when you went to California, what procedure was
> performed, if any? . . .

A: Yes, redone -- redid the breasts.

Q: . . . Redid the breasts.  What do you mean when you say that the breasts were redone?

A: Yes.  Just like what I said earlier, one side was higher than the other, one side is lower; so now I want to have that done to make it even.

245.    AL-7 denied that she had any other procedures done when she was at Valley Multi-Specialty in June 2003:

Q: [D]id you have anything else done in California in 2003? . . .

A: No, no.

Q: . . . Did you have any other medical procedures done? . . .

A: No.

246.    With respect to the recruiter, Thuy Huynh, AL-7 testified:

Q: What is your understanding of Thuy Huynh's role in your going back to Southern California in June 2003?

A: The role, I think it's to do the same thing: She send the people for cosmetic surgery.

247.    The other patient, AL-2, traveled with AL-7 on the trips to Newport Superior in February 2000 and to Valley Multi-Specialty in June 2003.  Alabama Blue Cross was billed for an endoscopy/colonoscopy combination on AL-2 at Newport Superior on February 16 and 20, 2000, respectively, and an endoscopy, a colonoscopy, and a gynecological procedure at Valley Multi-Specialty between June 10 through 14, 2003 by the same surgeons who performed the same

procedures on AL-7.  Like AL-7, AL-2 testified that she made those trips solely to

have cosmetic surgery and was recruited by Thuy Huynh.

248.   Alabama Blue Cross was also defrauded in connection with bills

submitted by Defendant Pacific and several surgeons for procedures on three

members of one family.  Pacific and the surgeons claimed to have performed 10

procedures on the family between March and July of 2002.

249.   Pacific and Defendant Lluncor fraudulently billed Alabama Blue

Cross for a total of 5 endoscopies and colonoscopies that they claimed to have

performed on the father and mother (AL-12 and 13) in March 2002.  On May 2 and

May 5, 2002, Pacific and Defendant Rayyes fraudulently claimed to have

performed an endoscopy and a colonoscopy on the family's 19 year-old daughter

(AL-14).  Defendant White also participated in the fraud involving this family,

claiming to have performed a medically necessary septoplasty on the mother on

May 14.  The fraud in connection with this family concluded with a fraudulent bill

for a hemorrhoid procedure on the father on June 3, and a fraudulent bill for a

laparoscopy on the mother on July 5.

250.   Alabama Blue Cross was deceived into paying more than $130,000 on

those fraudulent bills.

251.   Alabama Blue Cross was also victimized through a cluster of at least 7

patients from Georgia who received benefits through Mount Vernon Mills.  Those

patients had fraudulent procedures at Harbor, Pacific, St. Paul, Millennium and

Premium.  One of the Mount Vernon Mills patients, AL-15, was billed as having

had a sweaty palms surgery by Defendant Hampton at Premium on May 17, 2003.

252.   Alabama Blue Cross also received fraudulent bills in connection with

a husband and wife who each had three procedures at Millennium.  Each of them,

AL-16 and AL-17, had a pair of GI procedures at Millennium (the wife on April 23

and May 1, 2001, and the husband on May 19 and June 2, 2001).  At least three of

those four procedures were fraudulently billed by Defendant Halac.  The wife's

third procedure was a supposedly necessary eye procedure on August 3, 2002.  The

husband's third procedure at Millennium was a fraudulent urinary procedure by

Defendant Patel on March 8, 2003.

253.   Alabama Blue Cross was defrauded into paying more than $54,000 on

the procedures for that couple.

**G.      Plaintiff Massachusetts Blue Cross**

254.   Massachusetts Blue Cross was victimized through a cluster of patients

employed by an employer with facilities in Minnesota, Washington, and

California.

255.   The cluster from Minnesota includes a core group of 4 women who

had 14 procedures at Defendant clinics.  The Massachusetts Plan was defrauded

into paying more than $182,000 for those 4 patients alone.  An additional 9

patients from the same facility also flew from Minnesota to California and had

sweaty palms and other procedures at non-Defendant clinics.  Those 9 additional

patients resulted in another $190,000 in fraudulently procured payments.

256.   The four women -- patients MA-1, MA-2, MA-3 and MA-4 --had

their 14 procedures at Newport Superior, Anaheim West, Millennium and Pacific.

A chart of those procedures is annexed as Appendix R.

257.   MA-3 was recruited to Defendant clinics by patient recruiter Sue

Nanda, who is one of the recruiters charged in the State Felony Complaint.  MA-3

flew from Minnesota to California three separate times and had 6 separate

procedures.  The first time was over New Years weekend in 2001, when she had an

endoscopy and a colonoscopy by Defendant Babaknia at Millennium.  Fourteen

months later, she came back and had three procedures in three days (March 20, 21

and 22 of 2002) at Anaheim West, an endoscopy by Defendant Kim, a supposed

urogenital surgery by Defendant Chan, and a hemorrhoidectomy by a non-

Defendant surgeon.  MA-3 came back a third time a few months later, and on June

1, 2002, she had a supposed septoplasty by Defendant White.  The Massachusetts

Plan paid more than $83,000 on fraudulent bills for MA-3's procedures.

258.   Between MA-3's first and second trips to California, her co-worker

MA-4 made her own trip, also facilitated by the indicted patient recruiter Sue

Nanda.   MA-4 stayed at Nanda's home during a long weekend in which she had

three procedures.   On Friday, December 14, 2001, MA-4 had an endoscopy by Defendant Alamy at Anaheim West, followed by a colonoscopy the next day, also by Alamy at Anaheim West.  MA-4 took Sunday off, but on Monday, December 17, she had her third procedure in four days.  In a clear indication of the close relationships between the Defendant clinics, however, MA-4 did not have her third procedure at Anaheim West where she had her first two procedures only days before.  Rather, she had her third procedure at Defendant Pacific, a supposed hemorrhoid procedure.  Massachusetts Blue Cross was defrauded into paying more than  $39,000 for those 3 procedures.

259.   During the same period that the 4 employees from Minnesota were having their procedures at various Defendant clinics, a group of 5 employees from a sister facility in Washington also were flying to Southern California to have procedures at Millennium.  Those 5 employees -- MA-5, MA-6, MA-7, MA-8 and MA-9 --had a total of 12 procedures at Millennium between August 2001 and August 2002.  A chart of those procedures is annexed as Appendix S. Massachusetts Blue Cross was defrauded into paying about $205,000 on that Washington group.

260.   Predictably, the patients' Millennium procedures included endoscopies, colonoscopies and sweaty palms surgeries, as well as laparoscopies. Several of those procedures were performed by Defendants Chun and Halac.  Two

95

of the patients -- MA-5 and MA-6 --  had three procedures apiece over two

separate trips to California.

261.   Massachusetts Blue Cross was also defrauded into paying large sums

on in-State patients from the same employer who had procedures at Defendant

clinics.

262.   Some patients had fraudulent procedures at both Defendant and non-

Defendant clinics.  For example, MA-12, after having had a fraudulently-billed

endoscopy, colonoscopy, and sweaty palms surgery at a non-Defendant clinic, was

fraudulently billed as having had a laparoscopy by Defendant Chun at Premium

(August 23, 2003).  MA-13 had a fraudulent endoscopy and another  procedure at a

non-Defendant clinic, and also had a fraudulently billed laparoscopy by Defendant

Chan at Millennium (February 18, 2003).

263.   Several of the California patients stand out for the extreme abuse and

damage involved in their cases. One of them, MA-10, had 5 fraudulent procedures

in three months, a laparoscopy at Millennium by Defendant Chan (1/17/03), a

hemorrhoidectomy by Defendant Rosenberg at Valley/Unity (3/22/03), and an

endoscopy, a colonoscopy, and a hernia repair at non-Defendant clinics.

Massachusetts Blue Cross was deceived into paying more than  $42,000 for those

fraudulent procedures.

264.   Patient MA-11 had 4 procedures performed at Defendant Pacific in 2002, including two sweaty palms surgeries, and an endoscopy and colonoscopy three days apart (February 6 and 9, 2002) by Defendant Lluncor.  Pacific and Lluncor defrauded Massachusetts Blue Cross into paying more than $58,000 for MA-14's procedures.

**H.      Plaintiff Premera Blue Cross**

265.   Premera Blue Cross patients who were drawn into the fraud included patients from Arizona, Alaska and Washington.  From each of those States, there was at least one husband and wife pair who had matching surgeries.

266.   The Arizona couple had the identical three procedures on the same days at Unity. On March 22, 2003, both PR-1 and her husband PR-2 had endoscopies.  The next day, both had colonoscopies.  Six days later, on March 29, PR-1 and PR-2 both had sweaty palms surgeries at Unity by Defendant Hampton, with Defendant Madrid as the anesthesiologist on both procedures.  As described earlier and illustrated in numerous patient examples from various of the Plaintiffs, that unlikely trio of procedures -- endoscopy, then colonoscopy, then sweaty palms surgery -- is one of the defining and unmistakable patterns of the fraud in this case. It is even more damning when a husband and wife from out of State both have the same sequence of fraudulent procedures on the same days.   The fraud involving PR-1 and PR-2 cost Premera $42,464.

267.   The Alaska couple – PR-3 and PR-4 -- had the identical procedures on the same consecutive days at St. Paul.  On December 17, 2003, both PR-3 and PR-4 had endoscopies by Defendant Rosenberg at St. Paul, and the next day both had colonoscopies by Defendant Rosenberg at St. Paul.  They then flew back to Alaska.  Premera was defrauded into paying  $64,157.47.

268.   PR-5 and PR-6 are from Washington.  Both PR-5, the husband, and PR-6, the wife, were billed as having had three fraudulent procedures at St. Paul.  PR-5 was the subject of fraudulent bills for an endoscopy by Defendant Rosenberg on July 31, 2003 and a sweaty palms surgery on August 2, 2003.  The sweaty palms surgery was performed by Defendant Houck and was billed by Defendant McKenna.  PR-5 was paid about $400 for those two procedures.

269.   On September 13, 2003, PR-5 had a fraudulent bladder procedure at St. Paul by Defendant Patel, for which he was paid an additional $600.  PR-5 returned to Washington after the bladder procedure, but soon developed a severe infection as a result of the procedure, went into septic shock, passed out while he was on the phone calling 911, and had to be rushed to a local hospital where he was hospitalized for four days.

270.   Though St. Paul and its surgeons also billed for three procedures on the wife, PR-6, the wife in fact never had any procedures.  In fact, the wife had not left the State of Washington for about 10 years because of illness.  PR-6 never

went to St. Paul, but that did not stop the clinic and its surgeons from billing for an

endoscopy and a colonoscopy on September 12 and 13 and a bladder procedure by

Defendant Patel on September 17.  Defendant Martha Madrid billed for non-

existent anesthesia services on the bladder procedure.   Premera was defrauded into

paying $85,334 in connection with PR-5 and PR-6.

271.   A chart of the procedures on the Arizona, Alaska and Washington

couples is annexed as Appendix T.

272.   Another pair of Premera patients, fellow Alaskans with benefits

provided by the Association of General Contractors, are notable both for the

number of fraudulent procedures they had in a short period of time, and for the

huge bills that were submitted in connection with those procedures.

273.   One of them, PR-7, had four procedures at St. Paul.  Three of those

procedures were performed within 5 days in August 2003, an endoscopy and a

colonoscopy by Defendant Rosenberg on August 23 and 24, and a sweaty palms

surgery performed by Defendant Houck, and billed by Defendant McKenna on

August 28.   The fourth procedure, a bladder procedure, was supposedly performed

by Defendant Patel two months later, on October 22, 2003, with Defendant Madrid

as the anesthesiologist.

274.   The total bills submitted to Premera in connection with PR-7's four

St. Paul procedures topped $183,000.  Those fraudulent bills included a bill from

St. Paul for the sweaty palms surgery for $63,558, and another bill from St. Paul

for the supposed bladder procedure for $45,025.  Premera paid $37,375.73 on

those fraudulent bills.

275.   The other Alaska patient from the Contractors' Association, PR-8,

had 5 procedures at St. Paul in less than a month, from November 22 to December

17, 2003.  Those procedures were set in motion by a fraudulent History & Physical

report prepared by Defendant Sverdlova on November 22, 2003 (which falsely

stated that PR-8 had severe upper and lower GI symptoms) and included an

endoscopy, two colonoscopies, a sweaty palms procedure by Defendant Hampton,

and, like his fellow contractor, a supposed bladder procedure by Defendant Patel.

The charges for PR-8 were more than $178,000, including a $58,640 bill from St.

Paul for the sweaty palms surgery, and a $43,207 bill from St. Paul for the

supposed bladder procedure.

276.   A chart of the procedures on the two Alaska patients is annexed as

Appendix U.

**I.      Plaintiff Regence  (including Leatherman Tools and OHSU Clusters)**

277.   One of the most damaging husband and wife pairs in the case was a

couple from Washington who were covered by the benefit plan of a furniture

company, Strasser Woodenworks, administered by Regence BlueCross BlueShield

of Oregon.  The spouses, RE-1 and RE-2, each had 4 procedures at Unity, three of

100

them the same procedures by the same surgeons on the same days.  On October 6,

2002, both had endoscopies by Defendant Rosenberg; on October 7 they both had

colonoscopies by a non-Defendant surgeon; and on November 2 they both had

supposed hemorrhoidectomies by a non-Defendant surgeon.  After a few weeks

off, each came back to Southern California and had a fourth unnecessary surgery,

first RE-2 (a sweaty palms procedure performed by Defendant Fuller on December

20, billed by Defendant McKenna) and then RE-1, a septoplasty by Defendant

White on January 25, 2003.

278.   Unity and the surgeons defrauded Regence into paying about

$216,000 just for the  unnecessary procedures on that one couple.

279.   A group of Regence patients from the Leatherman Tools company in

Portland, Oregon, had procedures at four of the Defendant clinics in 2002 and

2003.  One of the patients, RE-3, had 3 procedures at Unity in March and April

2003, an endoscopy, a colonoscopy, and a D&C.  Another patient, RE-4, had 3

procedures in 5 days at 2 different Defendant clinics, a D&C at Millennium on

February 19, 2003, and then an endoscopy and a colonoscopy at Defendant Harbor

on February 22 and 24.  Because RE-4 was from Oregon and must have been

shepherded by a patient recruiter, that recruiter obviously was recruiting both for

Millennium and for Harbor.

280.   A third Leatherman patient, RE-5, had procedures at Millennium and Premium (a D&C by Defendant Chun on September 16, 2002 and a hemorrhoidectomy on November 30, 2002), and a fourth Leatherman patient, RE-6, had a laparoscopy by Defendant Chun at Millennium on January 29, 2002.  All told, Defendants and others caused at least $101,000 in damages in connection with the Leatherman group.

281.   Another group of Regence patients who had fraudulent procedures at Unity worked for Oregon Health Sciences University ("OHSU") in Portland, Oregon.  The first OHSU patient to make the trip to Southern California was RE-7.  RE-7 first had an endoscopy and a colonoscopy by Defendant Rosenberg on December 22 and 23, 2002.  RE-7 came back 3 weeks later with a husband and wife from OHSU, RE-8 and RE-9.  RE-8 and RE-9 proceeded to have his-and-hers endoscopies and colonoscopies at Unity on January 18 and 19, 2003.  While the new recruits were having their unnecessary endoscopies on January 18, RE-7 was having a third procedure at Unity, a hemorrhoidectomy.  Damages on those three OSHU patients exceeded $67,000.

282.   A chart of the Regence patients described above is attached as Appendix V.

**J.     Plaintiff CareFirst (including Vertis Cluster)**

283.   CareFirst's coverage area includes the District of Columbia and portions of Maryland and Virginia.  Several CareFirst insureds from those areas traveled to Southern California to have unnecessary procedures at Defendant clinics.

284.   For example, a husband and wife from Centreville, Virginia -- CF-1 and CF-2 -- had multiple unnecessary procedures over a few days in late 2003. The wife was billed as having had 4 separate procedures on 4 consecutive days at St. Paul -- three GI procedures (at least 2 by Defendant Rosenberg) and one urogenital procedure, on November 23, 24, 25 and 26 of 2003.  Over the same period, the husband had an endoscopy by Rosenberg and a supposed abdominal procedure, both also at St. Paul.

285.   The run of procedures was then suspended for a few days for the long Thanksgiving weekend, but on the following Monday, December 1, 2003,  the husband had a third procedure, a colonoscopy.  However, in another example of the interrelationship and interchangeability of the Defendant clinics, the husband's colonoscopy was performed not at St. Paul, where the couple's 6 prior procedures had been performed, but at Defendant Harbor.

286.   CareFirst was defrauded into paying more than $63,000 in connection with the unnecessary procedures on CF-1 and CF-2**.**

103

287.   Several other Capital-area CareFirst insureds also made the trip to Southern California and became the subject of fraudulent billings to CareFirst.  In April 2001, CF-3, from Silver Springs, Maryland, had an endoscopy (April 25) and two days later a colonoscopy (April 23), both by Defendant Rayyes at Defendant Newport Superior.

288.   A CareFirst insured from Rockville, Maryland, CF-4, traveled to Southern California in August 2003 and within a few days had an endoscopy by Defendant Rosenberg at St. Paul (August 7, 2003) and a sweaty palms surgery by Defendant McKenna at St. Paul (August 11, 2003).

289.   And in October 2003, a CareFirst insured from Woodbridge, Virginia, CF-5, had three procedures in 5 days at St. Paul, starting with an endoscopy and a colonoscopy by Defendant Rosenberg on consecutive days (October 18 and 19, 2003), followed by supposed gynecological procedures on October 23.  Those procedures were set in motion by a fraudulent History & Physical report prepared by Defendant Sverdlova on October 18, 2003, which falsely stated that CF-5 had severe upper and lower GI symptoms.

290.   Some CareFirst insureds did not travel as far, but the billings for their procedures were no less fraudulent.  For example, CF-6, a CareFirst insured from Las Vegas, had a fraudulent endoscopy by Defendant Kim and a fraudulent gynecological procedure by Defendant Chan on consecutive days (May 28 and 29,

2002) at Defendant Anaheim West. That was followed by a fraudulent septoplasty a few months later (October 30, 2002) at a non-Defendant clinic.  The anesthesiologist on both the May 28 and the October 30 procedures was Defendant Martha Madrid.  Defendant Madrid was also the anesthesiologist on two procedures performed on a local patient, CF-7, at Defendant St. Francis, an endoscopy on April 11, 2002 and a colonoscopy the next day by Defendant Rosenberg.

291.   CareFirst was also victimized in connection with a cluster of local patients employed by an advertising and marketing company called Vertis.  Four Vertis employees -- CF-8, CF-9, CF-10 and CF-11 -- had a total of 9 procedures at Defendant clinics, for which CareFirst was defrauded into paying more than $136,000.  The procedures on at least one of these patients, CF-8, were set in motion by a fraudulent History & Physical report prepared by Defendant Sverdlova on March 1, 2003, which falsely stated that CF-8 had severe upper and lower GI symptoms.

292.   Of the 9 procedures on the Vertis patients, six were performed at the Unity spillover clinic, Valley Multi-Specialty (5 endoscopies and colonoscopies by Defendant Rosenberg and a sweaty palms surgery by Defendant McKenna), two at Anaheim West (an endoscopy by Defendant Kim and a colonoscopy by Defendant Rosenberg), and one at a non-Defendant clinic.

Case 8:05-cv-00230-TJH -VBK   Document 1518   Filed 03/14/11   Page 113 of 219   Page ID #:45787

293.   A chart of the CareFirst patients described above is attached as Appendix W.

## K.      Plaintiff Nebraska Blue Cross (Swift and Millard Clusters)

294.   Patients insured by Nebraska Blue Cross who were drawn into the fraud included individuals who were part of clusters of employees from two companies.  One is the meat company, Swift & Company.  Among the Swift employees were two from Minnesota, NE-1 and NE-2**.**  NE-1 had three procedures in 5 days at Newport Superior, an endoscopy and a colonoscopy by Defendant Babaknia (January 9 and 12, 2001) and a circumcision on January 13, 2001.  NE-2 had at least one procedure at Newport Superior, an endoscopy on May 19, 2000.

295.   Nebraska Blue Cross was defrauded into paying more than $41,000 for those two Swift patients.

296.   Another cluster of Nebraska-insured patients were local patients who had employee health coverage through Millard Refrigerated Services.  One of those patients, NE- 3, had at least 7 procedures at Newport Superior and Millennium between July 2000 and September 2002.  Those 7 procedures included at least 1 endoscopy (July 6, 2002 by Defendant Rosenberg at Millennium), 2 colonoscopies (July 16, 2000 by Defendant Babaknia at Newport Superior and August 24, 2002 by Defendant Rosenberg at Millennium), a hemorrhoidectomy (August 12, 2000 at Newport Superior), a septoplasty (November 4, 2000 at

Newport Superior) and an apparent urological procedure (September 21, 2002 at

Millennium).

297.   Nebraska Blue Cross was defrauded into paying more than $90,000

on patient NE-3 alone.

298.   Two other Millard employees or their spouses also had unnecessary

procedures at Newport Superior.  Patient NE-4 had an endoscopy and a

colonoscopy on April 7 and April 15, 2001, both performed by Defendant Alamy.

On the same day that NE-4 had her second procedure by Alamy, April 15, patient

NE-5 had her first, an endoscopy by Defendant Alamy, which was followed a few

weeks later by a colonoscopy by Defendant Alamy on May 8, 2001. Nebraska Blue

Cross was defrauded into paying $31,000 on those two other Millard patients.

299.   A chart of the Nebraska Blue Cross patients described above is

attached as Appendix X.

**L.    Plaintiff North Carolina Blue Cross**

300.   In 2003, 4 patients insured by North Carolina Blue Cross traveled

from North Carolina to have procedures at Defendant clinics.  In March 2003, the

first patient, NC-1, had an endoscopy and a colonoscopy by Defendant Rosenberg

on consecutive days at Unity (March 15 and 16, 2003).  Six months later, a second

patient from North Carolina, NC-2, had the fraudulent 3-procedure sequence --

endoscopy, colonoscopy, and sweaty palms surgery -- between August 29 and

September 5, 2003 at St. Paul.  Defendant Rosenberg performed the endoscopy and the colonoscopy.

301.   In November 2003, a third North Carolina patient, NC-3, had a back-to-back endoscopy and colonoscopy at St. Paul (November 8 by Defendant Rosenberg and November 9 by a non-Defendant surgeon).  Two weeks later, on November 23, 2003, she had a third procedure, a supposed gynecological procedure, again at St. Paul.   Those procedures were set in motion by a fraudulent History & Physical report prepared by Defendant Sverdlova on November 8, 2003, which falsely stated that NC-3 had severe upper and lower GI symptoms.  The last North Carolina patient, NC-4, had an endoscopy by Defendant Rosenberg at St. Paul on November 22, 2003, followed by a sweaty palms surgery by Dr. Hampton at St. Paul on November 26, 2003.

302.   A husband and wife from Fontana, California, NC-5 and NC-6, had a total of 5 procedures in rapid succession at St. Paul that were fraudulently billed to North Carolina Blue Cross.  On August 9, 2003, both NC-5 and NC-6 had endoscopies by a non-Defendant surgeon at  St. Paul.  Two days later, on August 11, the wife had a colonoscopy by Defendant Rosenberg at St. Paul.  A week after that, the husband had a colonoscopy, and then finished up a week later with a sweaty palms surgery.

303.   A chart of the North Carolina Blue Cross patients described above is

attached as Appendix Y.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants Unity
Outpatient Surgery Center, Inc.; Unity Outpatient Surgery
Center LLC; St. Paul Outpatient Surgery Medical Center, Inc.;
St. Paul Surgery Medical Center LLC; Anaheim West Outpatient
Surgery Center Inc.; Lincoln Management Group, LLC.; St. Francis
Outpatient Medical Center, Inc.; Inland Orange Medical Management,
Inc.; Newport Superior Outpatient Medical Center, Inc.; Newport
Superior Management Group LLC; Tam Vu Pham a/k/a Tom Vu;
Huong Thien Ngo; Rosalinda Landon; Andrew Harnen; Catherine Bach;
Ardalan Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.;
Moustafa El Alamy, M.D.; John Eugene, M.D.; Clark B. Fuller, M.D.;
William Hampton, M.D.; Lars Hanson, M.D.; Ward V. Houck, M.D.;
Chin Kim, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.;
Bharat Patel, M.D.; Amer Rayyes, M.D.; Mario Z. Rosenberg, M.D.;
Julia Sverdlova, M.D.; Lloyd White, M.D.**

## (Vu Enterprise)

304.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

305.   In executing their fraudulent scheme, Defendants Unity Outpatient

Surgery Center, Inc.; Unity Outpatient Surgery Center LLC; St. Paul Outpatient

Surgery Medical Center, Inc.; St. Paul Surgery Medical Center LLC; Anaheim

West Outpatient Surgery Center Inc.; Lincoln Management Group, LLC.; St.

Francis Outpatient Medical Center, Inc.; Inland Orange Medical Management, Inc.;

Newport Superior Outpatient Medical Center, Inc.; Newport Superior Management Group LLC; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo;  Rosalinda Landon; Andrew Harnen; Catherine Bach; Ardalan Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Clark B. Fuller, M.D.; William Hampton, M.D.; Lars Hanson, M.D.; Ward V. Houck, M.D.; Chin Kim, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.; Bharat Patel, M.D.; Amer Rayyes, M.D.; Mario Z. Rosenberg, M.D.; Julia Sverdlova, M.D.; and Lloyd White, M.D., and their agents, made extensive use of the United States mails, including by mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

306.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

307.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an

110

extended period of time, constitute a "pattern of racketeering activity" within the

meaning of 18 U.S.C. § 1961(5).

308.   The Vu clinics -- Unity, St. Paul, Anaheim West, St. Francis and

Newport Superior -- constitute an enterprise within the meaning of 18 U.S.C. §

1961(4) that engages in or affects interstate commerce.

309.   The Defendants named in this Claim are "persons" within the

meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated,

managed and/or controlled the affairs of the Vu Enterprise through a pattern of

racketeering activity, in violation of 18 U.S.C. § 1962(c).

310.   Plaintiffs have been injured in their business and property as a

proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid

substantial sums in health care benefits to those Defendants and others in

justifiable reliance on the fraudulent bills, medical records, and other documents

submitted to them by Defendants.

311.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants

are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs

have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'

fees.

## SECOND CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Unity Outpatient Surgery Center, Inc.; Unity Outpatient Surgery
Center LLC; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo;
Rosalinda Landon; Andrew Harnen; Michael Chan, M.D.; Clark B. Fuller,
M.D.; William Hampton, M.D.; Chin Kim, M.D.; Robert J. McKenna, M.D.;
Martha Madrid, M.D.; Mario Z. Rosenberg, M.D.; Lloyd White, M.D.**

### (Unity Clinic Enterprise)

312.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

313.   In executing their fraudulent scheme, Defendants Unity Outpatient Surgery Center, Inc.; Unity Outpatient Surgery Center LLC; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo; Rosalinda Landon; Andrew Harnen; Michael Chan, M.D.; **Clark B. Fuller, M.D.;** William Hampton, M.D.; Chin Kim, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.; Mario Z. Rosenberg, M.D.; and Lloyd White, M.D., and their agents, made extensive use of the United States mails, including by mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

314.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

315.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

316.   The Unity clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

317.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the Unity Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

318.   Plaintiffs have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid substantial sums in health care benefits to Defendants and others in justifiable reliance on the fraudulent bills, medical records, and other documents submitted to them by Defendants.

319.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs

113

1 | have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'

2

3 | fees.

4 | ### THIRD CLAIM FOR RELIEF

5 | **Violation of 18 U.S.C. § 1962(c) by Defendants**

6 | **St. Paul Outpatient Surgery Medical Center, Inc., St. Paul**
**Surgery Medical Center LLC; Tam Vu Pham a/k/a Tom Vu;**

7 | **Huong Thien Ngo; Andrew Harnen; William Hampton, M.D.; Ward V.**

8 | **Houck, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.;**

9 | **Bharat Patel, M.D.; Mario Z. Rosenberg, M.D. and Julia Sverdlova, M.D.**

10 | **(St. Paul Clinic Enterprise)**

11

12 | 320.  Plaintiffs repeat and reallege each and every allegation contained in

13 | paragraphs 1 through 303 above as if set forth here in its entirety.

14 | 321.  In executing their fraudulent scheme, Defendants St. Paul Outpatient

15

16 | Surgery Medical Center, Inc.; St. Paul Surgery Medical Center LLC; Tam Vu

17 | Pham a/k/a Tom Vu; Huong Thien Ngo; Andrew Harnen; William Hampton,

18

19 | M.D.; Ward V. Houck, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.;

20 | Bharat Patel, M.D.; Mario Z. Rosenberg, M.D.; and Julia Sverdlova, M.D. and

21 | their agents, made extensive use of the United States mails, including by mailing

22

23 | fraudulent claims, fraudulent medical records, and fraudulent correspondence to

24 | Plaintiffs and by receiving via the mails fraudulently procured benefits from

25 | Plaintiffs.  Those Defendants and their agents also used interstate wires during

26

27 | interstate phone calls with prospective patients and recruiters as part of the patient

28

recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

322.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

323.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

324.   The St. Paul clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

325.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the St. Paul Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

326.   Plaintiffs have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid substantial sums in health care benefits to Defendants and others in justifiable reliance on the fraudulent bills, medical records, and other documents submitted to them by Defendants.

327.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Anaheim West Outpatient Surgery Center Inc.; Lincoln Management
Group, LLC.; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo;
Rosalinda Landon; Andrew Harnen; Michael Chan, M.D.; Byung
Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Chin
Kim, M.D.; Mario Z. Rosenberg, M.D.; Lloyd White, M.D.**

**(Anaheim West Clinic Enterprise)**

328.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

329.   In executing their fraudulent scheme, Defendants Anaheim West Outpatient Surgery Center Inc.; Lincoln Management Group, LLC.; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo; Rosalinda Landon; Andrew Harnen; Michael Chan, M.D.; Byung Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Chin Kim, M.D.; Mario Z. Rosenberg, M.D.; and Lloyd White, M.D., and their agents, made extensive use of the United States mails, including by mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during

interstate phone calls with prospective patients and recruiters as part of the patient

recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-

authorization for surgeries and to collect benefits after the surgeries.

330.   Each such use of the mails and each interstate wire communication in

furtherance of Defendants' fraudulent scheme violated the federal mail fraud and

federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

331.   Each of those violations constitutes "racketeering activity" within the

meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an

extended period of time, constitute a "pattern of racketeering activity" within the

meaning of 18 U.S.C. § 1961(5).

332.    The Anaheim West clinic constitutes an enterprise within the

meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

333.   The Defendants on this Claim are "persons" within the meaning of 18

U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or

controlled the affairs of the Anaheim West Clinic Enterprise through a pattern of

racketeering activity, in violation of 18 U.S.C. § 1962(c).

334.   Plaintiffs have been injured in their business and property as a

proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid

substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to

them by Defendants.

335.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants

are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs

have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'

fees.

## FIFTH CLAIM FOR RELIEF

**St. Francis Outpatient Medical Center, Inc.; Inland Orange
Medical Management, Inc.; Tam Vu Pham a/k/a Tom Vu; Huong
Thien Ngo; Martha Madrid, M.D.; Mario Z. Rosenberg, M.D.**

**(St. Francis Clinic Enterprise)**

336.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

337.   In executing their fraudulent scheme, Defendants St. Francis

Outpatient Medical Center, Inc.; Inland Orange Medical Management, Inc.; Tam

Vu Pham a/k/a Tom Vu; Huong Thien Ngo; Martha Madrid, M.D.; and Mario Z.

Rosenberg, M.D.,  and their agents, made extensive use of the United States mails,

including by mailing fraudulent claims, fraudulent medical records, and fraudulent

correspondence to Plaintiffs and by receiving via the mails fraudulently procured

benefits from Plaintiffs.  Those Defendants and their agents also used interstate

wires during interstate phone calls with prospective patients and recruiters as part

of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

338.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

339.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

340.   The St. Francis clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

341.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the St. Francis Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

342.   Plaintiffs have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid substantial sums in health care benefits to those Defendants and others in justifiable reliance on the fraudulent bills, medical records, and other documents submitted to them by Defendants.

343.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants
are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs
have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'
fees.

## SIXTH CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Newport Superior Outpatient Medical Center, Inc.; Newport Superior
Management Group LLC; Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo;
Catherine Bach; Ardalan Babaknia, M.D.; Moustafa El Alamy, M.D.; Clark
B. Fuller, M.D.; Lars Hanson, M.D.; Amer Rayyes, M.D.; and Mario Z.
Rosenberg, M.D.**

### (Newport Superior Clinic Enterprise)

344.   Plaintiffs repeat and reallege each and every allegation contained in
paragraphs 1 through 303 above as if set forth here in its entirety.

345.   In executing their fraudulent scheme, Defendants Newport Superior
Outpatient Medical Center, Inc.; Newport Superior Management Group LLC; Tam
Vu Pham a/k/a Tom Vu; Huong Thien Ngo; Catherine Bach; Ardalan Babaknia,
M.D.; Moustafa El Alamy, M.D.; Clark B. Fuller, M.D.; Lars Hanson, M.D.; Amer
Rayyes, M.D.; and Mario Z. Rosenberg, M.D. and their agents, made extensive use
of the United States mails, including by mailing fraudulent claims, fraudulent
medical records, and fraudulent correspondence to Plaintiffs and by receiving via
the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and
their agents also used interstate wires during interstate phone calls with prospective

patients and recruiters as part of the patient recruitment process, and with Plaintiffs
in their fraudulent attempts to obtain pre-authorization for surgeries and to collect
benefits after the surgeries.

346.   Each such use of the mails and each interstate wire communication in
furtherance of Defendants' fraudulent scheme violated the federal mail fraud and
federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

347.   Each of those violations constitutes "racketeering activity" within the
meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an
extended period of time, constitute a "pattern of racketeering activity" within the
meaning of 18 U.S.C. § 1961(5).

348.   The Newport Superior clinic constitutes an enterprise within the
meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

349.   The Defendants named in this Claim are "persons" within the
meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated,
managed and/or controlled the affairs of the Newport Superior Clinic Enterprise
through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

350.   Plaintiffs have been injured in their business and property as a
proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid
substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to

them by Defendants.

351.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants

are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs

have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'

fees.

## SEVENTH CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Millennium Outpatient Surgery Center, A Medical
Corporation; Thu Ngoc Pham a/k/a Perry Pham; Ardalan
Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.;
Moustafa El Alamy, M.D.; Leon Halac, M.D.; Rosemary Halac;
Madhukar Jigjinni, M.D.; Bharat Patel, M.D.; Mario Z. Rosenberg, M.D.;
Youn S. Toh, M.D.**

### (Millennium Clinic Enterprise)

352.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

353.   In executing their fraudulent scheme, Defendants Millennium

Outpatient Surgery Center, A Medical Corporation; Thu Ngoc Pham a/k/a Perry

Pham; Ardalan Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.;

Moustafa El Alamy, M.D.; Leon Halac, M.D.; Rosemary Halac; Madhukar

Jigjinni, M.D.; Bharat Patel, M.D.; Mario Z. Rosenberg, M.D.; and Youn S. Toh,

M.D., and their agents, made extensive use of the United States mails, including by

mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

354.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

355.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

356.   The Millennium clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

357.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the Millennium Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

358.   Plaintiffs have been injured in their business and property as a

proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid

substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to

them by Defendants.

359.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants

are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs

have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys'

fees.

### EIGHTH CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Harbor Multi-Specialty Surgical Center, Inc.; Clark B. Fuller, M.D.;
Paratha Govindarajan, M.D. and Rizalino Vicente, M.D.**

**(Harbor Clinic Enterprise)**

360.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

361.   In executing their fraudulent scheme, Harbor Multi-Specialty Surgical

Center, Inc., Clark B. Fuller, M.D., Paratha Govindarajan, M.D., and Rizalino

Vicente, M.D. and their agents, made extensive use of the United States mails,

including by mailing fraudulent claims, fraudulent medical records, and fraudulent

correspondence to Plaintiffs and by receiving via the mails fraudulently procured

benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

362.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

363.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

364.   The Harbor clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

365.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the Harbor Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

366.   Plaintiffs have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to them by Defendants.

367.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees.

## NINTH CLAIM FOR RELIEF

**Violation of 18 U.S.C. § 1962(c) by Defendants
Pacific Outpatient Medical Center, A Medical Corporation;
Pacific Outpatient Medical Management Group LLC;
Andrew Andalibian; Moustafa El Alamy, M.D.; Edgar Lluncor, M.D.;
Bassam Moucharafieh, M.D.; and Amer Rayyes, M.D.**

### (Pacific Clinic Enterprise)

368.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

369.   In executing their fraudulent scheme, Defendants Pacific Outpatient Medical Center, A Medical Corporation; Pacific Outpatient Medical Management Group LLC; Andrew Andalibian; Moustafa El Alamy, M.D.; Edgar Lluncor, M.D.; Bassam Moucharafieh, M.D.; and Amer Rayyes, M.D., and their agents, made extensive use of the United States mails, including by mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those

Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to obtain pre-authorization for surgeries and to collect benefits after the surgeries.

370.   Each such use of the mails and each interstate wire communication in furtherance of Defendants' fraudulent scheme violated the federal mail fraud and federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

371.   Each of those violations constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an extended period of time, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

372.   The Pacific clinic constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) that engages in or affects interstate commerce.

373.   The Defendants named in this Claim are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated, managed and/or controlled the affairs of the Pacific Clinic Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

374.   Plaintiffs have been injured in their business and property as a proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to them by Defendants.

375.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF

### Violation of 18 U.S.C. § 1962(c) by Defendants Premium Outpatient Surgery Center, A Medical Corporation; Byung Chun, M.D.; and William Hampton, M.D.

### (Premium Clinic Enterprise)

376.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

377.   In executing their fraudulent scheme, Defendants Premium Outpatient Surgery Center, A Medical Corporation; Byung Chun, M.D.; and William Hampton, M.D., and their agents, made extensive use of the United States mails, including by mailing fraudulent claims, fraudulent medical records, and fraudulent correspondence to Plaintiffs and by receiving via the mails fraudulently procured benefits from Plaintiffs.  Those Defendants and their agents also used interstate wires during interstate phone calls with prospective patients and recruiters as part

of the patient recruitment process, and with Plaintiffs in their fraudulent attempts to

obtain pre-authorization for surgeries and to collect benefits after the surgeries.

378.   Each such use of the mails and each interstate wire communication in

furtherance of Defendants' fraudulent scheme violated the federal mail fraud and

federal wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

379.   Each of those violations constitutes "racketeering activity" within the

meaning of 18 U.S.C. § 1961(1).  Collectively, those violations, carried out over an

extended period of time, constitute a "pattern of racketeering activity" within the

meaning of 18 U.S.C. § 1961(5).

380.   The Premium clinic constitutes an enterprise within the meaning of 18

U.S.C. § 1961(4) that engages in or affects interstate commerce.

381.   The Defendants named in this Claim are "persons" within the

meaning of 18 U.S.C. § 1961(3) who conducted, participated in, operated,

managed and/or controlled the affairs of the Premium Clinic Enterprise through a

pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

382.   Plaintiffs have been injured in their business and property as a

proximate result of this violation of 18 U.S.C. § 1962(c), in that they have paid

substantial sums in health care benefits to Defendants and others in justifiable

reliance on the fraudulent bills, medical records, and other documents submitted to

them by Defendants.

383.   By reason of this violation of 18 U.S.C. § 1962(c), these Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

**Common Law Fraud By Defendants
Unity Outpatient Surgery Center, Inc.; Unity Outpatient Surgery
Center LLC; Millennium Outpatient Surgery Center, A Medical
Corporation; St. Paul Outpatient Surgery Medical Center, Inc.;
St. Paul Surgery Medical Center LLC; Anaheim West Outpatient
Surgery Center Inc.; Lincoln Management Group, LLC.; St. Francis
Outpatient Medical Center, Inc.; Inland Orange Medical Management,
Inc.; Newport Superior Outpatient Medical Center, Inc.; Newport
Superior Management Group LLC; Harbor Multi-Specialty Surgical
Center, Inc.; Pacific Outpatient Medical Center, A Medical Corporation;
Pacific Outpatient Medical Management Group LLC; Premium
Outpatient Surgery Center, A Medical Corporation; Tam Vu Pham
a/k/a Tom Vu; Huong Thien Ngo; Gordon Merrick; Rosalinda Landon;
Andrew Harnen; Catherine Bach; Thu Ngoc Pham a/k/a Perry Pham;
Andrew Andalibian; Rosemary Halac; Ardalan Babaknia, M.D.; Michael
Chan, M.D.; Byung Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene,
M.D.; Ward V. Houck, M.D.; Paratha Govindarajan, M.D.; Leon Halac,
M.D.; William Hampton, M.D.; Lars Hanson, M.D.; Clark B. Fuller, M.D.;
Madhukar Jigjinni, M.D.; Chin Kim, M.D.; Edgar Lluncor, M.D.; Robert J.
McKenna, M.D.; Martha Madrid, M.D.; Bassam Moucharafieh, M.D.; Bharat
Patel, M.D.; Amer Rayyes, M.D.; Daniel Rose, M.D.; Mario Z. Rosenberg,
M.D.; Mitchell Rubin; Steven Rubin; Hamilton Sah, M.D.; Julia Sverdlova,
M.D.; Youn S. Toh, M.D.; Rizalino Vicente, M.D.; Lloyd White, M.D.**

384.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

385.    Over the course of their fraudulent schemes, and in furtherance thereof, the Defendants named in this Claim knowingly made, directed others to make, aided and abetted the making of, and conspired with respect to the making of, false representations to Plaintiffs and others, and concealed material facts from Plaintiffs and others, concerning, among other subjects, patients' medical conditions, patients' symptoms, histories and diagnoses, patients' need for surgery, the surgical procedures performed on patients, the illegal recruitment of patients, and sham ownership of the clinics.  Defendants made, directed others to make, aided and abetted the making of, and conspired with respect to the making of, such false representations, and concealed material facts, with the intent and effect of inducing Plaintiffs to rely thereon, and to pay health benefits to Defendants and others that Plaintiffs were not obligated to pay and that Plaintiffs would not have paid if not for the misrepresentations.  Plaintiffs reasonably and justifiably relied on those knowingly false representations and omissions, and suffered damages as a result.

386.    Defendants' conduct was fraudulent, oppressive, intentional, wanton, willful, malicious and in disregard of Plaintiffs' rights.

387.    The fraud committed by the surgeon Defendants for which Plaintiffs seek damages includes fraud committed in connection with surgeries they

131

1
2
3

performed at non-Defendant clinics, including but not limited to Pacific Wilshire

Medical and Surgical Center and Carmel Surgical Center.

4
5
6
7

     388.   By reason of Defendants' fraud and their conspiracy, these

Defendants are jointly and severally liable to Plaintiffs for the damages Plaintiffs

have sustained, plus punitive damages in an amount to be determined at trial.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TWELFTH CLAIM FOR RELIEF

**Unjust Enrichment/Restitution Against Defendants
Unity Outpatient Surgery Center, Inc.; Unity Outpatient Surgery
Center LLC; Millennium Outpatient Surgery Center, A Medical Corporation;
St. Paul Outpatient Surgery Medical Center, Inc.; St.
Paul Surgery Medical Center LLC; Anaheim West Outpatient Surgery
Center Inc.; Lincoln Management Group, LLC.; St. Francis Outpatient
Medical Center, Inc.; Inland Orange Medical Management, Inc.;
Newport Superior Outpatient Medical Center, Inc.; Newport Superior
Management Group LLC; Harbor Multi-Specialty Surgical Center, Inc.;
Pacific Outpatient Medical Center, A Medical Corporation; Pacific
Outpatient Medical Management Group LLC; Premium Outpatient
Surgery Center, A Medical Corporation; Tam Vu Pham a/k/a
Tom Vu; Huong Thien Ngo; Lan Thi Ngoc Nguyen; Gordon Merrick;
Rosalinda Landon; Dee Francis; Andrew Harnen; Daniel Romanello;
Ocher County Clinics, Inc.; Mitchell Rubin; Steven Rubin; Catherine
Bach; Thu Ngoc Pham a/k/a Perry Pham; Michael Schneider; Andrew
Andalibian; Rosemary Halac; Ardalan Babaknia, M.D.; Michael Chan, M.D.;
Byung Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Clark B.
Fuller, M.D.; Paratha Govindarajan, M.D.; Leon Halac, M.D.; William
Hampton, M.D.; Lars Hanson, M.D.; Ward V. Houck, M.D.; Madhukar
Jigjinni, M.D.; Chin Kim, M.D.; Edgar Lluncor, M.D.; Robert J. McKenna,
M.D.; Martha Madrid, M.D.; Bassam Moucharafieh, M.D.;Bharat Patel,
M.D.; Amer Rayyes, M.D.; Daniel Rose, M.D.; Mario Z. Rosenberg, M.D.;
Hamilton Sah, M.D.; Julia Sverdlova, M.D.; Youn S. Toh, M.D.;
Rizalino Vicente, M.D.; Lloyd White, M.D.**

389.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

390.   By reason of their wrongdoing as alleged above, Defendants named in this Claim have been unjustly enriched, in that they have received monies in connection with illegal activities directed at Plaintiffs that in equity and good conscience they should not be permitted to keep.

133

391.   Plaintiffs are entitled to restitution from Defendants under state and/or federal common law in the amount by which Defendants have been unjustly enriched.

## THIRTEENTH CLAIM FOR RELIEF

**Negligent Misrepresentation By Defendants**
**Unity Outpatient Surgery Center, Inc.; Millennium Outpatient Surgery Center, A Medical Corporation; St. Paul Outpatient Surgery Medical Center, Inc.; Anaheim West Outpatient Surgery Center Inc.; St. Francis Outpatient Medical Center, Inc.; Newport Superior Outpatient Medical Center, Inc.; Harbor Multi-Specialty Surgical Center, Inc.; Pacific Outpatient Medical Center, A Medical Corporation; Premium Outpatient Surgery Center, A Medical Corporation; Ardalan Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Clark B. Fuller, M.D.; Paratha Govindarajan, M.D.; Leon Halac, M.D.; William Hampton, M.D.; Ward V. Houck, M.D.; Madhukar Jigjinni, M.D.; Chin Kim, M.D.; Edgar Lluncor, M.D.; Robert J. McKenna, M.D.; Martha Madrid, M.D.; Bharat Patel, M.D.; Amer Rayyes, M.D.; Daniel Rose, M.D.; Mario Z. Rosenberg, M.D.; Julia Sverdlova, M.D.; Youn S. Toh, M.D.; Lloyd White, M.D.**

392.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 303 above as if set forth here in its entirety.

393.   In submitting claims, medical records, and other materials to Plaintiffs, Defendants named in this Claim made, or caused to be made, materially false representations to Plaintiffs with no reasonable ground for believing them to be true, and omitted, or caused to be omitted, material information that they had a duty to disclose.  If any of those material misrepresentations or omissions were made without knowledge or a conscious intent to deceive, then, at a minimum,

such misrepresentations or omissions were made negligently and/or recklessly and
without regard to their truth or falsity or their likelihood to mislead.

394.   Plaintiffs justifiably relied on Defendants' material misrepresentations
and omissions, which proximately caused damage to Plaintiffs.

395.   Defendants are jointly and severally liable to Plaintiffs for the
damages Plaintiffs sustained as a result of those material misrepresentations and
omissions.

# FOURTEENTH CLAIM FOR RELIEF

**Imposition of a Constructive Trust on Assets of Defendants
Unity Outpatient Surgery Center, Inc.; Unity Outpatient Surgery Center
LLC; Millennium Outpatient Surgery Center, A Medical Corporation; St.
Paul Outpatient Surgery Medical Center, Inc.; St. Paul Surgery Medical
Center LLC; Anaheim West Outpatient Surgery Center Inc.; Lincoln
Management Group, LLC.; St. Francis Outpatient Medical Center, Inc.;
Inland Orange Medical Management, Inc.; Newport Superior Outpatient
Medical Center, Inc.; Newport Superior Management Group LLC; Harbor
Multi-Specialty Surgical Center, Inc.; Pacific Outpatient Medical Center, A
Medical Corporation; Pacific Outpatient Medical Management Group LLC;
Premium Outpatient Surgery Center, A Medical Corporation; Tam Vu Pham
a/k/a Tom Vu; Huong Thien Ngo; Lan Thi Ngoc Nguyen; Gordon Merrick;
Rosalinda Landon; Dee Francis; Andrew Harnen; Daniel Romanello; Ocher
County Clinics, Inc.; Mitchell Rubin; Steven Rubin; Catherine Bach; Thu
Ngoc Pham a/k/a Perry Pham; Michael Schneider; Andrew Andalibian;
Rosemary Halac; Ardalan Babaknia, M.D.; Michael Chan, M.D.; Byung
Chun, M.D.; Moustafa El Alamy, M.D.; John Eugene, M.D.; Clark B. Fuller,
M.D.; Paratha Govindarajan, M.D.; Leon Halac, M.D.; William Hampton,
M.D.; Lars Hanson, M.D.; Ward V. Houck, M.D.; Madhukar Jigjinni, M.D.;
Chin Kim, M.D.; Edgar Lluncor, M.D.; Robert J. McKenna, M.D.;
Martha Madrid, M.D.; Bassam Moucharafieh, M.D.; Bharat Patel, M.D.;
Amer Rayyes, M.D.; Daniel Rose, M.D.; Mario Z. Rosenberg, M.D.;
Hamilton Sah, M.D.; Julia Sverdlova, M.D.; Youn S. Toh, M.D.;
Rizalino Vicente, M.D.; Lloyd White, M.D.**

396.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

397.   Each of the Defendants named in this Claim received monies, whether

directly from Plaintiffs, as distributions from corporations, or otherwise, which

were obtained through fraudulent benefit claims submitted to Plaintiffs,

represented the proceeds of fraudulent benefit claims submitted to Plaintiffs, or

were traceable or attributable to fraudulent benefit claims submitted to Plaintiffs.

136

398.   Defendants named in this Claim received those monies with actual

knowledge or with actual or constructive notice that the monies were obtained

through fraudulent benefit claims, represented the proceeds of fraudulent benefit

claims, or were traceable or attributable to fraudulent benefit claims.

399.   Under the common law of California, Defendants received those

monies as constructive trustees for Plaintiffs, and a constructive trust is imposed on

Defendants' assets to the full extent of those monies.

# FIFTEENTH CLAIM FOR RELIEF

**Violation of California Business & Professions Code §§ 17200 et seq.
Against Defendants Unity Outpatient Surgery Center, Inc.; Unity
Outpatient Surgery Center LLC; Millennium Outpatient Surgery
Center, A Medical Corporation; St. Paul Outpatient Surgery Medical
Center, Inc.; St. Paul Surgery Medical Center LLC; Anaheim West
Outpatient Surgery Center Inc.; Lincoln Management Group, LLC.;
St. Francis Outpatient Medical Center, Inc.; Inland Orange Medical
Management, Inc.; Newport Superior Outpatient Medical Center, Inc.;
Newport Superior Management Group LLC; Harbor Multi-Specialty Surgical
Center, Inc.; Pacific Outpatient Medical Center, A Medical Corporation;
Pacific Outpatient Medical Management Group LLC;
Premium Outpatient Surgery Center, A Medical Corporation;
Tam Vu Pham a/k/a Tom Vu; Huong Thien Ngo; Lan Thi Ngoc
Nguyen; Gordon Merrick; Rosalinda Landon; Dee Francis; Andrew
Harnen; Daniel Romanello; Ocher County Clinics, Inc.; Mitchell
Rubin; Steven Rubin; Catherine Bach; Thu Ngoc Pham a/k/a Perry
Pham; Michael Schneider; Adrew Andalibian; Rosemary Halac; Ardalan
Babaknia, M.D.; Michael Chan, M.D.; Byung Chun, M.D.; Moustafa El
Alamy, M.D.; John Eugene, M.D.; Clark B. Fuller, M.D.; Paratha
Govindarajan, M.D.; Leon Halac, M.D.; William Hampton, M.D.; Lars
Hanson, M.D.; Ward V. Houck, M.D.; Madhukar Jigjinni,
M.D.; Chin Kim, M.D.; Edgar Lluncor, M.D.; Robert J.
McKenna, M.D.; Martha Madrid, M.D.; Bassam Moucharafieh, M.D.;
Bharat Patel, M.D.; Amer Rayyes, M.D.; Daniel Rose, M.D.; Mario Z.
Rosenberg, M.D.; Hamilton Sah, M.D.; Julia Sverdlova, M.D.; Youn S. Toh,
M.D.; Rizalino Vicente, M.D.; and Lloyd White, M.D.**

400.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

401.   Defendants named in this claim have engaged in unfair competition,

within the meaning of Section 17200 of the California Business & Professions

Code, by committing, directing, and facilitating violations of civil and criminal

statutes.

138

402.   With respect to patient recruiting and payments to patient recruiters,

California Business and Professions Code § 650 makes it unlawful for any health

care provider to offer or pay a commission or any other consideration "as

compensation or inducement for referring patients."  California Insurance Code §

750 prohibits anyone who regularly presents insurance claims from paying any

commission or other consideration "as compensation or inducement . . .for the

referral or procurement of . . . patients."  Violations of both of these statutes are

punishable by fine or imprisonment or both.

403.   In addition, California Insurance Code § 1871.7 makes it "unlawful to

knowingly employ runners, cappers, steerers or other persons . . . to procure clients

or patients to perform or obtain services or benefits under a contract of insurance or

that will be the basis for a claim against an insured individual or his or her insurer."

Violations of that statute are subject to a civil penalty plus an assessment of up to

three times the amount of each claim pursuant to a contract of insurance.

404.   Further, § 549 of the California Penal Code makes it a crime to

"solicit[ ], accept[ ], or refer[ ] any business to or from any individual or entity with

the knowledge that, or with reckless disregard for whether, the individual or entity

for or from whom the solicitation or referral is made, or the individual or entity

who is solicited or referred, intends to violate Section 550 of this code."  California

Penal Code § 550, in turn, makes it a crime to, inter alia, "aid, abet, solicit, or

139

conspire with any person to . . .[k]nowingly make or cause to be made any false or

fraudulent claim for payment of a health care benefit."  Violations of both of these

Penal Code sections are punishable by fine or imprisonment or both.

405.   Defendant clinics and their agents have made violations of these

statutes a daily business practice.  Defendant clinics have regularly paid bounties to

numerous recruiters, both inside and outside the State of California, for delivering

patients to them to have unnecessary surgeries.

406.   California Penal Code § 471.5 also makes it a crime to "create[] any

false medical record" "with fraudulent intent."  Similarly, California Business &

Professions Code § 2262 authorizes the State Division of Medical Quality to

impose a disciplinary penalty and a fine on any doctor who "creat[es] any false

medical record."

407.   Defendant clinics and surgeons have created false operative reports,

and other false medical records, for hundreds of patients drawn into their scheme,

and they have done so for the sole purpose of defrauding insurance companies into

paying for unnecessary surgeries.

408.   Numerous Defendants have also violated, or aided and abetted the

violation of, California statutes requiring that medical clinics be wholly owned by

licensed physicians or their professional corporations, and prohibiting the

corporate practice of medicine (e.g., Cal. Business & Professions Code §§ 2400

and 2415).

409.   As detailed above, Defendant clinics and their owners, together with

Defendant doctors willing to misuse their medical licenses, participated in sham

ownership arrangements to make it appear that the clinics were wholly owned by

licensed physicians, when in fact the beneficial ownership of the clinics belonged

to laypersons and lay corporations.

410.   Defendants' statutory violations and acts of unfair competition have

injured, and continue to injure, Plaintiffs in the following manner:

(a) by creating a medical sub-industry that is predicated on deceiving

insurers;

(b) by recruiting hundreds of people into the scheme to be used as vehicles

for the submission of untold numbers of fraudulent claims;

(c) by completely falsifying the medical records on which insurers must rely

in making benefit decisions;

(d) by falsifying records to create the appearance of a covered procedure

when the actual procedure under the circumstances is most definitely not covered;

(e) by lying in order to cause Plaintiffs to pay Defendants millions of dollars

that Plaintiffs would not have paid if the truth had been told.

141

411.   Defendants' statutory violations and unfair competition have injured, and continue to injure, Plaintiffs' insureds and Defendants' patients generally, because they have created a market in which patients are bartered and exploited for their insurance benefits; because Defendants are too busy trying to scam insurers to give patients the type of care and attention they are entitled to; because they have exposed patients to serious and unnecessary medical risks; and because they have burdened countless patients with false medical and surgical histories.

412.   The aforesaid violations continue and pose a threat to the general public.

413.   Pursuant to Section 17203 of the California Business & Professions Code, these facts require that Defendants and their agents be:

(a) enjoined from paying any monies or giving any other consideration to patient recruiters, doctors, or any other person in exchange for patient referrals;

(b) enjoined from creating any false or misleading medical record or from withholding any true medical record from any insurer;

(c) enjoined from submitting any bill to an insurer, or from requesting payment on any previously submitted bill, if the patient was recruited as detailed above, and unless the bill and associated medical records each fully and accurately reflect necessary medical procedures actually performed on the patient; and

(d) enjoined from owning, operating or managing any medical clinic,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

directly or indirectly, and from participating in any sham or deceptive ownership

arrangement.

414.   Pursuant to Section 17203 of the California Business & Professions

Code, the foregoing facts also require that Defendants be ordered to restore to

Plaintiffs, and otherwise disgorge, any money that has been acquired from

Plaintiffs, or acquired as part of a scheme to defraud Plaintiffs, by means of the

foregoing acts of unfair competition.

## SIXTEENTH CLAIM FOR RELIEF

For Declaration and Judgment that Plaintiffs'
Claims Against Dee Francis Are Non-Dischargeable

415.   Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 303 above as if set forth here in its entirety.

416.   On September 30, 2005 (the "Bankruptcy Petition Date"), six months

after the commencement of this Litigation, Defendant Francis filed a voluntary

petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court

for the Central District of California, Case No. 2:05-34342-AA ("the Bankruptcy

Case").

417.   Pursuant to section 521(a)(1) of the Bankruptcy Code , Rule

1007(a)(1) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy

Rule 1007-2, Francis was required to file a list identifying the names and addresses

of all creditors that Francis wanted to receive notice of his Bankruptcy Case (the

"Master Mailing Matrix").  On the Bankruptcy Petition Date, Francis filed his

Master Mailing Matrix.  None of the Plaintiffs was listed on the Master Mailing

Matrix.  The Master Mailing Matrix did contain the following listing:

> BlueCross/BlueShield, et al.
> 757 Third Avenue
> New York, NY  10017

418.    On the Bankruptcy Petition Date, the Clerk of the Bankruptcy Court

served a "Notice Of Chapter 7 Bankruptcy Case, Meeting of Creditors, &

Deadlines" (the "Notice")  on all entities listed on the Master Mailing Matrix.  The

Notice provided notice of the commencement of the Bankruptcy Case and

important information for creditors concerning the Bankruptcy Case, including

notice of the deadlines to file proofs of claim and complaints to determine the

nondischargeability of debts.

419.    None of the Plaintiffs has an address of or at 757 Third Avenue, New

York, NY 10017, and none of the Plaintiffs received a copy of the Notice or any

other notice or pleading filed and served by Francis, the Clerk of the Bankruptcy

Court, or any other entity during the pendency of the Bankruptcy Case.

420.    The address of Plaintiffs' counsel of record in this Litigation,

Kornstein Veisz Wexler & Pollard, LLP, is 757 Third Avenue, New York, NY

10017.  However, because the Master Mailing Matrix identified the party located at

757 Third Avenue, New York, NY 10017 as "BlueCross/BlueShield, et al." and

not "Kornstein Veisz Wexler & Pollard, LLP," any documents delivered to

"BlueCross/BlueShield, et al." at 757 Third Avenue, New York, NY 10017 would

have been undeliverable, and were not delivered.

421.   Pursuant to Rule 4007(c) of the Federal Rules of Bankruptcy

Procedure, the deadline for filing claims to determine the dischargeability of any of

Francis' debts pursuant to section 523(c) of the Bankruptcy Code was December

30, 2005 (the "Bar Date").  Francis received his discharge on August 2, 2006, and

the Bankruptcy Case was closed on August 7, 2006.

422.   Plaintiffs first obtained actual knowledge that Francis filed the

Bankruptcy Case long after August 2006.

423.   Francis knew of the claims asserted by Plaintiffs in this Litigation, and

knew or should have known the names and addresses of Plaintiffs and their counsel

of record as of the Bankruptcy Petition Date.

424.   Francis did not accurately schedule the names and addresses of

Plaintiffs or their counsel of record in the Master Mailing Matrix filed on the

Bankruptcy Petition Date as required by section 521(a)(1) of the Bankruptcy Code.

425.   None of Plaintiffs or their counsel of record had actual knowledge of

Francis' Bankruptcy Case or of the Bar Date until long after the Bar Date.

426.   Plaintiffs' claims against Francis are of the kind specified in section

523(a)(2) of the Bankruptcy Code.  Specifically, and as alleged earlier in this

Complaint, Francis was an active and knowing participant in a fraudulent scheme pursuant to which Francis and his co-conspirators submitted false and fraudulent claims to Plaintiffs for surgeries that were medically unnecessary with the intent of receiving money from Plaintiffs on account of such fraudulent claims.  Francis' conduct was malicious and intentional.

427.    Plaintiffs' claims against Francis are of the kind specified in section 523(a)(6) of the Bankruptcy Code.  Specifically, Francis intentionally, willfully and maliciously engaged in the fraud set forth above.  Francis' actions were done with the intent to harm Plaintiffs, with reckless disregard for Plaintiffs and without just cause or excuse.

428.    By reason of the foregoing, Plaintiffs are entitled to a judgment determining that their claims against Francis  are non-dischargeable pursuant to section 523(a)(3)(B) of the Bankruptcy Code.

WHEREFORE, Plaintiffs demand judgment against the Defendants named in each Claim for Relief, jointly and severally, as follows:

1.    On the First through Tenth Claims for Relief under RICO, three times the damages Plaintiffs have sustained as a result of the fraudulent conduct complained of, such amount to be determined at trial, plus Plaintiffs' costs in this action, including reasonable attorneys' fees;

2.    On the Eleventh Claim for Relief for fraud, the damages sustained by

Plaintiffs, plus punitive damages, such amounts to be determined at trial;

3.      On the Twelfth Claim for Relief for unjust enrichment, the amount by which Defendants have been unjustly enriched, such amounts to be determined at trial;

4.      On the Thirteenth Claim for Relief for negligent misrepresentation, the damages Plaintiffs sustained as a result of those misrepresentations and/or omissions, such amounts to be determined at trial;

5.      On the Fourteenth Claim for imposition of a constructive trust, the imposition of a trust on Defendants' assets on behalf of Plaintiffs, to the full extent of Plaintiffs' payments procured by Defendants' wrongful acts, such amounts to be determined at trial;

6.      On the Fifteenth Claim for statutory unfair competition:

(a)      Permanently enjoining Defendants from paying any monies or giving any other consideration to patient recruiters or any other person in exchange for patient referrals;

(b)      Permanently enjoining Defendants from creating any false or misleading medical record or from withholding any true medical record from any insurer;

(c)      Permanently enjoining Defendants from submitting any bill to an insurer, or from requesting payment on any previously submitted bill, if the patient

was procured by unlawful patient recruiting and unless the bill and associated

medical records each fully and accurately reflect all medical procedures actually

performed on the patient;

(d)     Permanently enjoining Defendants from owning, operating or

managing any medical clinic, directly or indirectly, from participating in any sham

or deceptive ownership arrangement, and otherwise from violating California law

concerning the ownership, operation or management of medical clinics or any

similar facility; and

(e)     Requiring Defendants to restore to Plaintiffs, and otherwise to

disgorge, any money that has been acquired from Plaintiffs, or acquired as part of a

scheme to defraud Plaintiffs, by means of Defendants' acts of unfair competition.

7.     On the Sixteenth Claim, adjudging and declaring that Plaintiffs'

claims against Francis are non-dischargeable pursuant to Section 523(a)(3)(B) of

the Bankruptcy Code.

8.     Permanently enjoining Defendants from engaging in any of the

fraudulent acts or practices identified herein, and from submitting to Plaintiffs any

fraudulent or otherwise improper claim or request for payment, together with any

other appropriate injunctive relief;

9.     Awarding Plaintiffs interest and costs, including attorneys' fees; and

1      10.    Awarding Plaintiffs such other and further relief as the Court deems

2

3  just and proper.

4  Dated: September 8, 2010

5                           KORNSTEIN VEISZ WEXLER

                            & POLLARD, LLP
6

7                          By:_____

                                Marvin Wexler
8

9                          757 Third Avenue

                        New York, New York 10017
10                          (212) 418-8600

11                              -and-

12

13                          GARTENBERG GELFAND WASSON

                          & SELDEN LLP
14                          801 South Figueroa Street, Suite 2170

15                          Los Angeles, California 90017

                        (213) 542-2100
16                          Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs Blue Cross and Blue Shield of Alabama, Blue Cross and Blue

Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Michigan, Blue Cross

and Blue Shield of Nebraska, Blue Cross and Blue Shield of North Carolina,

BlueCross BlueShield Tennessee, Inc., CareFirst Blue Cross and Blue Shield,

Empire HealthChoice Assurance, Inc. d/b/a Empire Blue Cross Blue Shield,

Excellus Health Plan, Inc. d/b/a Excellus Blue Cross Blue Shield, R.M.S.C.O.,

Inc., Highmark Inc. d/b/a Highmark Blue Cross Blue Shield and d/b/a Highmark

Blue Shield, Premera Blue Cross, Regence Blue Shield, Regence BlueCross

BlueShield of Utah, Regence BlueCross BlueShield of Oregon, and Regence

BlueShield of Idaho, hereby demand a trial by jury.

Dated: September 8, 2010        KORNSTEIN VEISZ WEXLER
                                  & POLLARD, LLP

                                By:_____
                                      Marvin Wexler
                                757 Third Avenue
                                New York, New York 10017
                                (212) 418-8600

                                      -and-

                                GARTENBERG GELFAND WASSON
                                  & SELDEN LLP
                                801 South Figueroa Street, Suite 2170
                                Los Angeles, California 90017
                                (213) 542-2100

                                Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX A</u>**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A

**Checks Issued by Lincoln Management Group, LLC
to Professional Services Management and
Professional Services Exchange**
(Premier Commercial Bank # 122243350; Bank of Orange County # 020217121)

| Check # | Date | Amount |
|---------|------|--------|
| 1299 | 02/24/01 | $20,000.00 |
| 1026 | 06/18/01 | $5,450.00 |
| 1214 | 07/20/01 | $18,560.00 |
| 1196 | 07/24/01 | $1,000.00 |
| 1195 | 07/24/01 | $10,000.00 |
| 1204 | 07/25/01 | $13,000.00 |
| 1191 | 07/25/01 | $1,440.00 |
| 1190 | 07/25/01 | $18,660.00 |
| 1194 | 07/25/01 | $1,500.00 |
| 1215 | 07/26/01 | $10,000.00 |
| 1222 | 07/27/01 | $1,350.00 |
| 1225 | 07/27/01 | $5,000.00 |
| 1203 | 07/27/01 | $100.00 |
| 1179 | 07/27/01 | $2,000.00 |
| 1232 | 07/28/01 | $24,000.00 |
| 1260 | 08/01/01 | $10,000.00 |
| 1242 | 08/01/01 | $2,800.00 |
| 1283 | 08/02/01 | $1,000.00 |
| 1280 | 08/02/01 | $13,500.00 |
| 1261 | 08/02/01 | $7,400.00 |
| 1307 | 08/03/01 | $5,300.00 |
| 1315 | 08/03/01 | $5,000.00 |
| 1252 | 08/03/01 | $3,000.00 |
| 1304 | 08/04/01 | $14,000.00 |
| 1343 | 08/05/01 | $1,200.00 |
| 1281 | 08/05/01 | $4,700.00 |
| 1317 | 08/06/01 | $4,000.00 |
| 1347 | 08/07/01 | $4,300.00 |
| 1337 | 08/07/01 | $29,000.00 |
| 1323 | 08/08/01 | $9,700.00 |
| 1339 | 08/09/01 | $3,200.00 |
| 1364 | 08/10/01 | $9,000.00 |
| 1359 | 08/10/01 | $6,000.00 |
| 1354 | 08/10/01 | $4,700.00 |
| 1352 | 08/10/01 | $1,850.00 |

| Check # | Date | Amount |
|---------|------|--------|
| 1373 | 08/10/01 | $7,350.00 |
| 1365 | 08/10/01 | $14,000.00 |
| 1362 | 08/12/01 | $6,600.00 |
| N/A | 01/19/02 | $20,000.00 |
| N/A | 01/21/02 | $24,000.00 |
| N/A | 01/23/02 | $41,000.00 |
| 1020 | 01/27/02 | $60,500.00 |
| 1047 | 01/28/02 | $2,000.00 |
| 1104 | 02/02/02 | $1,000.00 |
| 1085 | 02/02/02 | $26,000.00 |
| 1105 | 02/04/02 | $30,500.00 |
| 1129 | 02/05/02 | $45,000.00 |
| 1140 | 02/07/02 | $20,000.00 |
| 1142 | 02/08/02 | $8,000.00 |
| 1147 | 02/08/02 | $26,400.00 |
| 1204 | 02/12/02 | $28,500.00 |
| 1239 | 02/13/02 | $25,000.00 |
| 1235 | 02/14/02 | $15,000.00 |
| 1240 | 02/14/02 | $20,000.00 |
| 1268 | 02/18/02 | $30,000.00 |
| 1280 | 02/20/02 | $27,800.00 |
| 1286 | 02/23/02 | $20,000.00 |
| 1304 | 02/26/02 | $42,000.00 |
| 1334 | 03/01/02 | $15,000.00 |
| 1370 | 03/05/02 | $4,000.00 |
| 1381 | 03/06/02 | $30,000.00 |
| 1121 | 03/06/02 | $23,000.00 |
| 1433 | 03/12/02 | $30,000.00 |
| 1446 | 03/13/02 | $33,500.00 |
| 1449 | 03/14/02 | $30,000.00 |
| 1462 | 03/15/02 | $15,000.00 |
| 1466 | 03/16/02 | $2,000.00 |
| 1508 | 03/19/02 | $30,000.00 |
| 1223 | 03/23/02 | $20,000.00 |
| 1563 | 03/24/02 | $15,000.00 |
| 1493 | 03/25/02 | $25,000.00 |
| 1588 | 03/26/02 | $20,000.00 |
| 1577 | 03/26/02 | $15,000.00 |
| 1605 | 03/29/02 | $50,000.00 |
| 1641 | 04/01/02 | $10,000.00 |
| 1648 | 04/02/02 | $20,000.00 |
| 1681 | 04/06/02 | $15,000.00 |

153

| Check # | Date | Amount |
|---|---|---|
| 1690 | 04/07/02 | $15,000.00 |
| 1720 | 04/09/02 | $25,000.00 |
| 1736 | 04/11/02 | $10,000.00 |
| 1746 | 04/11/02 | $27,000.00 |
| 1769 | 04/12/02 | $15,000.00 |
| 1803 | 04/15/02 | $20,000.00 |
| 1814 | 04/16/02 | $10,000.00 |
| 1877 | 04/20/02 | $20,000.00 |
| 1867 | 04/20/02 | $30,000.00 |
| 1900 | 04/23/02 | $10,000.00 |
| 1894 | 04/23/02 | $10,000.00 |
| 1909 | 04/24/02 | $25,000.00 |
| 1919 | 04/25/02 | $50,000.00 |
| 1926 | 04/26/02 | $10,000.00 |
| 1963 | 04/30/02 | $15,000.00 |
| 2028 | 05/08/02 | $15,000.00 |
| 2016 | 05/08/02 | $25,000.00 |
| 2051 | 05/14/02 | $15,000.00 |
| 2093 | 05/16/02 | $30,000.00 |
| 2111 | 05/17/02 | $15,000.00 |
| 2138 | 05/20/02 | $10,000.00 |
| 2149 | 05/21/02 | $10,000.00 |
| 2185 | 05/24/02 | $20,000.00 |
| 2198 | 05/25/02 | $20,000.00 |
| 2241 | 06/04/02 | $10,000.00 |
| 2237 | 06/04/02 | $20,000.00 |
| 2249 | 06/06/02 | $10,000.00 |
| 2253 | 06/07/02 | $30,000.00 |
| **TOTAL** | | **$1,736,860.00** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX B</u>**

1

## APPENDIX B

2

3

4

5

**Checks Issued by Professional Services Exchange and
Professional Services Management
to Certain Patient Recruiters**

(Wells Fargo # 1420736900, 0219386547; Bank of Orange County #010061245)

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 2277 | 04/05/02 | $6,750.00 | Beauty Enhancement Specialist Inc |
| 2278 | 04/12/02 | $6,750.00 | Beauty Enhancement Specialist Inc |
| 2324 | 04/15/02 | $7,500.00 | Beauty Enhancement Specialist Inc |
| 2325 | 04/20/02 | $6,400.00 | Beauty Enhancement Specialist Inc |
| 2326 | 04/25/02 | $12,400.00 | Beauty Enhancement Specialist Inc |
| **Total for Beauty Enhancement** | | | **$39,800.00** |
| 5246 | 06/28/01 | $4,320.00 | Bina Park |
| 5315 | 07/23/01 | $2,000.00 | Bina Park |
| 5335 | 07/26/01 | $5,460.00 | Bina Park |
| 5423 | 08/11/01 | $2,600.00 | Bina Park |
| 5427 | 08/13/01 | $7,350.00 | Bina Park |
| **Total for Bina Park** | | | **$21,730.00** |
| 2218 | 03/12/02 | $2,500.00 | Kim Pham |
| 2127 | 02/21/02 | $6,250.00 | Kim Pham |
| 2317 | 04/10/02 | $5,000.00 | Kim Pham |
| 2318 | 04/10/02 | $5,000.00 | Kim Pham |
| 2271 | 04/06/02 | $5,000.00 | Kim Pham |
| 2270 | 03/31/02 | $5,000.00 | Kim Pham |
| 2128 | 02/21/02 | $2,500.00 | Kim Pham |
| 2049 | 01/26/02 | $3,750.00 | Kim Pham |
| 2412 | 05/03/02 | $2,500.00 | Kim Pham |
| **Total for Kim Pham** | | | **$37,500.00** |
| 5336 | 07/27/01 | $2,500.00 | Lynn Lavong |
| 5262 | 07/03/01 | $2,000.00 | Lynn Lavong |
| 5407 | 08/04/01 | $2,500.00 | Lynn Lavong |
| **Total for Lynn Lavong** | | | **$7,000.00** |
| 2247 | 03/18/02 | $2,000.00 | Maria Rosales |
| 2357 | 04/24/02 | $6,600.00 | Maria Rosales |
| 2470 | 05/20/02 | $3,125.00 | Maria Rosales |
| 2407 | 05/15/02 | $8,600.00 | Maria Rosales |
| **Total for Maria Rosales** | | | **$20,325.00** |
| 2515 | 06/04/02 | $4,000.00 | Olga Toscano |
| 2347 | 04/23/02 | $2,500.00 | Olga Toscano |
| **Total for Olga Toscano** | | | **$6,500.00** |

156

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 2449 | 05/15/02 | $3,000.00 | Pancha Keophimphone |
| 2414 | 05/10/02 | $3,500.00 | Pancha Keophimphone |
| 2369 | 04/29/02 | $7,500.00 | Pancha Keophimphone |
| 2198 | 03/06/02 | $4,000.00 | Pancha Keophimphone |
| 2137 | 02/23/02 | $13,000.00 | Pancha Keophimphone |
| 2164 | 02/26/02 | $8,000.00 | Pancha Keophimphone |
| 2252 | 03/21/02 | $4,500.00 | Pancha Keophimphone |
| 2408 | 05/03/02 | $4,500.00 | Pancha Keophimphone |
| 2344 | 04/23/02 | $5,000.00 | Pancha Keophimphone |
| 2321 | 04/20/02 | $7,000.00 | Pancha Keophimphone |
| 2481 | 06/05/02 | $7,000.00 | Pancha Keophimphone |
| 2437 | 06/04/02 | $6,750.00 | Pancha Keophimphone |
| 2491 | 05/29/02 | $9,000.00 | Pancha Keophimphone |
| 2029 | 01/25/02 | $5,000.00 | Pancha Keophimphone |
| 2028 | 01/25/02 | $6,500.00 | Pancha Keophimphone |
| 2204 | 04/06/02 | $6,500.00 | Pancha Keophimphone |
| 2296 | 04/01/02 | $3,000.00 | Pancha Keophimphone |
| 2230 | 03/30/02 | $7,500.00 | Pancha Keophimphone |
| 2468 | 05/20/02 | $4,500.00 | Pancha Keophimphone |
| 2275 | 03/29/02 | $4,000.00 | Pancha Keophimphone |
| 2264 | 03/25/02 | $3,000.00 | Pancha Keophimphone |
| 2205 | 03/26/02 | $8,500.00 | Pancha Keophimphone |
| 2231 | 03/23/02 | $7,500.00 | Pancha Keophimphone |
| 2435 | 05/11/02 | $4,500.00 | Pancha Keophimphone |
| 2065 | 01/29/02 | $3,500.00 | Pancha Keophimphone |
| 2371 | 05/13/02 | $6,750.00 | Pancha Keophimphone |
| 2031 | 01/29/02 | $9,000.00 | Pancha Keophimphone |
| 2027 | 01/25/02 | $3,000.00 | Pancha Keophimphone |
| **Total for Pancha Keophimphone** | | | **$165,500.00** |
| 2210 | 04/03/02 | $6,000.00 | Sue Nanda |
| 2220 | 03/31/02 | $9,000.00 | Sue Nanda |
| 2209 | 03/27/02 | $6,000.00 | Sue Nanda |
| 2021 | 01/22/02 | $7,500.00 | Sue Nanda |
| **Total for Sue Nanda** | | | **$28,500.00** |

157

1
2
3
4
5
6
7
8
9
10
11
12
13
14      **APPENDIX C**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX C

**Checks Issued by Lincoln Management Group
to Thuy Huynh Recruiting Companies**
(Bank of Orange County # 020217121, 122237955;
Premier Commercial Bank # 122243350)

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 1803 | 09/23/01 | $5,000.00 | T&T Medical Solutions |
| 2422 | 11/19/01 | $3,500.00 | T&T Medical Solutions |
| 2510 | 12/04/01 | $14,000.00 | T&T Medical Solutions |
| 2701 | 12/20/01 | $20,000.00 | T&T Medical Solutions |
| 2702 | 12/24/01 | $15,000.00 | T&T Medical Solutions |
| 2755 | 12/26/01 | $16,500.00 | T&T Medical Solutions |
| 2759 | 12/30/01 | $16,000.00 | T&T Medical Solutions |
| 1505 | 03/19/02 | $25,000.00 | T&T Medical Solutions |
| 1506 | 03/26/02 | $26,000.00 | T&T Medical Solutions |
| 1582 | 03/27/02 | $14,000.00 | T&T Medical Solutions |
| 1581 | 03/27/02 | $15,000.00 | T&T Medical Solutions |
| 1888 | 04/23/02 | $20,000.00 | T&T Medical Solutions |
| 1889 | 04/30/02 | $20,000.00 | T&T Medical Solutions |
| 1968 | 05/01/02 | $20,200.00 | T&T Medical Solutions |
| 2160 | 05/20/02 | $25,000.00 | Pleasant Services, Inc. |
| 1105 | 06/01/02 | $25,000.00 | T&T Medical Solutions |
| 2161 | 06/03/02 | $21,300.00 | Pleasant Services, Inc. |
| | | $301,500.00 | |

159

1
2
3
4
5
6
7
8
9
10
11
12

**<u>APPENDIX D</u>**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX D

**Checks Issued by Newport Superior Management Group, LLC
and Newport Superior Outpatient Medical Center
to Thuy Huynh Recruiting Companies**

(Downey Savings # 322270356; Bank of America # 0202205630; Union Bank of CA # 0670031721;
Bank West # 322070381; Pacific Business Bank # 041036109;
ChinaTrust Bank # 122210406, 01017403; First Continental Bank # 001153706)

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 1789* | 01/07/99 | $2,000.00 | Trang Thu Thuy Mrkt Consultant |
| 455† | 04/15/99 | $6,000.00 | Trang Thu Thuy |
| 485† | 04/20/99 | $2,000.00 | Trang Thu Thuy |
| 1063† | 06/10/99 | $4,000.00 | Trang Thu Thuy |
| 1065† | 06/11/99 | $5,000.00 | Trang Thu Thuy |
| 1068† | 06/12/99 | $4,000.00 | Trang Thu Thuy |
| 1606 | 09/25/99 | $2,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1599† | 09/25/99 | $3,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1788* | 11/06/99 | $4,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1045† | 01/18/00 | $2,600.00 | Trang Thu Thuy Mrkt Consultant |
| 1073* | 02/12/00 | $1,350.00 | Trang Thu Thuy Mrkt Consultant |
| 1122* | 02/16/00 | $7,920.00 | Trang Thu Thuy |
| 4602* | 02/22/00 | $8,000.00 | TT Medical Solutions |
| 1515* | 03/31/00 | $1,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1520* | 03/31/00 | $2,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1510* | 03/31/00 | $2,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1497 | 04/01/00 | $2,000.00 | Trang Thu Thuy Mrkt Consultant |
| 1542* | 04/09/00 | $4,000.00 | Trang Thu Thuy Mrkt Consultant |
| 2690 | 07/31/00 | $1,000.00 | T&T Medical Solutions |
| 2706 | 08/03/00 | $1,000.00 | T&T Medical Solutions |
| 2891 | 08/23/00 | $2,000.00 | T&T Medical Solutions |
| 2888 | 08/23/00 | $2,000.00 | T&T Medical Solutions |
| 2899 | 08/24/00 | $2,200.00 | T&T Medical Solutions |
| 3112* | 09/26/00 | $1,100.00 | T&T Medical Solutions |
| 3123* | 10/03/00 | $1,300.00 | T&T Medical Solutions |
| 3174* | 10/04/00 | $1,000.00 | T&T Medical Solutions |
| 3188* | 10/05/00 | $4,000.00 | T&T Medical Solutions |
| 3206* | 10/08/00 | $1,000.00 | T&T Medical Solutions |
| 3199* | 10/08/00 | $5,000.00 | T&T Medical Solutions |
| 3229† | 10/09/00 | $3,000.00 | T&T Medical Solutions |
| 3256* | 10/11/00 | $2,200.00 | T&T Medical Solutions |
| 3280* | 10/12/00 | $1,100.00 | T&T Medical Solutions |

\*  Check signed by defendant Catherine Bach.

†  Check signed by defendant Lars Hanson.

161

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 3286* | 10/14/00 | $1,100.00 | T&T Medical Solutions |
| 3307* | 10/15/00 | $2,100.00 | T&T Medical Solutions |
| 3317* | 10/16/00 | $2,100.00 | T&T Medical Solutions |
| 3330† | 10/16/00 | $2,000.00 | T&T Medical Solutions |
| 3826* | 12/07/00 | $2,000.00 | T&T Medical Solutions |
| 3868* | 12/07/00 | $1,400.00 | T&T Medical Solutions |
| 3884* | 12/08/00 | $2,000.00 | T&T Medical Solutions |
| 3850* | 12/09/00 | $7,000.00 | T&T Medical Solutions |
| 3890* | 12/11/00 | $2,000.00 | T&T Medical Solutions |
| 3871* | 12/11/00 | $1,000.00 | T&T Medical Solutions |
| 3861* | 12/11/00 | $5,000.00 | T&T Medical Solutions |
| 3949* | 12/17/00 | $6,000.00 | T&T Medical Solutions |
| 3967† | 12/20/00 | $2,000.00 | T&T Medical Solutions |
| 3960† | 12/20/00 | $6,200.00 | T&T Medical Solutions |
| 4286* | 01/22/01 | $2,000.00 | T&T Medical Solutions |
| 4271* | 01/22/01 | $8,200.00 | T&T Medical Solutions |
| 4299* | 01/24/01 | $6,000.00 | T&T Medical Solutions |
| 1122 | 04/26/01 | $2,300.00 | T&T Medical Solutions |
| 1471 | 01/16/02 | $6,400.00 | Pleasant Services, Inc. |
| 1363 | 06/25/02 | $7,600.00 | Pleasant Services, Inc. |
| 1380 | 06/30/02 | $6,500.00 | Pleasant Services, Inc. |
| 1497 | 07/23/02 | $4,000.00 | Pleasant Services, Inc. |
| 5521 | 07/29/02 | $4,600.00 | Pleasant Services, Inc. |
| 1525 | 08/02/02 | $2,500.00 | Pleasant Services, Inc. |
| 1579 | 08/08/02 | $1,000.00 | Pleasant Services, Inc. |
| 1314 | 10/15/02 | $4,420.00 | Pleasant Services, Inc. |
| 1061 | 01/11/03 | $2,500.00 | Pleasant Services, Inc. |
| 1109 | 02/20/03 | $3,000.00 | Pleasant Services, Inc. |
|  |  | **$193,690.00** |  |

162

**APPENDIX E**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX E

### Checks Issued by Healthstar Surgical Group to Pleasant Services, Inc.
**(Uniti Bank # 001301944)**

| Check # | Date | Amount | Paid to Order of |
|---------|------|--------|------------------|
| 1314 | 09/07/02 | $4,000.00 | Pleasant Services, Inc. |
| 1232 | 09/13/02 | $17,700.00 | Pleasant Services, Inc. |
| 1390 | 09/14/02 | $8,750.00 | Pleasant Services, Inc. |
| 1315 | 09/16/02 | $7,750.00 | Pleasant Services, Inc. |
| 1315 | 09/16/02 | $7,750.00 | Pleasant Services, Inc. |
| 1340 | 09/18/02 | $9,000.00 | Pleasant Services, Inc. |
| 1430 | 09/20/02 | $3,750.00 | Pleasant Services, Inc. |
| 1432 | 09/26/02 | $13,000.00 | Pleasant Services, Inc. |
| 1433 | 09/27/02 | $3,000.00 | Pleasant Services, Inc. |
| 1551 | 10/01/02 | $5,900.00 | Pleasant Services, Inc. |
| 1550 | 10/01/02 | $5,900.00 | Pleasant Services, Inc. |
|  |  | $86,500.00 |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX F</u>**

## APPENDIX F

**Checks Issued by North Orange County Imaging
to Pleasant Services, Inc. and Thuy Huynh**
(Bank West # 657001251; Uniti Bank # 001302157)

| Check # | Date | Amount | Paid to Order of |
|---|---|---|---|
| 1005 | 10/03/02 | $2,000.00 | Pleasant Services, Inc. |
| 1141 | 10/15/02 | $13,250.00 | Pleasant Services, Inc. |
| 1517 | 01/25/03 | $2,500.00 | Thuy Huynh |
| 1553 | 02/08/03 | $3,750.00 | Thuy Huynh |
| 1167 | 03/23/03 | $3,500.00 | Thuy Huynh |
| 1196 | 05/23/03 | $5,000.00 | Thuy Huynh |
| 1257 | 06/12/03 | $2,300.00 | Thuy Huynh |
| 1276 | 06/13/03 | $2,800.00 | Thuy Huynh |
| | | $35,100.00 | |

**APPENDIX G**

1

## APPENDIX G

2

3

### Checks Issued by Antioch Management Inc.
### to Thuy Huynh
(Cal. Nat'l Bank # 062058011; Citibank # 200411700)

| Check # | Date | Amount | Paid to Order of |
|---------|------|--------|------------------|
| 13106 | 05/09/03 | $10,000.00 | Thuy Huynh |
| 1185 | 06/20/03 | $3,400.00 | Thuy Huynh |
| 1334 | 07/02/03 | $10,000.00 | Thuy Huynh |
| 1378 | 07/19/03 | $10,500.00 | Thuy Huynh |
| 1385 | 07/24/03 | $9,000.00 | Thuy Huynh |
| | | **$42,900.00** | |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX H</u>**

1

## APPENDIX H

2

3

4

5

6

**Checks Issued by St. Paul Outpatient Surgical Center to Pleasant Services, Inc. and Thuy Huynh**
(Center Bank # 015301899, 001305366)

| Check # | Date | Amount | Paid to Order of |
|---------|------|--------|------------------|
| 2419 | 10/01/03 | $3,500.00 | Thuy Huynh |
| 1226 | 11/05/03 | $2,800.00 | Pleasant Services Inc |
| 1394 | 11/13/03 | $3,500.00 | Thuy Huynh |
| 1600 | 12/02/03 | $1,400.00 | Thuy Huynh |
| 1597 | 12/02/03 | $2,300.00 | Thuy Huynh |
| 1648 | 12/10/03 | $5,900.00 | Thuy Huynh |
| 1713 | 12/16/03 | $2,800.00 | Thuy Huynh |
| 1773 | 12/22/03 | $3,500.00 | Thuy Huynh |
| 1512 | 02/07/04 | $5,600.00 | Thuy Huynh |
| 1279 | 02/19/04 | $8,000.00 | Thuy Huynh |
| 1279 | 02/19/04 | $8,000.00 | Thuy Huynh |
| 1707 | 02/24/04 | $4,500.00 | Thuy Huynh |
| 1771 | 03/05/04 | $2,800.00 | Thuy Huynh |
| 1802 | 03/10/04 | $3,500.00 | Thuy Huynh |
| | | $58,100.00 | |

170

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX I</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX I

| Checks Issued by Millennium to Pleasant Services, Inc. (East West Bank # 81308975, 322070381) | | | |
|---|---|---|---|
| **Check #** | **Date** | **Amount** | **Paid to Order of** |
| 1509 | 04/15/02 | $4,500.00 | Pleasant Services, Inc. |
| 1511 | 04/30/02 | $4,500.00 | Pleasant Services, Inc. |
| 1512 | 05/15/02 | $4,500.00 | Pleasant Services, Inc. |
| 1626 | 05/31/02 | $4,500.00 | Pleasant Services, Inc. |
| 1717 | 06/15/02 | $4,500.00 | Pleasant Services, Inc. |
| 1710 | 06/30/02 | $4,500.00 | Pleasant Services, Inc. |
| | | **$27,000.00** | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX J</u>**

1

2

## APPENDIX J

3

4

### Checks Issued by POMMGI to T&T Medical Solutions
**(Bank of America # 0760805778)**

5

| Check # | Date | Amount | Paid to Order of |
|---------|------|--------|------------------|
| 13644 | 08/07/01 | $34,800.00 | T&T Medical Solutions |
| 13935 | 09/26/01 | $19,400.00 | T&T Medical Solutions |
| 13936 | 09/26/01 | $9,300.00 | T&T Medical Solutions |
| 13937 | 09/26/01 | $2,400.00 | T&T Medical Solutions |
| 14202 | 11/15/01 | $4,700.00 | T&T Medical Solutions |
| 14203 | 11/26/01 | $3,800.00 | T&T Medical Solutions |
| 14280 | 11/30/01 | $23,700.00 | T&T Medical Solutions |
| 14281 | 11/30/01 | $2,500.00 | T&T Medical Solutions |
| | | $100,600.00 | |

174

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX K</u>**

**APPENDIX K**

| | HIGHMARK -- OTHER ONYX EMPLOYEES | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| HI-17 | 12/21/02 | Unity | Rosenberg | endoscopy |
| HI-17 | 12/22/02 | Unity | Rosenberg | colonoscopy |
| HI-17 | 1/4/03 | Unity | McKenna | sweaty palm surgery |
| HI-18 | 11/9/02 | Unity | Kim | endoscopy |
| HI-18 | 11/10/02 | Unity | N/A | N/A |
| HI-18 | 12/7/02 | Unity | McKenna | sweaty palm surgery |
| HI-19 | 5/4/02 | St. Francis | Rosenberg | endoscopy |
| HI-19 | 5/5/02 | St. Francis | Rosenberg | colonoscopy |
| HI-19 | 10/25/02 | N/A | Non-Defendant | sweaty palm surgery |
| HI-19 | 12/20/02 | Unity | McKenna | sweaty palm surgery |
| HI-20 | 8/2/02 | Non-Defendant | Rosenberg | endoscopy |
| HI-20 | 8/3/02 | Non-Defendant | Rosenberg | colonoscopy |
| HI-20 | 9/14/02 | Unity | N/A | sweaty palm surgery |
| HI-20 | 11/15/02 | N/A | N/A | sweaty palm surgery |
| HI-21 | 2/8/03 | Unity | Rosenberg | endoscopy |
| HI-21 | 2/9/03 | Unity | Rosenberg | colonoscopy |
| HI-21 | 2/15/03 | Unity | N/A | septoplasty |
| HI-22 | 4/5/03 | Unity | Kim | endoscopy |
| HI-22 | 4/6/03 | Unity | Rosenberg | colonoscopy |
| HI-22 | 4/19/03 | Unity | White | septoplasty |
| HI-23 | 5/18/02 | St. Francis | N/A | N/A |
| HI-23 | 5/29/02 | St. Francis | N/A | N/A |
| HI-23 | 11/29/02 | N/A | White | septoplasty |
| HI-24 | 10/19/02 | Unity | Kim | endoscopy |
| HI-24 | 10/20/02 | Unity | Rosenberg | colonoscopy |
| HI-24 | 11/30/02 | Unity | N/A | circumcision |
| HI-24 | 4/19/03 | Unity | N/A | septoplasty |
| HI-25 | 3/15/03 | Unity | Rosenberg | endoscopy |
| HI-25 | 3/16/03 | Unity | Rosenberg | colonoscopy |

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| HI-25 | 3/22/03 | Unity | Hampton | sweaty palm surgery |
| HI-26 | 3/14/03 | N/A | Non-Defendant | sweaty palm surgery |
| HI-26 | 3/29/03 | N/A | N/A | N/A |
| HI-27 | 9/28/02 | Unity | Kim | endoscopy |
| HI-27 | 11/2/02 | Unity | Non-Defendant | sweaty palm surgery |
| HI-28 | 11/9/02 | N/A | Kim | endoscopy |
| HI-28 | 11/10/02 | N/A | N/A | colonoscopy |
| HI-28 | 2/8/03 | N/A | White | septoplasty |
| HI-29 | 1/14/03 | Unity | Rosenberg | endoscopy |
| HI-30 | 5/27/02 | Non-Defendant | Non-Defendant | sweaty palm surgery |
| HI-30 | 7/20/02 | Non-Defendant | Chan | laparoscopy |
| HI-30 | 9/7/02 | Unity | Non-Defendant | sweaty palm surgery |
| HI-31 | 3/15/03 | Unity | Hampton | sweaty palm surgery |
| HI-32 | 4/12/03 | Unity | Rosenberg | endoscopy |
| HI-32 | 4/13/03 | Unity | Rosenberg | colonoscopy |
| HI-33 | 4/12/03 | Unity | Rosenberg | endoscopy |
| HI-33 | 4/13/03 | Unity | Rosenberg | colonoscopy |
| HI-34 | 12/21/02 | N/A | Rosenberg | endoscopy |
| HI-34 | 12/22/02 | N/A | Rosenberg | colonoscopy |
| HI-35 | 5/4/02 | N/A | Rosenberg | endoscopy |
| HI-35 | 5/27/02 | N/A | Non-Defendant | sweaty palm surgery |
| HI-36 | 11/9/02 | Unity | Non-Defendant | endoscopy |
| HI-36 | 11/10/02 | Unity | N/A | N/A |
| HI-38 | 7/19/02 | N/A | N/A | endoscopy |
| HI-38 | 8/3/02 | N/A | N/A | N/A |

**APPENDIX L**

# APPENDIX L

| TENNESSEE BLUE CROSS -- MAGNETEK EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| TN-10 | 10/05/01 | Newport | N/A | Upper GI Endoscopy |
| TN-10 | 10/07/01 | Newport | N/A | Colonoscopy |
| TN-10 | 10/20/01 | Anaheim West | White | Septoplasty |
| TN-10 | | | | |
| TN-11 | 09/18/01 | N/A | Non- | Upper GI Endoscopy |
| TN-11 | 09/20/01 | Newport | Rosenberg | Colonoscopy |
| TN-11 | | | | |
| TN-12 | 07/04/01 | Anaheim West | Kim | Upper GI Endoscopy |
| TN-12 | 07/07/01 | Anaheim West | Kim | Colonoscopy |
| TN-12 | 08/13/01 | N/A | N/A | Colonoscopy |
| TN-12 | 11/10/01 | Anaheim West | Eugene | |
| TN-13 | 07/21/01 | Anaheim West | N/A | Upper GI Endoscopy |
| TN-13 | 07/26/01 | Anaheim West | Alamy | Colonoscopy |
| TN-13 | 11/16/01 | Anaheim West | | |
| TN-13 | | | | |
| TN-14 | 06/08/01 | Outpatient | N/A | Septoplasty |
| TN-14 | 07/14/01 | N/A | Kim | Upper GI Endoscopy |
| TN-14 | 07/21/01 | Anaheim West | Kim | Colonoscopy |
| TN-14 | 11/10/01 | Anaheim West | | |
| TN-14 | | | | |
| TN-15 | 10/19/01 | Anaheim West | Alamy | Upper GI Endoscopy |
| TN-15 | 10/20/01 | N/A | Alamy | Colonoscopy |
| TN-15 | 12/09/01 | Anaheim West | Eugene | Sweaty Palm Surgery |
| TN-15 | 12/27/01 | Anaheim West | Eugene | Sweaty Palm Surgery |

179

1
2
3
4
5
6
7
8
9
10
11
12
13
14 **<u>APPENDIX M</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX M**

| MICHIGAN BLUE CROSS -- CALIFORNIA TEXTRON CLUSTER | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| MI-10 (Wife) | 6/21/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-10 (Wife) | 6/30/2001 | Millennium | Halac | Colonoscopy |
| MI-10 (Wife) | 1/17/2002 | Millennium | Chun | Laparoscopy |
| MI-11 (Husband) | 4/11/2001 | Non-Defendant | N/A | Nasal Endoscopy |
| MI-11 (Husband) | 7/6/2001 | Non-Defendant | N/A | Septoplasty |
| MI-11 (Husband) | 2/3/2002 | Millennium | Jigjinni | Upper GI Endoscopy |
| MI-11 (Husband) | 5/3/2002 | Millennium | Jigjinni | Colonoscopy |
| MI-15 (Husband) | 12/6/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-15 (Husband) | 12/11/2001 | Millennium | Halac | Colonoscopy |
| MI-15 (Husband) | 12/21/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-15 (Husband) | 12/28/2002 | Unity | Kim | Colonoscopy |
| MI-14 (Wife) | 3/3/2001 | Millennium | Jigjinni | Upper GI Endoscopy |
| MI-14 (Wife) | 3/10/2001 | Millennium | Jigjinni | Colonoscopy |
| MI-14 (Wife) | 5/6/2002 | Millennium | Chun | Laparoscopy |
| MI-14 (Wife) | 5/16/2002 | St. Francis | N/A | Blepharoplasty |
| MI-14 (Wife) | 12/22/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-14 (Wife) | 12/29/2002 | N/A | Kim | Colonoscopy |

181

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| MI-16 (Husband) | 12/14/2002 | N/A | Rosenberg | Upper GI Endoscopy |
| MI-16 (Husband) | 12/15/2002 | N/A | Rosenberg | Colonoscopy |
| MI-16 (Husband) | 12/19/2002 | N/A | Non-Defendant | Male Genital |
| MI-17 (Wife) | 12/16/2002 | Unity | Kim | Upper GI Endoscopy |
| MI-17 (Wife) | 12/17/2002 | Unity | Rosenberg | Colonoscopy |
| MI-17 (Wife) | 12/27/2002 | N/A | N/A | Hemorrhoids |
| MI-18 (Wife) | 8/4/2002 | Millennium | Rosenberg | Upper GI Endoscopy |
| MI-18 (Wife) | 8/11/2002 | Millennium | Rosenberg | Colonoscopy |
| MI-18 (Wife) | 9/6/2002 | Millennium | Chun | Laparoscopy |
| MI-18 (Wife) | 10/1/2002 | Unity | Chan | D&C |
| MI-19 (Husband) | 7/6/2002 | Millennium | Alamy | Upper GI Endoscopy |
| MI-19 (Husband) | 7/21/2002 | Millennium | Alamy | Colonoscopy |
| MI-19 (Husband) | 9/27/2002 | Millennium | N/A | Septoplasty |
| MI-20 (Husband) | 3/7/2002 | Millennium | N/A | Remove Eye Growth |
| MI-21 (Wife) | 3/23/2002 | Millennium | Chun | Laparoscopy |
| MI-21 (Wife) | 9/5/2002 | Millennium | N/A | Eye Procedure |
| MI-22 (Wife) | 11/10/2002 | Millennium | Alamy | Upper GI Endoscopy |
| MI-22 (Wife) | 12/27/2002 | N/A | N/A | Remove Eye Growth |
| MI-23 (Husband) | 10/6/2002 | Millennium | Alamy | Upper GI Endoscopy |

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| MI-24 (Mother) | 5/11/2001 | N/A | Alamy | Upper GI Endoscopy |
| MI-24 (Mother) | 5/24/2001 | Non-Defendant | N/A | Upper GI Endoscopy |
| MI-25 (Daughter) | 5/24/2001 | Non-Defendant | Alamy | Upper GI Endoscopy |
| MI-26 (Husband) | 8/17/2002 | N/A | Kim | Upper GI Endoscopy |
| MI-26 (Husband) | 8/24/2002 | N/A | Rosenberg | Colonoscopy |
| MI-38 (Wife) | 10/28/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-38 (Wife) | 11/9/2001 | Millennium | Halac | Colonoscopy |
| MI-38 (Wife) | 11/26/2001 | Millennium | Chun | Laparoscopy |
| MI-38 (Wife) | 9/20/2002 | Unity | White | Septoplasty |
| MI-38 (Wife) | 12/13/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-38 (Wife) | 12/13/2002 | Unity | N/A | Colonoscopy |
| MI-38 (Wife) | 12/14/2002 | Unity | Rosenberg | Colonoscopy |
| MI-27 | 8/4/2002 | Millennium | Rosenberg | Upper GI Endoscopy |
| MI-27 | 8/11/2002 | Millennium | Rosenberg | Colonoscopy |
| MI-27 | 9/6/2002 | Millennium | Chun | Laparoscopy |
| MI-27 | 12/28/2002 | Unity | Chan | Laparoscopy |
| MI-28 | 5/18/2002 | Anaheim West | Rosenberg | Upper GI Endoscopy |
| MI-28 | 5/25/2002 | Anaheim West | Kim | Colonoscopy |

183

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| MI-28 | 8/27/2002 | Millennium | Non-Defendant | Septoplasty |
| MI-28 | 9/14/2002 | Millennium | Patel | Circumcision |
| MI-28 | 12/5/2002 | Millennium | N/A | Tonsillectomy |
| MI-29 | 10/12/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-29 | 10/21/2002 | Unity | Rosenberg | Colonoscopy |
| MI-29 | 5/8/2002 | St. Francis | Kim | Upper GI Endoscopy |
| MI-30 | 5/14/2002 | St. Francis | Rosenberg | Colonoscopy |
| MI-30 | 7/23/2002 | Millennium | Non-Defendant | Vein therapy |
| MI-31 | 11/10/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-31 | 12/12/2001 | Millennium | Halac | Colonoscopy |
| MI-31 | 12/24/2001 | Anaheim West | N/A | Laparoscopy |
| MI-31 | 1/28/2002 | Millennium | N/A | Bunion Surgery |
| MI-31 | 12/21/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-31 | 12/28/2002 | Unity | Kim | Colonoscopy |
| MI-31 | 12/30/2002 | Unity | N/A | Laparoscopy |
| MI-32 | 9/14/2002 | Unity | Rosenberg | Colonoscopy |
| MI-32 | 9/15/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-32 | 12/5/2002 | Millennium | N/A | Septoplasty |

184

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| MI-33 | 4/28/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-33 | 12/21/2002 | N/A | N/A | Upper GI Endoscopy |
| MI-34 | 1/26/2002 | Anaheim West | Chun | Laparoscopy |
| MI-34 | 2/19/2002 | N/A | Chun | Hysterectomy |
| MI-34 | 6/18/2002 | Millennium | Alamy | Upper GI Endoscopy |
| MI-34 | 6/23/2002 | Millennium | Alamy | Colonoscopy |
| MI-34 | 8/3/2002 | Millennium | N/A | Blepharoplasty |
| MI-36 | 10/3/2002 | N/A | Non-Defendant | Colonoscopy |
| MI-36 | 11/27/2002 | Non-Defendant | Non-Defendant | Upper GI Endoscopy |
| MI-37 | 7/21/2001 | Millennium | Alamy | Upper GI Endoscopy |
| MI-37 | 7/28/2001 | Millennium | Alamy | Colonoscopy |
| MI-37 | 3/15/2002 | Non-Defendant | N/A | Remove anal fistula |
| MI-39 | 3/20/2001 | Millennium | Jigjinni | Upper GI Endoscopy |
| MI-39 | 4/7/2001 | Millennium | Jigjinni | Colonoscopy |
| MI-40 | 1/23/2002 | Millennium | Chun | Laparoscopy |
| MI-40 | 4/11/2002 | Anaheim West | N/A | Revise upper eyelid |
| MI-40 | 6/18/2002 | Millennium | Alamy | Upper GI Endoscopy |
| MI-41 | 3/19/2002 | Millennium | Non-Defendant | Upper GI Endoscopy |
| MI-41 | 3/28/2002 | Millennium | Non-Defendant | Colonoscopy |

185

| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
|---|---|---|---|---|
| MI-41 | 4/23/2002 | Millennium | Chun | Laparoscopy |
| MI-42 | 7/21/2002 | Millennium | Alamy | Upper GI Endoscopy |
| MI-42 | 8/11/2002 | Millennium | Alamy | Colonoscopy |
| MI-42 | 9/7/2002 | Millennium | Chun | Laparoscopy |
| MI-43 | 5/16/2002 | N/A | Rosenberg | Upper GI Endoscopy |
| MI-43 | 8/3/2002 | Millennium | N/A | N/A |
| MI-43 | 9/12/2002 | Unity | Rosenberg | Colonoscopy |
| MI-44 | 3/9/2001 | N/A | Halac | Upper GI Endoscopy |
| MI-44 | 3/17/2001 | Millennium | N/A | N/A |
| MI-44 | 3/26/2001 | Millennium | Halac | Colonoscopy |
| MI-44 | 11/29/2001 | Anaheim West | Chun | Laparoscopy |
| MI-44 | 5/17/2002 | Millennium | N/A | Bunion Surgery |
| MI-44 | 9/14/2002 | Unity | Rosenberg | Upper GI Endoscopy |
| MI-44 | 9/15/2002 | Unity | Rosenberg | Colonoscopy |
| MI-44 | 10/26/2002 | N/A | Rosenberg | Hemorrhoidectomy |
| MI-45 | 11/2/2001 | Millennium | Halac | Upper GI Endoscopy |
| MI-45 | 11/28/2001 | Millennium | Halac | Colonoscopy |

186

1
2
3
4
5
6
7
8
9
10
11
12
13
14          **<u>APPENDIX N</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX N**

| | | | | |
|---|---|---|---|---|
| **EMPIRE BLUE CROSS -- PEPSI EMPLOYEE CLUSTER** | | | | |
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| EM-1 | 7/12/03 | Valley Multi- | Houck/McKen | Sweaty Palms Surgery |
| EM-1 | 8/23/03 | St. Paul | N/A | Bladder Procedure |
| EM-2 | 9/29/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| EM-2 | 9/30/03 | St. Paul | Rosenberg | Colonoscopy |
| EM-2 | 10/2/03 | St. Paul | N/A | N/A |
| EM-2 | 10/4/03 | St. Paul | Houck/McKen | Sweaty Palm Surgery |
| EM-2 | 10/6/03 | St. Paul | N/A | Sweaty Palm Surgery |
| EM-2 | 12/21/03 | Non-Defendant | Rosenberg | Upper GI Endoscopy |
| EM-3 | 9/6/03 | St. Paul | Non-Defendant | D&C |
| EM-3 | 10/4/03 | St. Paul | Houck/McKen | Sweaty Palm Surgery |
| EM-4 | 10/27/03 | St. Paul | Rosenberg | Endoscopy |
| EM-4 | 10/28/03 | St. Paul | Rosenberg | Colonoscopy |
| EM-4 | 11/1/03 | St. Paul | Houck/McKen | Sweaty Palm Surgery |
| EM-5 | 11/2/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| EM-5 | 11/3/03 | St. Paul | Rosenberg | Colonoscopy |
| EM-6 | 8/28/03 | St. Paul | Houck/McKen | Sweaty Palm Surgery |
| EM-6 | 11/26/03 | St. Paul | N/A | N/A |
| EM-7 | 8/23/03 | St. Paul | McKenna | Sweaty Palm Surgery |
| EM-7 | 11/1/03 | St. Paul | N/A | Bladder Procedure* |

*  Where this chart, and others infra, references "Houck/McKenna," Houck fraudulently performed the unnecessary sweaty palms surgery, and McKenna fraudulently billed it.  Both Houck and McKenna understood that those actions were part of the fraud complained of here.

188

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX O</u>**

## APPENDIX O

| EMPIRE BLUE CROSS -- FUJICARE EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| EM-9 | 12/7/02 | Unity | N/A | Upper GI Endoscopy |
| EM-9 | 12/19/02 | N/A | Fuller/McKen | Sweaty Palm Surgery |
| EM-10 | 12/7/02 | Unity | N/A | Upper GI Endoscopy |
| EM-10 | 12/8/02 | N/A | N/A | N/A |
| EM-10 | 12/19/02 | N/A | Fuller/McKen | Sweaty Palm Surgery |
| EM-11 | 3/2/02 | Millennium | N/A | N/A |
| EM-11 | 3/29/02 | Millennium | Jigjinni | Upper GI Endoscopy |
| EM-11 | 4/18/03 | Unity | Rosenberg | Upper GI Endoscopy |
| EM-11 | 4/27/03 | Valley Multi-Specialty | Rosenberg | Upper GI Endoscopy |
| EM-11 | 5/10/03 | Valley Multi-Specialty | Rosenberg | Colonoscopy |
| EM-11 | 5/31/03 | Valley Multi-Specialty | N/A | N/A |

190

1
2
3
4
5
6
7
8
9
10
11
12
13
14 **<u>APPENDIX P</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX P

| EXCELLUS BLUE CROSS - LINVATEC FLORIDA EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Facility** | **Surgeon** | **Fraudulently Billed Procedure** |
| EX-01 | 11/02/02 | Unity | Non-Defendant | Upper GI Endoscopy |
| EX-01 | 11/03/02 | Unity | Non-Defendant | Colonoscopy |
| EX-01 | 11/29/02 | Unity | Fuller/McKenn | Sweaty Palm Surgery |
| EX-02 | 11/29/02 | Unity | N/A | N/A |
| EX-02 | 11/30/02 | Unity | Fuller/McKenn | Sweaty Palm Surgery |
| EX-03 | 11/29/02 | Unity | Rosenberg | Upper GI Endoscopy |
| EX-03 | 11/30/02 | Unity | Fuller/McKenn | Sweaty Palm Surgery |
| EX-04 | 11/29/02 | Unity | White | Septoplasty |

192

1
2
3
4
5
6
7
8
9
10
11
12
13
14                                  **<u>APPENDIX Q</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX Q

| EXCELLUS BLUE CROSS - - WELCH ALLYN EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| EX-05 | 01/13/02 | Pacific Outpatient | Non-Defendant | N/A |
| EX-05 | 01/20/02 | Pacific Outpatient | Non-Defendant | Colonoscopy |
| EX-06 | 01/13/02 | Pacific Outpatient | Rayyes | Upper GI |
| EX-06 | 01/20/02 | Pacific Outpatient | Rayyes | Colonoscopy |
| EX-07 | 04/04/02 | Pacific Outpatient | Rayyes | Upper GI |
| EX-07 | 05/19/02 | Pacific Outpatient | Lluncor | Sigmoidoscopy |
| EX-08 | 02/10/02 | Pacific Outpatient | Rayyes | Upper GI |
| EX-08 | 02/24/02 | Pacific Outpatient | Rayyes | Lower GI |
| EX-09 | 02/10/02 | Pacific Outpatient | Rayyes | Upper GI |
| EX-09 | 02/24/02 | Pacific Outpatient | Rayyes | Lower GI |
| EX-10 | 02/16/02 | Pacific Outpatient | Lluncor | Upper GI |
| EX-10 | 02/23/02 | Pacific Outpatient | Lluncor | Colonoscopy |
| EX-11 | 01/08/02 | Pacific Outpatient | Rayyes | Upper GI |
| EX-11 | 01/13/02 | Pacific Outpatient | Rayyes | Colonoscopy |
| EX-12 | 05/11/02 | Pacific Outpatient | Lluncor | Upper GI |
| EX-12 | 05/18/02 | Pacific Outpatient | Lluncor | Colonoscopy |
| EX-12 | 08/16/02 | Pacific Outpatient | Non-Defendant | Sweaty Palm |
| EX-13 | 07/13/02 | Pacific Outpatient | Non-Defendant | Sweaty Palm |
| EX-14 | 05/04/02 | Pacific Outpatient | Lluncor | Upper GI |
| EX-14 | 05/11/02 | Pacific Outpatient | Lluncor | Colonoscopy |
| EX-15 | 03/15/03 | Harbor Multi- | Govindarajan | Upper GI |
| EX-15 | 03/16/03 | Harbor Multi- | Govindarajan | Colonoscopy |
| EX-15 | 03/19/03 | Harbor Multi- | Non-Defendant | D&C |

194

1
2
3
4
5
6
7
8
9
10
11
12
13
14 **<u>APPENDIX R</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX R**

| MASSACHUSETTS BLUE CROSS -- MINNESOTA EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| MA-01 | 5/24/00 | Newport | Babaknia | Upper GI Endoscopy |
| MA-01 | 5/25/00 | Newport | Non- | AP Repair |
| MA-02 | 5/16/01 | Millennium | Non- | Colonoscopy |
| MA-02 | 5/18/01 | Millennium | Non- | Upper GI Endoscopy |
| MA-02 | 4/16/02 | Millennium | Non- | Removal of Hemorrhoids |
| MA-03 | 12/27/00 | Millennium | Babaknia | Upper GI Endoscopy |
| MA-03 | 1/2/01 | Millennium | Babaknia | Colonoscopy |
| MA-03 | 3/20/02 | Anaheim West | Kim | Upper GI Endoscopy |
| MA-03 | 3/21/02 | Anaheim West | Non- | Removal of Hemorrhoids |
| MA-03 | 3/22/02 | Anaheim West | Chan | AP Repair |
| MA-03 | 6/1/02 | N/A | White | Septoplasty |
| MA-04 | 12/14/01 | Anaheim West | Alamy | Upper GI Endoscopy |
| MA-04 | 12/15/01 | Anaheim West | Alamy | Colonoscopy |
| MA-04 | 12/17/01 | Pacific | Non- | Removal of Hemorrhoids |

196

1
2
3
4
5
6
7
8
9
10
11
12
13
14 **<u>APPENDIX S</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPENDIX S

| MASSACHUSETTS BLUE CROSS -- WASHINGTON EMPLOYEE CLUSTER | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| MA-05 | 8/21/01 | Millennium | Chun | Vaginal Repair |
| MA-05 | 8/26/01 | Millennium | Halac | Upper GI Endoscopy |
| MA-05 | 11/15/01 | Millennium | Halac | Colonoscopy |
| MA-06 | 11/5/01 | Millennium | Chun | Vaginal Repair |
| MA-06 | 11/16/01 | Millennium | Halac | Upper GI Endoscopy |
| MA-06 | 8/5/02 | Millennium | Chun | Laparoscopy; D&C |
| MA-07 | 2/28/02 | Millennium | Non- | Colonoscopy |
| MA-07 | 3/2/02 | Millennium | Non- | Removal of Hemorrhoids |
| MA-08 | 8/17/01 | Millennium | Chun | Vaginal Repair |
| MA-08 | 8/28/01 | Millennium | Halac | Upper GI Endoscopy |
| MA-09 | 1/14/02 | Millennium | Chun | Vaginal Repair |
| MA-09 | 1/26/02 | Millennium | Non- | Sweaty Palm Surgery |

198

1
2
3
4
5
6
7
8
9
10
11
12
13

**<u>APPENDIX T</u>**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX T

| PREMERA -- HUSBAND AND WIFE PAIRS | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| **Alaska - Husband and Wife** | | | | |
| PR-03 | 12/17/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| PR-03 | 12/18/03 | St. Paul | Rosenberg | Colonoscopy |
| PR-04 | 12/17/03 | St. Paul | Non-Defendant | Upper GI Endoscopy |
| PR-04 | 12/18/03 | St. Paul | Rosenberg | Colonoscopy |
| **Arizona - Husband and Wife** | | | | |
| PR-01 | 3/22/03 | Unity | N/A | Upper GI Endoscopy |
| PR-01 | 3/23/03 | Unity | Non-Defendant | Colonoscopy |
| PR-01 | 3/29/03 | Unity | N/A | Sweaty Palm Surgery |
| PR-02 | 3/22/03 | Unity | N/A | Upper GI Endoscopy |
| PR-02 | 3/23/03 | Unity | N/A | Colonoscopy |
| PR-02 | 3/29/03 | Unity | N/A | Sweaty Palm Surgery |
| **Washington - Husband and Wife** | | | | |
| PR-05 | 7/31/03 | St Paul | Rosenberg | Upper GI Endoscopy |
| PR-05 | 8/2/03 | St Paul | Houck/McKenna | Sweaty Palm Surgery |
| PR-05 | 9/13/03 | St Paul | Patel | Bladder Procedure |
| PR-06 | 9/12/03 | St Paul | Non-Defendant | Upper GI Endoscopy |
| PR-06 | 9/13/03 | St Paul | Non-Defendant | Colonoscopy |
| PR-06 | 9/17/03 | St Paul | Patel | Bladder Procedure |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX U</u>**

**APPENDIX U**

| PREMERA ALASKA - ASSOCIATION OF GENERAL CONTRACTORS | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| PR-07 | 8/23/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| PR-07 | 8/24/03 | St. Paul | Rosenberg | Colonoscopy |
| PR-07 | 8/28/03 | St. Paul | Houck/McKenn | Sweaty Palm Surgery |
| PR-07 | 10/22/03 | St. Paul | Patel | Bladder Procedure |
| PR-08 | 11/22/03 | St. Paul | Non-Defendant | Upper GI Endoscopy |
| PR-08 | 11/23/03 | St. Paul | Rosenberg | Colonoscopy |
| PR-08 | 11/25/03 | St. Paul | Non-Defendant | Colonoscopy |
| PR-08 | 12/4/03 | St. Paul | Hampton | Sweaty Palm Surgery |
| PR-08 | 12/17/03 | St. Paul | Patel | Bladder Procedure |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX V</u>**

# APPENDIX V

| REGENCE PATIENTS | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| **OREGON HUSBAND AND WIFE** | | | | |
| RE-1 | 10/06/02 | Unity | Rosenberg | Upper GI Endoscopy |
| RE-1 | 10/07/02 | Unity | Non-Defendant | Colonoscopy |
| RE-1 | 11/02/02 | Unity | Non-Defendant | Removal of Hemorrhoids |
| RE-1 | 01/25/03 | Unity | White | Septoplasty |
| RE-2 | 10/06/02 | Unity | Rosenberg | Upper GI Endoscopy |
| RE-2 | 10/07/02 | Unity | Non-Defendant | Colonoscopy |
| RE-2 | 11/02/02 | Unity | Non-Defendant | Removal of Hemorrhoids |
| RE-2 | 12/20/02 | Unity | Fuller/McKenna | Sweaty Palm Surgery |
| RE-2 | 01/25/03 | Unity | Chan | D&C |
| **LEATHERMAN TOOLS EMPLOYEES** | | | | |
| RE-3 | 03/08/03 | Unity | N/A | Upper GI Endoscopy |
| RE-3 | 03/09/03 | Unity | N/A | Colonoscopy |
| RE-3 | 03/30/03 | Non-Defendant | N/A | Sweaty Palm Surgery |
| RE-3 | 04/19/03 | Unity | N/A | D&C |
| RE-4 | 02/19/03 | Millennium | Chun | D&C |
| RE-4 | 02/22/03 | Harbor Multi-Specialty | N/A | Upper GI Endoscopy |
| RE-4 | 02/24/03 | Harbor Multi-Specialty | N/A | Colonoscopy |
| RE-5 | 09/16/02 | Millennium | Chun | Laparoscopy; D&C |
| RE-5 | 11/30/02 | Premium | Non-Defendant | Removal of Hemorrhoids |
| RE-6 | 01/29/02 | Millennium | Chun | Laparoscopy; D&C |
| **OREGON HEALTH SCIENCES UNIVERSITY EMPLOYEES** | | | | |

204

| RE-7 | 12/22/02 | Unity | Rosenberg | Upper GI Endoscopy |
| RE-7 | 12/23/02 | Unity | Rosenberg | Colonoscopy |
| RE-7 | 01/18/03 | Unity | N/A | Removal of Hemorrhoids |
| RE-8 | 01/18/03 | Unity | N/A | Upper GI Endoscopy |
| RE-8 | 01/19/03 | Unity | N/A | Colonoscopy |
| RE-9 | 01/18/03 | Unity | N/A | Upper GI Endoscopy |
| RE-9 | 01/19/03 | Unity | N/A | Colonoscopy |

205

1
2
3
4
5
6
7
8
9
10
11
12
13
14                                **<u>APPENDIX W</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX W

| CAREFIRST BLUE CROSS PATIENTS | | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| Out Of State Patients | | | | |
| CF-01 | 11/25/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| CF-01 | 11/26/03 | St. Paul | N/A | Laparotomy |
| CF-01 | 12/1/03 | Harbor | Non- | Colonoscopy |
| CF-02 | 11/23/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| CF-02 | 11/24/03 | St. Paul | Rosenberg | Excision Large |
| CF-02 | 11/25/03 | St. Paul | N/A | GI procedure |
| CF-02 | 11/26/03 | St. Paul | N/A | Urogenital procedure |
| CF-03 | 4/23/01 | Newport Superior | Rayyes | Colonoscopy |
| CF-03 | 4/25/01 | Newport Superior | Rayyes | GI Endoscopy |
| CF-04 | 8/7/03 | St. Paul | Rosenberg | N/A |
| CF-04 | 8/11/03 | St. Paul | McKenna | Sweaty Palm Surgery |
| CF-05 | 10/18/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| CF-05 | 10/19/03 | St. Paul | Rosenberg | Colonoscopy |
| CF-05 | 10/23/03 | St. Paul | Non- | AP Repair; D&C |
| CF-06 | 5/28/02 | Anaheim West | Kim | Upper GI Endoscopy |
| CF-06 | 5/29/02 | Anaheim West | Chan | Laparoscopy; D&C |
| CF-06 | 10/30/02 | Non-Defendant | Non- | Septoplasty |
| CF-07 | 4/11/02 | St. Francis | Non- | Upper GI Endoscopy |
| CF-07 | 4/12/02 | St. Francis | Rosenberg | Colonoscopy |

207

| Vertis Employees | | | | |
|---|---|---|---|---|
| CF-08 | 3/1/03 | Valley Multi-Specialty | Rosenberg | Upper GI Endoscopy |
| CF-08 | 3/14/03 | Valley Multi-Specialty | McKenna | Sweaty Palm Surgery |
| CF-09 | 1/10/03 | Non-Defendant | Non- | Sweaty Palm Surgery |
| CF-09 | 1/29/03 | Valley Multi-Specialty | Rosenberg | Upper GI Endoscopy |
| CF-09 | 1/31/03 | Valley Multi-Specialty | Rosenberg | Colonoscopy |
| CF-10 | 5/9/02 | Anaheim West | Kim | Upper GI Endoscopy |
| CF-10 | 5/10/02 | Anaheim West | Rosenberg | Colonoscopy |
| CF-11 | 3/21/03 | Valley Multi-Specialty | Rosenberg | Upper GI Endoscopy |
| CF-11 | 3/22/03 | Valley Multi-Specialty | Rosenberg | Colonoscopy |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
**<u>APPENDIX X</u>**
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX X**

| NEBRASKA BLUE CROSS EMPLOYEE CLUSTERS | | | | |
|---|---|---|---|---|
| Patient Code | Date of Procedure | Clinic | Surgeon | Fraudulently Billed Procedure |
| SWIFT EMPLOYEES | | | | |
| NE-1 | 1/9/01 | Newport | Babaknia | Upper GI Endoscopy |
| NE-1 | 1/12/01 | Newport | Babaknia | Colonoscopy |
| NE-1 | 1/13/01 | Newport | Non- | Circumcision |
| NE-2 | 5/19/00 | Newport | N/A | Upper GI Endoscopy |
| MILLARD EMPLOYEES | | | | |
| NE-3 | 7/9/00 | Newport | N/A | N/A |
| NE-3 | 7/16/00 | Newport | Babaknia | Colonoscopy |
| NE-3 | 8/12/00 | Newport | Non- | Removal of |
| NE-3 | 11/4/00 | Newport | Non- | Septoplasty |
| NE-3 | 7/6/02 | Millennium | Rosenberg | Upper GI Endoscopy |
| NE-3 | 8/24/02 | Millennium | Rosenberg | Colonoscopy |
| NE-3 | 9/21/02 | Millennium | N/A | N/A |
| NE-4 | 4/7/01 | Newport | Alamy | Upper GI Endoscopy |
| NE-4 | 4/15/01 | Newport | Alamy | Colonoscopy |
| NE-5 | 4/15/01 | Newport | Alamy | Upper GI Endoscopy |
| NE-5 | 5/8/01 | Newport | Alamy | Colonoscopy |

210

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>APPENDIX Y</u>**

### APPENDIX Y

| | NORTH CAROLINA BLUE CROSS PATIENTS | | | |
|---|---|---|---|---|
| **Patient Code** | **Date of Procedure** | **Clinic** | **Surgeon** | **Fraudulently Billed Procedure** |
| NC-1 | 03/15/03 | Unity | Rosenberg | Upper GI Endoscopy |
| NC-1 | 03/16/03 | Unity | Rosenberg | Colonoscopy |
| NC-2 | 08/29/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| NC-2 | 09/02/03 | St. Paul | Rosenberg | Colonoscopy |
| NC-2 | 09/05/03 | St. Paul | Non-Defendant | Sweaty Palm Surgery |
| NC-3 | 11/08/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| NC-3 | 11/09/03 | St. Paul | Non-Defendant | Colonoscopy |
| NC-3 | 11/23/03 | St. Paul | N/A | D&C |
| NC-4 | 11/22/03 | St. Paul | Rosenberg | Upper GI Endoscopy |
| NC-4 | 11/23/03 | N/A | Rosenberg | Colonoscopy |
| NC-4 | 11/26/03 | St. Paul | Hampton | Sweaty Palm Surgery |
| NC-5 | 08/09/03 | St. Paul | Non-Defendant | Upper GI Endoscopy |
| NC-5 | 08/17/03 | St. Paul | Non-Defendant | Colonoscopy |
| NC-5 | 08/23/03 | St. Paul | Non-Defendant | Sweaty Palm Surgery |
| NC-6 | 08/09/03 | St. Paul | Non-Defendant | Upper GI Endoscopy |
| NC-6 | 08/11/03 | St. Paul | Rosenberg | Colonoscopy |